UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TAMMY PASSA, et al.<br>Plaintiffs<br><br>vs.<br><br>JEFFREY DERDERIAN, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 03-148 L |

# DEFENDANT AMERICAN FOAM CORPORATION'S MOTION TO ABSTAIN AND TO DISMISS CASE

Defendant American Foam Corporation moves this Court for an Order pursuant to which this Court abstains from hearing the within action and dismisses it without prejudice, thus permitting plaintiffs to refile their action in Rhode Island state court. The grounds for this motion, which are set forth in greater detail in American Foam's memorandum in support of this motion, are as follows:

1. Plaintiffs' only basis for asserting federal court jurisdiction is 28 U.S.C. § 1369, the "Multiparty, multiforum jurisdiction" act.

2. Although plaintiffs' complaint on the surface appears to fall within the prima facie jurisdictional prerequisites set forth in § 1369(a), § 1369 was not intended by Congress to apply to an essentially local disaster like the one out of which plaintiffs' claims arose — the Station fire.

3. Even assuming (without admitting) that the Station fire circumstances are sufficient to meet the jurisdictional prerequisites of § 1369(a), American Foam submits that the mandatory abstention conditions of § 1369(b) are met in this action, thus requiring this Court to abstain and, to effectuate that abstention, to dismiss the within action without prejudice so that it



36

may be refiled in state court.

Accordingly, for the reasons set forth here and detailed in American Foam's memorandum in support of this motion, this Court should abstain from hearing the within action and should dismiss plaintiffs' complaint without prejudice to their filing it in state court.

By its attorneys,

Thomas C. Angelone # 1373
HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Place
Providence RI 02903
*(401) 274-0200 Fax (401) 274-7538*

**CERTIFICATION**

On 6/30/03 a true copy of the foregoing was served on all counsel of record, listed below, by mail.

Ronald J. Resmini, Esq.
Law Offices of Ronald J. Resmini, Ltd.
155 South Main Street
Providence, RI 02903

Anthony F. DeMarco, Esq.
Reynolds, DeMarco, & Boland, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

James R. Lee, Esq.
State of Rhode Island
Department of Attorney General
150 South Main Street
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh, LLP

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TAMMY PASSA, et al.<br>Plaintiffs<br><br>vs.<br><br>JEFFREY DERDERIAN, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 03-148 L |

# DEFENDANT AMERICAN FOAM CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO ABSTAIN AND TO DISMISS CASE

## INTRODUCTION

The essential question presented by American Foam's motion (and the parallel motions filed by American Foam in the companion cases) is whether the lawsuits arising out of the Station fire of February 20, 2003, will be heard in federal court or in Rhode Island superior court. For the reasons set forth in this memorandum, American Foam submits that this Court should either dismiss outright or abstain from hearing those lawsuits, and should dismiss the within action without prejudice so that it may be filed in state court.

At the heart of this motion is 28 U.S.C. § 1369, the "Multiparty, multiforum jurisdiction" act. § 1369 only became effective in the weeks immediately prior to the Station fire and these cases appear to be the first to invoke federal court jurisdiction under its auspices. Thus, it is an untested avenue for federal court jurisdiction. As shown below, although the Station fire circumstances appear to meet the prima facie jurisdictional prerequisites under § 1369, § 1369 was not intended by Congress to apply to an essentially local disaster like the Station fire. But even if § 1369 were to apply, this Court ought to abstain from hearing the case under the mandatory abstention provisions of § 1369(b). A "substantial majority" of the

plaintiffs are from Rhode Island, the "primary defendants" are from Rhode Island, and the claims asserted are governed by Rhode Island tort law. § 1369(b) provides that under these circumstances, this Court "shall abstain from hearing" the action. Accordingly, this Court should so abstain, which under the circumstances of this case means that the Court should dismiss the action without prejudice to it being filed in state court.

## FACTS

On February 20, 2003, the Station nightclub in West Warwick, Rhode Island, burned down during a performance by "Great White," a rock band. 100 people were killed and at least 42 were injured.[1] Of the dead, 59 were Rhode Island residents; 41 were residents of other states, primarily Massachusetts. Of the injured, 25 were Rhode Island residents; 17 were residents of other states. Second Amended Complaint, ¶ 4.

The first civil actions seeking damages for the victims of the Station fire were brought in Rhode Island superior court. *Rodrigues, et al. v. Larocque, et al.*, C.A. No. PC03-1084, was the first action brought. Thereafter, two other actions were brought: *Kingsley, et al. v. Derderian, et al.*, C.A. No. PC03-1171, and *Kinan, et al. v. DERCO, et al.*, C.A. No. PC03-2635. In addition, various miscellaneous petitions were brought in state superior court, seeking presuit discovery. On May 30, 2003, Anheuser-Busch, Inc. removed *Kingsley* and *Kinan* from state court to this Court.[2] *Rodrigues* and the miscellaneous petitions remain pending in state court.

---

1. Plaintiffs have attached a list of the dead and injured victims to their Second Amended Complaint, Tab 25. That list includes 42 injured victims. American Foam expects at least one other list to be presented to the Court which will show at least 111 injured victims.

2. Concomitant with the filing of this motion, American Foam has also filed motions to remand *Kingsley* and *Kinan*, asserting essentially the same grounds as are asserted here.

Plaintiffs brought this action directly in this Court, asserting jurisdiction based on 28 U.S.C. § 1369. Plaintiffs are all residents of Rhode Island. Of the 28 defendants named in this suit, 9 are from Rhode Island; 8 are from California; 2 are from Missouri; 2 are from Pennsylvania; 2 are from Texas; and 1 is from each of Alabama, Delaware, Massachusetts, Nevada, and Germany. Second Amended Complaint, ¶¶ 7-34. Plaintiffs concede that they have only the "minimal diversity" identified in § 1369; they do not have "complete diversity" for jurisdiction under 28 U.S.C. § 1332. Second Amended Complaint, ¶ 5.

## ARGUMENT

### INTRODUCTION

28 U.S.C. § 1369, entitled "Multiparty, multiforum jurisdiction," was enacted by Congress on November 2, 2002, and applies to causes of action occurring on or after the 90th day after the date of enactment, i.e., January 31, 2003.[3] It provides, in pertinent part:

> (a) **In general.**—The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if—
>
> (1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
>
> (2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
>
> (3) substantial parts of the accident took place in different States.

---

3. Along with the adoption of § 1369, Congress also adopted 28 U.S.C. § 1697, which provides for nationwide service of process (other than subpoenas) in cases brought under § 1369; adopted § 28 U.S.C. § 1785, which provides for nationwide service of subpoenas in cases brought under § 1369; amended 28 U.S.C. § 1391 to address venue in actions brought under § 1369; and amended 28 U.S.C. § 1441 to address removal to federal court of cases brought in state court that could have been brought in federal court under § 1369.

**(b) Limitation of jurisdiction of district courts.**—The district court shall abstain from hearing any civil action described in subsection (a) in which—

(1) the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and

(2) the claims asserted will be governed primarily by the laws of that State.

§ 1369(c) goes on to provide special rules and definitions to be applied, including the "minimal diversity" concept that distinguishes § 1369 from 28 U.S.C. § 1332. Unfortunately, the special rules and definitions do not provide any illumination to the key terms used in the mandatory abstention provisions of § 1369(b), namely, "the substantial majority of all plaintiffs," and "the primary defendants."[4] Thus, not only is § 1369 untested, but its own language is indefinite and uncertain.

Although at first blush it would appear that the circumstances of the Station fire meet the preliminary jurisdictional requirements of § 1369(a) (a single accident in which at least 75 people have died, "minimal diversity" between plaintiffs and defendants, defendants from states other than the site of the accident, and defendants from different states), the legislative history of § 1369 examined below shows that it was not intended to apply to an essentially local disaster like the Station fire. Even if it did apply, the mandatory abstention provisions of § 1369(b) require this Court to abstain from hearing this action because a substantial majority of all of the plaintiffs are from Rhode Island, the primary defendants are from Rhode Island, and the claims asserted will be governed primarily (if not exclusively) by the laws of Rhode Island.

4. Oddly, § 1369(c)(3) *does* define the term "injury," a term not used anywhere else in § 1369.

## I. The legislative history of § 1369 shows that it was not intended to apply to local disasters like the Station fire.

There is no decisional law interpreting § 1369 because it only recently became effective. However, this Court may, and should, look at the legislative history of § 1369 for guidance if "the literal words of the statute create ambiguity or lead to an unreasonable interpretation." *Cabral v. I.N.S.*, 15 F.3d 193, 194 (1st Cir. 1994) (interior quotations omitted). Here, to be sure, the terms "primary defendants" and "substantial majority of all plaintiffs" in § 1369(b)(1), and to a lesser extent, the term "governed primarily by the laws of that state" in § 1369(b)(2), are vague or inherently ambiguous. *See* 148 Cong. Rec. H851 (daily ed. March 13, 2002) (statement of Representative Jackson-Lee on proposed class action legislation: "Consumers may also be disadvantaged by the vague terms used in the legislation, such as 'substantial majority' of plaintiffs, 'primary defendants,' and claims 'primarily' governed by a state's laws, as they are entirely new and undefined phrases with no precedent in the United States Code or the case law."). Hence, review of the legislative history of § 1369 is entirely appropriate to assist this Court in ruling on this matter.

An early version of § 1369 was presented in Congress in the late 1980's. The original form of the proposal was somewhat different because it required a minimum of "25 natural persons" and "damages which exceed $50,000 per person" to gain access to federal court. 136 CONG. REC. H3116 (daily ed. June 5, 1990). From the initial debates to its enactment in November 2002, the primary example used for the application of § 1369 was airplane-crash disasters causing injury to many people from various jurisdictions, at a site that was most likely foreign to most of the parties, both plaintiff and defendant. *See e.g. id.* (statement of Representative Kastenmeier: "The bill's jurisdiction section has been clarified to apply to mass accident cases filed in our courts, regardless of whether the accident, for example an airplane

crash, happens to occur in the United States or some other location, which was our intention all along."). The aim of the legislation was to enhance "the efficient handling of complex disaster litigation and increase fairness of the decision making process." *Id.*

A year later those purposes were amplified by one of the proponents of the bill, William J. Hughes, who wrote of the need for judicial fairness and efficiency in such cases as where "a plane has crashed at a Colorado airport, a hotel has burned in Las Vegas fire, or two trains have collided in Maryland." 137 CONG. REC. E1923 (daily ed. May 24, 1991). Representative Hughes' main concern was that "no one state may have constitutionally sufficient contact with all the parties to exercise personal jurisdiction over them. The result is duplicative litigation in multiple state and federal courts." *Id.*

In 1999, § 1369 was again proposed for enactment. This version provided "federal court jurisdiction for single accidents involving at least 25 people having damages in excess of $75,000 per claim." 145 CONG. REC. H12020 (daily ed. November 16, 1999) (statement of Rep. Conyers). In 2001, Representative Sensenbrenner asserted that the proposed rule (now requiring minimum $150,000 damages per person) would "address[] a particular species of complex litigation, so-called disaster cases, such as those involving <u>airline accidents</u>." 147 CONG. REC. H893 (daily ed. March 14, 2001) (emphasis added). The aim of the legislation was to "reduce litigation costs as well as the likelihood of forum shopping in single-accident mass tort cases" and to "expand Federal court jurisdiction in <u>a very narrowly defined category of cases</u> in order to improve the manageability of complex litigation." *Id.* (comments of Representatives Sensenbrenner and Conyers) (emphasis added).

> Given where the plaintiffs would live who were injured or killed in the plane crash, or where the airline was located, where the crash occurred, or the manufacturer of the plane and its component parts were situated, we could have lawsuits on the same disaster going on in every court.

*Id.* at H896 (comments of Representative Sensenbrenner). Plainly, § 1369 was *not* intended to apply to "local" disasters:

> A U.S. district court may not hear a case in which a substantial majority of plaintiffs and the primary defendants are citizens of the same State and in which the claims asserted are governed primarily by the laws of that same state. In other words, only State courts may hear such cases. [Emphasis added.]

*Id.* at H894 (Representative Sensenbrenner).

When the current form of the proposed legislation came before the House last September, the concerns that have driven this legislation from the beginning were reiterated in the Congressional Record:

> The need for enactment of [§ 1369] was articulated by an attorney who testified on behalf of a major airline manufacturer at the June 16, 1999, hearing on H.R. 2112. [Footnote omitted.] It is common after a serious accident to have many lawsuits filed in several states, in both state and federal courts, with many different defendants. Despite this multiplicity of suits, the principal issue that must be resolved first in each lawsuit is virtually identical: Is one or more of the defendants liable? Indeed, in lawsuits arising out of major aviation disasters, it is common for the liability questions to be bifurcated and resolved first, in advance of any trial on individual damage issues. The waste of judicial resources — and the costs to both plaintiffs and defendants — of litigating the same liability question several times over in separate lawsuits can be extreme.

148 Cong. Rec. H6638 (daily ed. Sept. 25, 2002) (emphasis added).[5] This review of the statute (that was later enacted) posits that § 1369's "revisions should reduce litigation costs as well as the likelihood of forum-shopping in airline accident cases." *Id.* (emphasis added). Moreover, the House's record reiterated that "a U.S. district court may not hear any case in which a 'substantial majority' of plaintiffs and the 'primary' defendants are all citizens of the same state; and in which the claims asserted are governed 'primarily' by the laws of that same

5. In addition to the concern that without the ability to consolidate cases under § 1369 there could be multiple (and conflicting) determinations of liability in separate litigation, the House record reflects other concerns, including inconsistent discovery schedules and orders and conflicts between experts and other witnesses, as being among the motivations that led to the adoption § 1369. *Id.*

state. In other words, only state courts may hear such cases." *Id.*

The legislative history of § 1369 shows that Congress was primarily concerned with the impact of existing federal district court jurisdictional limitations on the ability of the federal courts to consolidate all cases arising out of a single airplane accident for purposes of determining liability. Plainly, this statute covers only "a very narrowly defined category of cases," 147 CONG. REC. H893 (daily ed. March 14, 2001) (comments of Representatives Sensenbrenner and Conyers): disasters resulting in at least 75 deaths where the parties are from various jurisdictions and the disaster occurs at a location that is foreign to most parties. § 1369, therefore, does not apply to local disasters like this, where the vast majority of the parties are from the state where the disaster occurs and that state's laws govern the suit. Because this case does not fall within the narrowly defined category created by the statute, this Court should reject plaintiffs' claim of jurisdiction under § 1369 and dismiss this action without prejudice so that plaintiffs may bring their action in state court.

## II. Even if this Court has prima facie jurisdiction under § 1369(a), it should abstain under § 1369(b) and dismiss the action.

Assuming this Court finds that plaintiffs have set forth a prima facie case for jurisdiction under § 1369(a), it nonetheless must consider whether it must abstain under the mandatory abstention provisions of § 1369(b). Looking at the separate prongs of § 1369(b), there can be no doubt that the claims asserted in the action will be governed primarily (if not exclusively) by Rhode Island tort law.[6] Thus, the second prong for mandatory abstention under § 1369(b) is

---

6. Rhode Island choice-of-law rules apply in federal court in diversity cases brought in the district of Rhode Island. *See, e.g.*, *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1092 (1st Cir. 1989) ("In a tort case invoking diversity jurisdiction, a federal district court must apply the forum's choice-of-law principles."). Rhode Island takes the position that "in an action for a personal injury, the local law of the state where the injury occurred determines the rights and (continued...)

presumably not in issue. What is in issue and what this Court must consider and determine is whether "the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens." As discussed below, American Foam submits that the substantial majority of all plaintiffs are citizens of Rhode Island and the primary defendants are also citizens of Rhode Island. Accordingly, the mandatory abstention provisions of § 1369(b) are triggered and this Court must abstain. In the context of this case, which was filed directly in federal court, that means the Court should dismiss the action without prejudice so that plaintiffs may file it in state court.

**A. The substantial majority of all plaintiffs are citizens of Rhode Island.**

There is an inherent uncertainty in § 1369's use of the expression "substantial majority of all plaintiffs." Does it mean to count and determine the domicile of *all* plaintiffs who have claims arising out of the disaster that triggered § 1369's application in the first place, or just the plaintiffs in the immediate action before the Court. It makes little sense to look to the plaintiffs in the individual action, since any one action is typically brought by one victim or his or her representatives, or, occasionally, brought by a few victims and/or their representatives. In this action, for example, all plaintiffs are Rhode Island residents. In another action (*Kinan*), all plaintiffs are residents of Massachusetts. Assuming that the primary defendants are the same in each action and that the primary defendants are from Rhode Island, abstention would be required in this case but not in *Kinan*. The whole point of § 1369, however, is to bring all cases involving a single covered disaster within the federal court umbrella. Thus, in the context of

---

6. (...continued)
liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *Blais v. Aetna Cas. & Sur. Co.*, 526 A.2d 854, 856-57 (R.I. 1987). *See also Najarian v. National Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001).

the multiparty-disaster focus of § 1369, concentrating on the fortuitous circumstance of the individual plaintiffs in the individual action to determine whether "the substantial majority of all plaintiffs" are from the same state as "the primary defendants" seems both short-sighted and myopic.

If the Court looks instead to "all plaintiffs" as meaning all persons with claims arising out of the disaster, as American Foam submits Congress intended and this Court must, it becomes clear that here "the substantial majority of all plaintiffs" are from Rhode Island. First, though, what does "substantial" mean in the context of a "majority"? The United States Supreme Court has defined "substantial" (in the context of a "substantial majority") as meaning "'[c]onsiderable in amount, value, or the like; large.'" *See Pierce v. Underwood*, 487 U.S. 552, 564, 108 S.Ct. 2541, 2549 (1988). But what constitutes a "substantial majority"? Where to draw the line between a majority that is substantial and one that is not is subjective, at best.

Looking at the fire victims, American Foam suggests that this Court should find that a "substantial majority" are Rhode Island residents. Focussing on the dead victims as a measure, 59% are Rhode Island residents and 41% are not. Focussing on the injured listed in plaintiffs' complaint, interestingly enough, gives essentially the same figure (25 injured from Rhode Island is 59.5% of the 42 listed injured). Assuming that those plaintiffs with derivative claims for loss under R.I. GEN. LAWS § 9-1-41 should also be counted (a difficult proposition at best, until all lawsuits have been filed), it seems reasonable to assume that the domicile of the family members with such claims would be likely to follow the domicile of the family-member victim. Thus, it seems reasonable to use the domicile of the actual victims as the basis for determining the citizenship of "all plaintiffs."

Here, American Foam urges the Court to conclude that the approximately 60% majority of Rhode Island citizens among "all plaintiffs" is the "substantial majority" of those plaintiffs.

When Richard Nixon defeated George McGovern in 1972, garnering approximately 62.5% of the popular vote, his victory was described as a "landslide." A "landslide" is defined as "an overwhelming majority of votes * * *." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 1012 (3d ed. 1992) (emphasis added). If 62.5% of the popular vote constitutes an "overwhelming majority," then 60% of the victims surely constitutes "the substantial majority of all plaintiffs."[7]

Because some 60% constitutes a "substantial majority of all of the plaintiffs," American Foam submits that this Court should conclude that that criterion of § 1369(b)'s mandatory abstention has been satisfied.

**B. The "primary defendants" are from Rhode Island.**

Under § 1369(b)(1), the second prong for mandatory abstention is that the "primary defendants" be from the same state as the "substantial majority" of the plaintiffs. Once again, however, Congress' failure to define the term "primary defendants," and the lack of developed caselaw addressing that term in the context of jurisdictional statutes or otherwise makes it difficult to know which defendants are "primary defendants." Congress has provided no assistance, either in the language of § 1369 or in the legislative history, for the standards to be applied in determining whether particular defendants are "the primary defendants."

First, as with "the substantial majority of all plaintiffs," the question is, who is a defendant, or, more precisely stated, which "defendants" are to be considered in determining who are "the primary defendants"? Is it only the defendants named in this particular case, or all possible defendants? As with the analysis of the plaintiffs, American Foam submits that

7. Another way of quantifying the "substantiality" of the majority of Rhode Island plaintiffs is to consider that there are approximately 45% more plaintiffs (victims) who are residents of Rhode Island than there are plaintiffs of all other states combined.

Congress intended the Court to consider the universe of possible defendants drawn into the disaster for one reason or another, rather than just the particular defendants named in one or more of the lawsuits under consideration. Any other approach would lead to decisionmaking based on the artfulness (or lack thereof) of the pleadings. One artful pleader could plead his clients into § 1369 jurisdiction while another could fail to do so. And the result would necessarily be inconsistent rulings, where one case arising out of a disaster could avoid mandatory abstention under § 1369(b) while another would not.

Determining the meaning of "the primary defendants" is not so simple as just consulting a dictionary. "Primary" is defined generally as "[f]irst or highest in rank, quality, or importance; principal." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 1439 (3d ed. 1992). Whether that is a useful definition is somewhat dubious. If the "first or highest in rank, quality, or importance" portion of the definition is used, it is not clear that there can even be primary defendant<u>s</u>, since, presumably, only one could be either "first" or "highest." And if the "principal" portion of the definition is used, it is really no help at all, as the "principal defendants" would be no clearer than is "the primary defendants."

Although courts sometimes use the expression, the term "primary defendant" does not appear to be a term of art. For example, in *Victoriatea.com, Inc. v. Cott Beverages Canada*, 239 F.Supp.2d 377 (S.D. N.Y. 2003), the court addressed a motion to dismiss an action brought in New York on the ground of forum non conveniens. The court analyzed the forum non conveniens law and in the course of that analysis pointed out that "all of the primary Defendants -- two Ontario-based corporations -- and the principal Plaintiffs -- a Canadian corporation and an individual citizen and resident of Canada -- are all Canadians, the core dispute is local to Canada." However, the Court provided no basis for distinguishing between primary defendants and other (secondary?) defendants.

In *Watson v. v. Merrell Dow Pharmaceuticals, Inc.*, 769 F.2d 354, 357 (6th Cir. 1985), in what appears to have been a "you-know-it-when-you-see-it" ruling, the district court had opined that "Merrell-Dow is clearly, as defendants suggest, the 'primary defendant' in these cases." The court of appeals rejected the classification, pointing out that "these defendants cannot be dismissed from the instant litigation simply because the trial judge *sua sponte* determined that they are not as important as the 'primary' defendant." Thus, at least in that context, determining which defendant was more "important" does not establish primary and secondary defendants.

In *Grantham v. Moffett*, 1996 U.S. Dist. LEXIS 102 (E.D. La. 1996), the court defined "primary defendants" and "secondary defendants" in the context of a claim that a particular defendant was not liable to pay fees in an action under 42 U.S.C. § 1983. However, the distinction drawn — a secondary defendant is "innocent of any real responsibility for the invalidated law or policy" and must have "made prompt and reasonable efforts to settle the lawsuit," while a primary defendant "promulgated and vigorously defended the challenged law or policy and [] is clearly liable for fees" — is not particularly helpful in this context.

A more useful standard may be drawn from certain cases addressing liability issues. Thus, in *Local Union 1888, AFSCME v. Jackson, Mississippi*, 473 A.2d 1028 (5th Cir. 1973), the court distinguished among "ancillary defendants" and "primary defendants." Because the purpose of the suit at issue was to terminate the City of Jackson's alleged racial and sexual discrimination in employment, and the United States defendants were included to attempt to preclude payment of money to Jackson while the case was pending, "the City of Jackson is the primary defendant against whom relief * * * is sought," while the federal defendants were ancillary defendants whose absence from the case would not prevent the plaintiff from obtaining injunctive relief against the primary defendant.

A distinction between primary defendants and secondary defendants was also drawn by the Ohio Supreme Court in *Maryland Cas. Co. v. Frederick Co.*, 53 N.E.2d 795 (Ohio 1944):

> [W]hen a case is tried on the theory that liability for a plaintiff's injuries is primary as to one defendant and secondary as to the other and the "secondary defendant" is held liable to the plaintiff, that defendant may recover by way of indemnity from the "primary defendant" if the primary defendant has been notified of the claim, tendered a defense and advised that it will be required to hold the secondary defendant harmless.

*Sims v. The Chesapeake and Ohio Railway Co.*, 520 F.2d 556, 559 (6th Cir. 1975) (discussing *Maryland Cas. Co. v. Frederick Co.*). The concept of "primary liability" as providing the basis for determining whether a party is a primary defendant or not may be a useful one in the context of § 1369.

These cases demonstrate that the term "primary defendants" is not a term of art and has been used in various contexts, most of which are not helpful to the present situation. American Foam submits that in the context of this case, the Court should conclude that "the primary defendants" are the occupier of the premises where the fire occurred, that is, the owners and operators of the Station — Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station. That is because they have the first ("primary") level of responsibility (i.e. duty) to the business invitees who were their customers and were the victims of the disaster. It is their overriding duty that is "primary" and that makes them "the primary defendants."

The occupier of the property and the owner of the business has a duty to provide a safe place for the presentation of entertainment. *See Terry v. Central Auto Radiators, Inc.*, 732 A.2d 713, 716 (R.I. 1999) ("the business invitor does have a duty to maintain the business premises in a reasonably safe condition for the purpose of the invitations that are made to the prospective business invitees."). Moreover, although Rhode Island has not so held, "[t]he possessor's duty to maintain the property in a reasonably safe condition is non-delegable." *Dixon v. Fusco*

*Farmington Associates,* CV990594602S, 2000 Conn.Super. LEXIS 3289 at *5 (Conn.Super.Ct. Nov. 30, 2000); *see also Terry v. Central Auto Radiators, Inc.*, 732 A.2d at 716-17 (equating the business invitor's duties with those of a property owner); *D'Ambra v. Peak Bldg. Corp.*, 680 A.2d 939, 940 (R.I. 1996) (noting "the 'peculiar risk' doctrine that places a nondelegable duty on a property owner for work on property that involves a peculiar risk to others unless special precautions are taken.").

One court has specifically noted the landowner's nondelegable duties which make that landowner the "primary defendant:"

> [T]he duty of an owner or employer to keep the premises safe under both the common law and the safe place statute had nothing to do with his right to financial recoupment from another party either by operation of law or by contract. All that is meant by the statement that duties under the safe place statute are nondelegable is that the person who has that duty cannot assert that another to whom he has allegedly delegated the duty is to be substituted as the primary defendant in his stead for a violation of safe place provision. Under any circumstance, it is the owner or the employer who must answer to the injured party. Whether that owner or employer is to be made financially whole from another source by principles of law or contract is an entirely different question.

*Dykstra v. Arthur G. McKee & Co.*, 301 N.W.2d 201, 207 (Wis. 1981) (emphasis added).

The fact that other named defendants may be liable to plaintiffs (or may not be liable at all) for breach of duty does not alter the fact that but for the existence of the Station nightclub there would have been no case. Even the band, Great White, and its members and management, are "secondarily" liable in the sense that the overriding duty to the invitees at the Station was that of its owners and operators. The core duty — the primary duty — was owed by the nightclub itself to its customers and business invitees. That the band's activities may have started the fire in no way reduces or minimizes the underlying nondelegable duty owed by the owner/operators of the Station. Similarly, the allegation that American Foam's products may have contributed to the fire does not change the essential and primary duty owed by the Station

owners/operators to its customers and other invitees.

Under this "primary level of culpability" analysis, the primary defendants in this case — the owners and operators of The Station, Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station — are Rhode Island residents and a Rhode Island corporation and thus Rhode Island "citizens" for purposes of § 1369(b).[8] Because "the primary defendants" are Rhode Island citizens, the second prong of the mandatory abstention provision of § 1369(b) is also met. Therefore, pursuant to the provisions of § 1369(b), the Court must abstain from hearing this action.

## CONCLUSION

As shown above, this Court should either dismiss this action as not properly brought under 28 U.S.C. § 1369 because § 1369 was not intended to apply to this essentially purely local case, or, if the Court determines that prima facie jurisdiction under § 1369 has been met, the Court should abstain under the mandatory abstention provisions of § 1369(b).

By its attorneys,

Thomas C. Angelone # 1373
HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Place
Providence RI 02903
*(401) 274-0200 Fax (401) 274-7538*

8. The owner of the property where the Station was located and was operated, Triton Realty, Inc., is a Rhode Island corporation as well. Whether Triton is a primary defendant or not thus makes no difference. An argument can be made that as a passive owner with an active tenant its duty to those foreseeably on the premises is less direct or primary than the duty of the occupier and thus it is not a primary defendant.

**CERTIFICATION**

On 6/30/03 a true copy of the foregoing was served on all counsel of record, listed below, by mail.

[signature]

Ronald J. Resmini, Esq.
Law Offices of Ronald J. Resmini, Ltd.
155 South Main Street
Providence, RI 02903

Anthony F. DeMarco, Esq.
Reynolds, DeMarco, & Boland, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

James R. Lee, Esq.
State of Rhode Island
Department of Attorney General
150 South Main Street
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M. Prignan, Esq.
Stephen J. MacGillivrary, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

Daniel P. McKiernan, Esq.
146 Westminster Street
Providence, RI 02903

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
Morrison, Mahoney & Miller
One Providence Washington Plaza
Providence, RI 02903

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington Street
Roxbury, MA 02119

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903