**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

TAMMY PASSA, ALIAS, WALTER CASTLE, JR., ALIAS and CHERYL ROSSI, NEXT OF KIN of Decedent, JOSEPH E. ROSSI,

Plaintiffs,

v. C.A. No. 03-148L

JEFFREY DERDERIAN, MICHAEL DERDERIAN, DERCO, d/b/a The Station, MANIC MUSIC MANAGEMENT, INC., JACK RUSSELL, MARK KENDALL, DAVID FILICE, ERIC POWERS, DANIEL BICHELE, PAUL WOOLNOUGH, KNIGHT RECORDS, INC., ANHEUSER-BUSCH, COMPANIES, INC., McLAUGHLIN AND MORAN, INC., LUNA TECH, INC., LUNA TECH PYROTECHNIK GmbH, AMERICAN FOAM CORPORATION, WHJY-FM, CLEAR CHANNEL COMMUNICATIONS INC., TOWN OF WEST WARWICK, DENNIS LAROCQUE, INDIVIDUALLY and as FIRE INSPECTOR FOR THE TOWN OF WEST WARWICK, STATE OF RHODE ISLAND, TRITON REALTY, INC., and JOHN DOES 1 through 100,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JEFFREY DERDERIAN, MICHAEL DERDERIAN, and DERCO d/b/a THE STATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF JURISDICTION PURSUANT TO Fed.R.Civ.P. 12(b)(1)**

## I. INTRODUCTION

Defendants Jeffrey Derderian, Michael Derderian, and DERCO, d/b/a The Station (hereinafter "Moving Defendants"), move to dismiss the Amended Complaint filed by Plaintiffs

55

Tammy Passa, Walter Castle, Jr., and Cheryl Rossi, next of kin of decedent Joseph E. Rossi (hereinafter "Plaintiffs"), as this Court does not have subject matter jurisdiction over Plaintiffs' claims. As Plaintiffs concede, this Court does not have jurisdiction pursuant to 28 U.S.C.A. § 1332, as complete diversity does not exist among the parties.

Plaintiffs' reliance on the Multiparty, Multiforum Jurisdiction Act to confer subject matter jurisdiction is misplaced. While there is no case law interpreting this newly enacted statute, the legislative history of the Act reveals that Plaintiffs' claims would not fall within the Act. Alternatively, even if this Court determines that subject matter jurisdiction is proper, principles of comity, fairness, and judicial economy require dismissal.

Consequently, for the following reasons, this matter must be dismissed for lack of subject matter jurisdiction.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On April 23, 2003, Plaintiffs commenced this action by the filing of a Complaint with this Court. See Amended Complaint. Plaintiffs' Amended Complaint names twenty-two (22) defendants, including Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station (hereinafter "Moving Defendants"), as well as 100 John Doe defendants.

Plaintiffs' Amended Complaint arises out of a fire which occurred at The Station nightclub in West Warwick, Rhode Island on February 20, 2003. The Amended Complaint alleges that the negligence of the various defendants caused the fire.

One hundred persons died as a result of the fire and approximately 111 others were injured. See List of Victims of the Station fire, and accompanying Affidavit of Domenic Marano, attached to Motion to Dismiss as Exhibit "A". Seventy-seven (77) persons are believed to have escaped the fire without injury. Id. One hundred forty-eight of the persons killed or injured in the fire, including all three Plaintiffs, are/were residents of Rhode Island. Id. The

remaining persons are/were residents of the following states: (1) Massachusetts – fifty-seven people; (2) Connecticut –nine people; (3) California – two people; (4) Florida – one person; (5) Maine – one person; (6) Nevada – one person; and (7) Ohio – one person. Id. The residence of seventy-three victims is unknown. Id.

Plaintiffs have named twenty-two defendants in this action. According to the "Jurisdiction Allegations – Defendants" in the Amended Complaint, seven defendants reside and/or are incorporated in Rhode Island, eight defendants reside and/or are incorporated in California, and one defendant resides and/or is incorporated in each of the following jurisdictions: Delaware, Alabama, Germany, Texas, and Massachusetts. In addition to the defendants identified in paragraphs 6 through 28 of the Complaint, Plaintiffs have also sued the Town of West Warwick and the State of Rhode Island. Therefore, the correct number of Rhode Island defendants is nine.

Moving Defendants have filed the instant motion, seeking dismissal of this action based on lack of subject matter jurisdiction. For the following reasons, Defendants' Motion must be granted.

## III. LEGAL ARGUMENT

### A. Standard for Motion to Dismiss Based on Lack of Subject Matter Jurisdiction.

The Federal Rules of Civil Procedure provide for dismissal based on the court's lack of subject matter jurisdiction. See Fed.R.Civ.P. 12(b)(1); Narragansett Indian Tribe of Rhode Island v. Chao, 2003 WL 751793 (D. R.I. Feb. 27, 2003) (lack of subject matter properly raised by motion to dismiss). In reviewing a motion to dismiss based on lack of subject matter, the court must examine whether or not the challenged pleading sets forth allegations sufficient to demonstrate that the court has subject matter jurisdiction. Casey v. Lifespan Corp., 62 F.Supp.2d 471, 474 (D. R.I. 1999).

In making this determination, the court is not restricted to looking only at the pleadings, but may review any evidence, including affidavits, to determine any disputed facts upon which the motion or the opposition to it is predicated. Id.; Estates of Ungar v. The Palestinian Authority, 153 F.Supp.2d 76 (D. R.I. 2001) (court may consider exhibits to motion to dismiss). The burden of establishing that the court has subject matter jurisdiction is on the plaintiff who claims jurisdiction "to affirmatively allege jurisdiction and prove it." Van Daam v. Chrysler First Financial Services Corp. of Rhode Island, 124 F.R.D. 32, 33 (D. R.I. 1989); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S.Ct. 1673 (1994).

As demonstrated below, Plaintiffs cannot meet their burden of affirmatively proving this Court has subject matter jurisdiction over Plaintiffs' claims and therefore, this action must be dismissed.

**B. This Court Does Not Have Subject Matter Jurisdiction Over Plaintiffs' Claims.**

It is a "fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403 (1978); Browne & Sharpe Manufacturing Co. v. All Individual Members of Lodges 1088 and 1142 of District No. 64 of Int'l Assoc. of Machinists and Aerospace Workers, 535 F.Supp. 167 (D. R.I. 1982). Federal courts only possess that power authorized by the Constitution or by Congress and the limits upon federal jurisdiction "must be neither disregarded nor evaded." Owen Equipment, 437 U.S. at 374. The jurisdiction of federal courts cannot be expanded by judicial decree. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994); Lifetime Medical Nursing Services, Inc. v. New England Health Care Employees Welfare Fund, 730 F. Supp. 1192 (D. R.I. 1990) ("[f]ederal courts should not widen the encincture of their jurisdiction without clear authority from the national legislature").

When examining a challenge to subject matter jurisdiction, it must be presumed that a cause lies outside of the limited jurisdiction of federal courts. Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675; Van Daam v. Chrysler First Financial Services Corp. of Rhode Island, 124 F.R.D. 32 (D. R.I. 1989). As stated above, the burden of establishing that the court does have subject matter jurisdiction rests on Plaintiffs, as the parties asserting jurisdiction.

Plaintiffs correctly concede that this Court does not have jurisdiction based on 28 U.S.C.A. § 1332 (diversity) because of lack of complete diversity. Plaintiffs are all residents of Rhode Island and have sued twenty-two defendants, nine of whom also reside in Rhode Island.

The MMTJA provides district courts with original jurisdiction over claims involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location. 28 U.S.C.A. § 1369(a). The MMTJA applies if (1) a defendant resides in a state and a substantial part of the accident took place in another state or location, regardless of whether that defendant is also a resident of the state where a substantial party of the accident took place, (2) any two defendants reside in different states, regardless of whether such defendants are also residents of the same state or states, or (3) substantial parts of the accident took place in different states. 28 U.S.C.A. § 1369(a)(1)-(3).

The MMTJA does, however, provide an exception to this jurisdiction. District courts are not permitted to hear a civil action in which the "substantial majority" of the plaintiffs are citizens of a single state of which the "primary" defendants are also citizens and where the claims asserted will be governed primarily by the laws of that state. 28 U.S.C.A. § 1369(b). The Act does not, however, define what constitutes a "substantial majority" of plaintiffs or provide guidance on identifying the "primary" defendants.

1. Legislative History of the MMTJA

Although there is no case law interpreting this newly enacted statute, the extensive legislative history of the MMTJA provides guidance. Beginning in the 95th Congress, during the Carter Administration, attempts were made to improve judicial machinery by abolishing diversity of citizenship jurisdiction and to delineate the jurisdictional responsibilities of state and federal courts. There was much opposition to such expansive change, so Congress narrowed its focus and began to concentrate on the problem of "dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries." See H.R. Conf. Rep. 107-685, p. 199 (Sept. 25, 2002).

Legislation on this more specific issue was introduced in both the 98th and 99th Congresses. During the 100th to 105th Congresses, several versions of legislation addressing jurisdiction in mass tort litigation resulting in multiple deaths were passed by the House, but not the Senate. During the 106th Congress, Representative F. James Sensenbrenner, Jr. (R-Wis.), Chairman of the House Committee on the Judiciary, presented H.R. 2112, the precursor to the MMTJA. It was during the 107th Congress that the MMTJA was passed, as part of the 21st Century Department of Justice Appropriations Authorization Act (H.R. 2215), and signed into law by President Bush. No hearings were held on the MMTJA during the 107th Congress, given the "ample legislative history that preceded it from the 95th Congress to the 106th" Congress. H.R. Conf. Rep. 107-685 at 200.

Thus, most of the legislative history, including testimony and reports, relates to H.R. 2112, an earlier version of the MMTJA, which was presented during the 106th Congress. Testimony was heard in June 16, 1999 from several individuals and House Report No. 106-276 was issued on July 30, 1999. In this report, the House took special note of the testimony from Thomas J. McLaughlin, Esquire of Perkins Coie, LLP, who has represented The Boeing Company for many years. In his testimony, Mr. McLaughlin noted that mass tort accidents

commonly result in numerous lawsuits filed in several different states, in both state and federal courts, leading to increased litigation costs, the burdening of witnesses and parties with duplicative discovery, inconsistent rulings, delay in resolution of lawsuits, and wasting of judicial resources.[1]

Of particular concern to the 106th Congress in debating H.R. 2112 were serious accidents, such as airline crashes, where multiple lawsuits are filed in different states, with varied sets of plaintiffs' lawyers and several different defendants. H.R. Rep. 106-276 at 6 (July 30, 1999). The House noted that "[t]he waste of judicial resources – and the costs to both plaintiffs and defendants – of litigating the same liability question several times over in separate lawsuits can be extreme." Id. Thus, H.R. 2112 was proposed to "streamline the process by which multidistrict litigation governing disasters are adjudicated." Id. at 4.

Although similar to the MMTJA of 2002, H.R. 2112 did contain different provisions. Under H.R. 2112, district courts would have original jurisdiction over civil actions involving minimal diversity between adverse parties that arises from a single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and, in the case of injury, the injury has resulted in damages which exceed $75,000 per person, exclusive of interest and costs. There was no exception for cases in which a substantial majority of plaintiffs and the primary defendants are citizens of the same state and in which the claims

---

[1] Testimony from other individuals also conveyed concerns with "complex litigation dispersed in multiple federal and state courts and arising out of single-event catastrophes such as airline accidents, hotel fires, train wrecks and other disasters in which many people are killed or seriously injured." See Testimony of Judge John F. Nangle, Chairman, Judicial Panel on Multidistrict Litigation, June 16, 1999; see also Testimony of Honorable Howard Coble, June 16, 1999 (noting the need for "necessary improvements to a specific type of multidistrict litigation – that involving mass torts, such as airline or train accidents in which several individuals from different states are killed or injured").

asserted are governed primarily by the laws of that same state. H.R. 2112.[2] H.R. 2112 was passed by the House by voice vote under suspension of the rules.

In March 2001, Chairman Sensenbrenner introduced H.R. 860, the Multidistrict, Multiparty, Multiform Trial Jurisdiction Act of 2001. In introducing this bill, Chairman Sensenbrenner noted that changes had been made since H.R. 2112, "in an effort to generate greater support for the bill." 147 Cong. Rec. E280-02 (March 6, 2001). First, H.R. 860 required that a plaintiff allege at least $150,000 in damages (up from $75,000). Second, H.R. 860 contained an exception to the minimum diversity rule where a "substantial majority" of the plaintiffs and the "primary" defendants are citizens of the same state and in which the claims asserted are governed "primarily" by the laws of the same state. Chairman Sensenbrenner noted that "only state courts may hear such cases." Id. In introducing H.R. 860, Chairman Sensenbrenner noted that it was designed to address "a particular specie of complex litigation – so-called 'disaster' cases, such as those involving airline accidents." 147 Cong. Rec. E280-02 (March 6, 2001).

House Report 107-14 on H.R. 860 was issued on March 12, 2001. The House Report noted the changes in H.R. 860 and stated that the "revisions should reduce litigation costs as well as the likelihood of forum-shopping in airline accident cases." H.R. Rep. 107-14 at p. 5 (March 12, 2001). With respect to the addition of the exception to minimum diversity for cases in which a substantial majority of the plaintiffs and the primary defendants are citizens of the

---

2 Another aspect of H.R. 2112 concerned amendments to the multidistrict litigation (MDL) statute, 28 U.S.C.A. § 1407. In 1998, the United States Supreme Court, in Lexecone v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), held that a transferee court conducting consolidated pretrial proceedings pursuant to the MDL rules, could not transfer a case to itself for trial purposes using the federal convenience statute. H.R. 2112 sought to overturn the Lexecone decision, by allowing a transferee court to retain jurisdiction over referred cases for trial. Ultimately, there was insufficient support for this provision and therefore, the MMTJA of 2002 was passed without an amendment to the MDL statute.

same state, the report notes that such change makes it "more difficult to file or remove to federal court." Id. at 8. The House Report reflects debates held in the House regarding H.R. 860. Several representatives expressed concerns over the scope of this jurisdiction. Chairman Sensenbrenner confirmed that H.R. 860 was "designed for a specific type of litigation, the airline crash litigation." H.R. Rep. 107-14 at 29.

In debates conducted on March 14, 2001, Chairman Sensenbrenner again expressed his concerns with "a common disaster case bringing about a huge plethora of lawsuits that would be filed in courts all over the country. Given where the plaintiffs would live who were injured or killed in the plane crash, or where the airline was located, where the crash occurred, or the manufacturer of the plane and its component parts were situated, we could have lawsuits on the same disaster going on in every court." 147 Cong. Rec. H893-01 (March 14, 2001). During these debates, Representative Howard Berman (D-Ca) expressed his support of the bill and reiterated that this jurisdiction would be conferred in "**very narrow, strictly circumscribed circumstances**." Id. (emphasis added). H.R. 860 was passed under suspension of the rules on March 14, 2001.

Provisions of H.R. 860 were incorporated into H.R. 2215, the 21st Century Department of Justice Appropriations Authorization Act. There were no further hearings, given the ample legislative history. H.R. 2215 was passed by the House on July 23, 2001 and passed by the Senate on December 20, 2001. A House Conference Report (H.R. Conf. Rep. 107-685) was issued on September 25, 2002. According to this Report, changes were made to the bill, including requiring jurisdiction in actions where at least 75 people have died.[3] H.R. 2215, which included the MMTJA of 2002 was signed into law on November 2, 2002.

2. The MMTJA Does Not Apply to Plaintiffs' Claims

[3] The previous requirement was for actions in which 25 people were killed or injured.

Plaintiffs allege that this Court "may" have jurisdiction based on the MMTJA. The MMTJA does not apply to Plaintiffs' claims and therefore, Moving Defendants' Motion to Dismiss must be granted.

As stated above, under the MMTJA, federal courts have original jurisdiction over claims involving minimal diversity that arise from a single accident where at least 75 persons have died in the accident at a discrete location, if one of the following apply: (1) a defendant resides in a state and a substantial part of the accident took place in another state or location, (2) any two defendants reside in different states, or (3) substantial parts of the accident took place in different states. 28 U.S.C.A. § 1369(a)(1)(2)(3). At first glance it appears that the MMTJA may apply because more than 75 people died in the Station fire and at least two defendants in this action reside in different states. The MMTJA, however, contains an exception to this grant of original jurisdiction, which is applicable here.

The exception to jurisdiction under the MMTJA provides that federal courts shall abstain from hearing actions in which the substantial majority of all plaintiffs are citizens of a single state of which the primary defendants are also citizens and the claims asserted will be governed primarily by the laws of that state. 28 U.S.C.A. § 1369(b). Under these circumstances, "only state court may hear such cases." 147 Cong. Rec. E280-02 (March 6, 2001). The MMTJA does not define "substantial majority" or offer any guidance in determining the "primary" defendants. Webster's dictionary defines "substantial" as "considerable in amount". Webster's Third New International Dictionary at 2280 (1993). "Primary" is defined as "first in rank or importance." Id. at 1800.

In the instant case, not only are a substantial majority of the named Plaintiffs residents of Rhode Island, but in fact, all of the named Plaintiffs in this action are/were all residents of Rhode Island. Even if the Court is to consider the residency of other fire victims,

who are not Plaintiffs in this action, it is clear that a "substantial majority" of the victims are/were residents of Rhode Island. With respect to the victims whose residency is known, one hundred forty-eight are/were from Rhode Island and seventy-one are/were from other states. See Affidavit and List, attached to Motion to Dismiss as Exhibit "A". Thus, substantially more than nearly half of the known victims are from Rhode Island, which clearly constitutes a "substantial majority."

In addition, the "primary" defendants in this case include Moving Defendants, as owners and operators of the Station nightclub, the site of the fire, Triton Realty, Inc., the owner of the property, the Town of West Warwick, the State of Rhode Island, American Foam Corporation, McLaughlin and Moran, Inc., and WHJY-FM, all of whom are citizens of the State of Rhode Island.

Finally, the claims asserted by Plaintiffs are claims for negligence. In determining choice of law in tort actions, Rhode Island courts consider the place of the injury, the place where conduct causing the injury occurred, the domicile of the parties, and the place where the relationship between the parties is centered. Najarian v. National Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2000). Applying these factors to the case at bar, it is clear Rhode Island law will govern Plaintiffs' claims.[4]

As such, the MMTJA does not apply to the claims raised by Plaintiffs, and this Court does not have subject matter jurisdiction over this case.

Congress' intent in enacting the MMTJA was to provide original jurisdiction in federal courts for cases involving mass disasters, such as airline crashes. See H.R. Rep. 107-14 at 29 (noting this legislation was "designed for a specific type of litigation, the airline crash

---

4 The fire occurred in Rhode Island, the conduct allegedly causing injury occurred in Rhode Island, a majority of the parties are domiciled in Rhode Island, and the relationship between the parties is centered in Rhode Island.

litigation"). Throughout the entire legislative history of this Act, there are repeated references to airline crashes, where more often than not victims are from several different states, the accident occurs in a different state, and the defendants are from several different states. At the time this legislation was debated, there was serious concern that such cases would lead to multiple suits being filed in state and federal courts throughout the country, leading to increased costs and inconsistent results.[5]

What Congress did not intend to do in enacting the MMTJA was to open the floodgates to federal court. In fact, supporters of the bill reiterated throughout debates that this grant of jurisdiction would be applied only in "very narrow, strictly circumscribed circumstances." 147 Cong. Rec. H893-01 (March 14, 2001); H.R. Rep. 107-14 at 29 (noting the MMTJA "would only apply to a narrowly defined category of cases"). In addition, the exception to the MMTJA was added to make it "more difficult to file or remove to federal court." H.R. 107-14 at p. 8 (March 12, 2001).

In a recent article, Thomas McLaughlin of Perkins Coie, whose testimony, as mentioned above, is cited in the legislative history, discussed the exception to the MMTJA. See Thomas J. McLaughlin, "The Multiparty, Multiforum Trial Jurisdiction Act of 2002", presented at the American Bar Association's Aviation Litigation Seminar (June 5, 2003). Mr. McLaughlin refers to the Station nightclub fire and notes that this tragedy "illustrate[s] the sort of accident for which abstention may be required under this provision. For an accident occurring at a particular

[5] See also Julie Kay, *Train, Airplane Disaster Suits Must be Filed in Federal Courts*, The Recorder, Nov. 22, 2002, noting that "[v]ictims and relatives of victims of major accidents involving airplane and train crashes and other mass disasters will only be able to file lawsuits in federal court" and that "[t]he only exception is if the 'substantial majority' of all plaintiffs live in the same state as the primary defendants, which is an unlikely situation. An example would be if an airliner owned by Dallas-based American Airlines crashed in Texas with mostly Texans aboard." Here, there was a fire in a Rhode Island nightclub owned by Rhode Island defendants, and a majority of the victims were from Rhode Island.

commercial establishment, legal claims will probably be governed by the State where that establishment is located, and the parties to such litigation will likely be citizens of that state." Id. Under these circumstances, Mr. McLaughlin states that abstention may be required for claims arising out of the Station fire.

It is clear that Congress did not intend of the MMTJA to apply to claims such as the claims brought by Plaintiffs. All the named Plaintiffs in this case are from Rhode Island,[6] a majority of the Defendants are from Rhode Island, and Plaintiffs have pleaded negligence claims which will be determined by Rhode Island state law. Moreover, this accident has not resulted in numerous lawsuits filed across the country. To the contrary, in addition to this lawsuit, three lawsuits have been filed in Rhode Island state court. One of those actions is still pending and the other two were removed to federal court. Moving Defendants have filed Motions to Remand the removed actions to state court.[7]

Consequently, this Court does not have jurisdiction over this matter pursuant to the MMTJA and Plaintiffs' Complaint must be dismissed.[8]

### C. **Principles of Comity, Fairness, and Judicial Economy Dictate Dismissal of Plaintiffs' Complaint.**

Assuming arguendo that this Court finds that subject matter jurisdiction may be proper, principles of comity, fairness, and judicial economy dictate dismissal of Plaintiffs' Amended Complaint in this action. As stated above, there is one action arising out of the Station fire currently pending in state court. In situations involving the concurrent jurisdiction by federal

---

[6] Even if the Court looks beyond the named Plaintiffs to all fire victims, a majority of the fire victims are/were from Rhode Island. See Affidavit and List, attached to Motion to Dismiss as Exhibit "A".

[7] Recently, a lawsuit was filed in the federal district court in Connecticut.

[8] It is important to note that dismissal of this action will not preclude Plaintiffs from filing this action in Rhode Island state court.

and states courts, "principles of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation may justify a district court to abstain" from hearing a case. Buy-Rite Costume Jewelry, Inc. v. Albin, 676 F. Supp. 433, 435 (D. R.I. 1988) (*citing* Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976)).

There are several circumstances in which it is appropriate for a federal court to decline to hear a case, even if jurisdiction is proper. For example, a federal court may decline supplemental jurisdiction of state claims where it has dismissed all claims over which it had original jurisdiction. 28 U.S.C.A. § 1367(c)(3); Bilda v. McCleod, 41 F.Supp.2d 142 (D. R.I. 1999). In determining whether to decline such jurisdiction, the court must take into account "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619 (1988).

Here, principles of comity, fairness, and judicial economy dictate dismissal of this federal action. Prior to the filing of this federal suit, and prior to the filing of any lawsuits in the Rhode Island Superior Court, arising out of the Station nightclub fire, Presiding Judge Joseph F. Rodgers, Jr. issued Administrative Order No. 2003-4. The order states,

> All such causes of action filed in the Superior Court are assigned to the Honorable Alice Bridget Gibney in Providence for the purpose of managing, supervising, scheduling and disposing of any and all pre-trial motions pertaining to such causes.
>
> Ms. Justice Gibney is empowered to issue special orders for the due administration of these causes of action. (March 4, 2003).

See Administrative Order No. 2003-4, attached hereto as Exhibit "A". Shortly after Judge Gibney received the assignment, two complaints were filed in the Superior Court. The complaints were immediately followed by various petitions filed by attorneys representing

plaintiffs and defendants seeking to initiate efforts to preserve evidence located at the Station fire site. Judge Gibney, acting on the authority of Administrative Order No. 2003-4, scheduled a preliminary hearing which resulted in a case management order (CMO) on March 24, 2003 which provided for the immediate "documentation and investigation of the fire site, including photography, video recording, and detailed measurements." See Case Management Order dated March 24, 2003, attached hereto as Exhibit "B".

Again, on March 31, 2003, a second CMO was issued which pertained to the orderly photographing, removal, and safe storage of the evidence at the site. See Case Management Order dated March 31, 2003, attached hereto as Exhibit "C". On May 9, 2003, pursuant to petitions filed by various attorneys, Judge Gibney issued a third preliminary CMO, Pre-trial Order No. 1, which effected the creation and maintenance of attorney service lists, the scheduling of pre-trial conferences, and the appointment of interim lead counsel and liaison counsel. See Case Management Order dated May 9, 2003, attached hereto as Exhibit "D". Had it not been for Judge Gibney's early intervention, evidence would have been forever lost, adversely affecting the rights of each and every victim of the fire.

Dismissing this federal action to allow Plaintiffs to re-file in state court is the only way to ensure that all victims have equal standing. Allowing the federal action to continue while state actions involving the same issues are pending, or not yet even filed, may result in inconsistent results. In addition, judicial economy will be served by having the issues arising out of the Station fire resolved in the same forum. Likewise, the maintenance of these suits in state court will avoid duplicative discovery and reduce litigation costs to the parties.

For all these reasons, in the event this Court finds subject matter jurisdiction is proper, this matter must be dismissed based on principles of comity, fairness, and judicial economy.

## IV. CONCLUSION

For all the reasons set forth above, Plaintiffs cannot meet their burden of affirmatively proving this Court has subject matter jurisdiction over Plaintiffs' claims, and, as such, Defendants Motion to Dismiss must be granted.

JEFFREY DERDERIAN, MICHAEL DERDERIAN, AND DERCO, d/b/a THE STATION, by their attorney

Anthony F. DeMarco, Esquire #0799
REYNOLDS, DeMARCO & BOLAND, LTD.
170 Westminster Street, Suite 200
Providence, RI 02903-2196
(401) 861-5522
Fax: (401) 331-4861

Pro Hac Vice:

Christopher C. Fallon, Jr., Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000
Fax: (215) 665-2013

CERTIFICATION

I hereby certify that on the 18th day of July, 2003, I mailed a copy of the within to the following attorneys of record:

Marc DeSisto, Esquire
DeSISTO LAW
211 Angel Street
P.O. Box 2563
Providence, RI 02906

Thomas C. Angelone, Esquire
HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Place, Suite 1050
Providence, RI 02903

Max Wistow, Esquire
WISTOW & BARYLICK, INC.
61 Weybosset Street
Providence, RI 02903

James Ruggieri, Esquire
HIGGINS, CAVANAGH & COONEY, LLP
The Hay Building
123 Dyer Street
Providence, RI 02903-3987

Randall L. Souza, Esquire
NIXON PEABODY, LLP
1 Citizens Plaza
Providence, RI 02903

Curtis R. Diedrich, Esquire
Edward T. Hinchey, Esquire
SLOAN & WALSH
3 Center Plaza
Boston, MA 02108

Mark S. Mandell, Esquire
MANDELL, SCHWARTZ & BOISCLAIR
1 Park Row
Providence, RI 02903

Howard A. Merten, Esquire
Eric M. Sommers, Esquire

Joseph V. Cavanagh, Jr., Esquire
Kristin E. Rodgers, Esquire
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903

James Reilly, Esquire
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903

Ronald J. Resmini, Esquire
155 South Main Street, Suite 400
Providence, RI 02903

Susan Auclair

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

**ADMINISTRATIVE ORDER NO. 2003-4**

In re: LITIGATION AS A RESULT OF THE FIRE AT THE STATION IN WEST WARWICK ON FEBRUARY 20, 2003

*ASSIGNMENT OF JUSTICE FOR MULTI-CASE MANAGEMENT*

---

All such causes of action filed in the Superior Court are assigned to the Honorable Alice Bridget Gibney in Providence for the purpose of managing, supervising, scheduling and disposing of any and all pre-trial motions pertaining to such causes.

Ms. Justice Gibney is empowered to issue special orders for the due administration of these causes of action.

BY ORDER OF:

JOSEPH F. RODGERS, JR.
PRESIDING JUSTICE

DATED: March 4, 2003

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

IN RE: THE STATION FIRE IN
WEST WARWICK, RHODE ISLAND
ON FEBRUARY 20, 2003

M. P. NO.: 03-1326
M. P. NO.: 03-1346
M. P. NO.: 03-1431

## ORDER

This matter is before the Court on the Miscellaneous Petition of Luis F. Alves, Mary A. Alves, and Robert W. Rager, Judith O'Brien, Lawrence Fick and Deborah Lemay, Claire Bruyere, Nancy A. Lee and Michael Perreault and others ("Potential Plaintiffs") who are Potential Plaintiffs in lawsuits yet to be filed arising out of the tragic fire which occurred on February 20, 2003, at 211 Cowesett Avenue, West Warwick, Rhode Island (the "Fire") also known as The Station (the "Premises") and on the Miscellaneous Petition of Unnamed Defendants (defined below) ("Petitioners").

All the Petitioners seek an Order from this Court authorizing a team of experts that has been retained by the Petitioners' attorneys to have immediate access to the fire scene for the purposes of

(a) Documentation and investigation of the fire site, including photography, video recording, and detailed measurements;

(b) Tagging and photographing, in place, identifiable artifacts including structural components, building system (e.g. heating, ventilation, air conditioning, wiring) components, finishes, fixtures, and building content samples;

(c) Sorting, identifying, documenting, and recording all other artifacts of interest, including but not limited to the items described in subparagraph (b) above; and

EXHIBIT 3

(d) Removing, for stabilization and preservation purposes, all artifacts identified by the tasks described in paragraph (c) above.

Whereas, it appearing to the Court that lawsuits have already been field on behalf of several plaintiffs ("Named Plaintiffs") and it is inevitable that numerous additional lawsuits will be filed on behalf of the estates and/or survivors of the decedents and by those who were injured ("Unnamed Plaintiffs"); and

Whereas, it appearing to the Court that several individuals and entities have been named as defendants in the lawsuits filed to date ("Named Defendants") and based upon the history of similar tragic events and the comments to the press by several lawyers representing the victims, numerous additional individuals and entities, (some known and some unknown) will be named as defendants in future lawsuits ("Unnamed Defendants"); and

Whereas, it appearing to the Court that it is in the collective interests of all Named Plaintiffs, Unnamed Plaintiffs, Named Defendants and Unnamed Defendants ("Interested Parties") that the investigation and documentation of the Fire scene, collection and storage of artifacts, and any testing of artifacts (the "Fire Investigation") be conducted in a fair and equitable matter with all Interested Parties having such access to the Premises as approved by the Court, but with appropriate controls in place to protect the Fire scene and the integrity of the artifacts.

IT IS THEREFORE ORDERED that, in order to accomplish these goals, the Fire Investigation shall proceed as follows:

1. The Premises shall be made open and available for the sole purposes of

observing, photographing, videotaping and taking of measurements of the site ("Phase I Investigation") on Wednesday, March 26, 2003, from 9:00 a.m. to 6:00 p.m. No other activities shall be permitted or performed. Any Interested Party shall be permitted to have one expert, with one assistant if needed, and a limited number of attorneys participating in this Phase I Investigation. Each Interested Party intending to participate in Phase I Investigation shall fax the names of the attending investigator, assistant and attorneys to Timothy A. Williamson (401-823-9278) and Marc DeSisto (401-272-9937) by 3:00 p.m. on Tuesday, March 25, 2003. The names of the investigators, assistants and attorneys participating in Phase I, shall be shared with all Interested Parties upon request.

2. Prior to admittance to the Premises, each expert, assistant and attorney shall sign a copy of this Order agreeing to be bound by its terms and a Release holding the Town of West Warwick and the owners of the premises and each Interested Party harmless from any claim for damages or injuries that may arise out of the participation in the investigation. Such agreed Order and Release will be made available at the check point for signature prior to admission to the Premises.

3. A check point will be established and maintained by the Town of West Warwick at the main entrance of the Premises. All participating experts, assistants and attorneys must execute the agreed Order and Release described above and sign in at the check point prior to admission to the Premises.

4. The law firms of Decof & Decof, Mandell, Schwartz & Boisclair and Wistow & Barylick, shall reimburse the Town of West Warwick the actual out of pocket expenses

of maintaining the secure status of the Premises from March 21, 2003 through March 28, 2003 not to exceed $800 per day.

5. A hearing shall be held by the Court on Friday, March 28, 2003 at 9:30 a.m. to consider all requests for leave to perform additional investigative activities ("Phase II Investigation").

6. The Interested Parties shall be permitted to engage the services of Advantage Elevated Photography for purposes of taking elevated photographs of the Premises on the date of inspection. The cost of such photographs will be shared by all who request copies.

7. All photographs and videotapes taken by any Interested Party during Phase I shall be made available to all other Interested Parties upon payment of the cost of reproduction.

8. Petitioners' request for leave to issue a subpoena duces tecum for service upon WPRI Channel 12 is voluntarily withdrawn without prejudice.

9. All existing notices and orders regarding the Premises issued by the Town of West Warwick, including but not limited to it's Building Official, shall be held in abeyance until further order of this Court.

Entered this 24th day of March, 2003.

Gibney, J.
JUDGE, SUPERIOR COURT

Denise M. Sheeter
Deputy Clerk

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

IN RE: THE STATION FIRE IN WEST WARWICK

M.P. NO.: 03-1326
M.P. NO.: 03-1346
M.P. NO.: 03-1431

**ORDER**
**(PHASE II)**

This matter is before the Court on the Supplemental Petition of Attorneys Mark B. Decof, Mark S. Mandell and Max Wistow, on behalf of their respective clients, Luis F. Alves, Mary A. Alves, Robert W. Rager (M.P. No.: 03-1326), Judith O'Brien, Lawrence Fick, Deborah Lemay, Claire Bruyere, Nancy A. Lee, Michael Perreault (M.P. No.: 03-1346) and others (hereinafter "Potential Plaintiffs") to obtain access to the site of The Station fire for Phase II of the Fire Scene investigation.

WHEREAS, there is evidence that remains on the Fire Scene,

WHEREAS, the materials and Artifacts at the Fire Scene constitute potential physical evidence,

WHEREAS, this Court previously entered an Order setting out the manner in which Phase I of the Fire Scene investigation was to proceed, the terms of which Order are adopted herein by reference,

WHEREAS, the materials and Artifacts of the Fire Scene ("the Artifacts") remain subject to exposure and degradation by the elements,

WHEREAS, security of the site to prevent unauthorized access and to preserve items of interest is now being provided by the West Warwick Police Department at the expense of

EXHIBIT 4

SUPERIOR COURT FILED HENRY S. KINCH

counsel for the Potential Plaintiffs through March 28, 2003. The cost of such security is $840 per day,

WHEREAS, time is of the essence for identifying and removing all Artifacts because such items remain subject to exposure and degradation by the elements.

IT IS THEREFORE ORDERED that Phase II of the Fire Investigation shall proceed as follows:

1. In order to preserve the Artifacts for later examination and for the trial of any current or future civil lawsuits regarding deaths or injuries that occurred during The Station fire, immediate future access to the site for the purpose of a thorough examination of all material and Artifacts on the site, non-destructive "tagging" of all Artifacts, and removal of such Artifacts to an agreed upon and secure, centrally located and agreed upon off-site storage facility (the "Repository") is authorized. The Artifacts, including sections of the structure of The Station building where the fire began that now remain standing may be removed in the manner set out herein.

2. The Interested Parties are directed to cooperate with one another regarding tagging and removal of Artifacts. The experts/investigators identified in paragraph 6 shall tag and remove any Artifact identified by an expert or investigator retained by any Interested Party.

3. The stored Artifacts shall be available for inspection and use by any Interested Parties' attorneys, experts and investigators upon the establishment of protocols approved by this Court that will ensure that the integrity of all such Artifacts will be maintained. No Interested Party shall have access except under the future protocols of the Court. Testing of

any Artifact will also be subject to protocols established in the future and approved by this Court.

4. Counsel for the Potential Plaintiffs and Higgins, Cavanagh & Cooney, counsel for Unnamed Defendants, at their initial expense, as set out herein, shall select, obtain and maintain, pursuant to the subsequent Orders of the Court, the off-site Repository where the Artifacts will be securely stored for later examination, testing and use.

5. The site analysis protocol is set out in detail below:

a. A grid system shall be developed at the site with appropriate references to assure accurate identification of the location of all items of interest.

b. To identify all items of interest, the entire site will be hand sifted using trowels and screens as necessary. Mobile cranes will be used as necessary to lift and move large pieces of debris.

c. Artifacts will be photographed in place by a photographer selected by counsel for Potential Plaintiffs and Unnamed Defendants and tagged with a brief description of the item and the location where it was found.

d. Any Interested Party may identify any Artifact to be tagged, photographed and removed to the Repository.

e. All Interested Parties present shall have the opportunity to photograph, videotape and otherwise document any Artifacts either before, during or after they have been tagged and numbered for reference.

f. Organic Artifacts shall be air dried in ventilated containers.

g. An evidence log shall be created and maintained which will record each Artifact that has been tagged and removed to the Repository as it is tagged and received. The evidence log will be available to all Interested Parties during Phase II and a final log will be provided to all Interested Parties at the conclusion of Phase II.

h. Artifacts that have been tagged and removed for storage will be stored at the Repository for future access.

6. The tagging and removal shall be conducted by Carl Duncan, David Demers, Bernard Schwartz and John Hoffman or designees, if needed. They may be assisted by approximately eight support staff who will physically uncover, tag, photograph and retrieve the Artifacts. It is estimated that it will take approximately ten working days to thoroughly examine the entire site and identify, remove and store all items of interest. The Phase II investigation shall commence on Wednesday, April 2, 2003. The scene thereafter will be open every day from 8:00 a.m. to 6:00 p.m., weather permitting. No access by any person will be allowed except during these times.

7. Any expert or investigator designated by any attorney may have access to the site during the times set out above, but only for the purpose of observing, photographing, videotaping and identifying items of interest. For control and efficiency, the individuals identified in paragraph 6 and their support staff shall be responsible for removing and storing all items of interest. Only one secure Repository where all items of interest are stored shall be designated.

8. Any photographs or videotapes taken by an Interested Party or taken pursuant to Paragraphs 5 and 6, shall be made available to any Interested Party upon request and payment of reproduction costs.

9. Subject to the reallocation procedures set out in paragraph 10 and further Orders of this Court, counsel for Potential Plaintiffs and counsel for Unnamed Defendants, shall equally share the costs of the following:

a. The fees and expenses of the individuals designated in paragraph 6 incurred in connection with this Phase II Investigation, except that counsel for Unnamed Defendants shall bear 100% of the fees and expenses of John Hoffman.

b. The costs of transporting all Artifacts to the Repository.

c. The costs of securing the fire scene (counsel for Unnamed Defendants shall reimburse counsel for Potential Plaintiffs half of the costs thus far incurred for security at the fire scene from March 21, 2003 through March 28, 2003).

d. The costs of cataloging all Artifacts received at the Repository.

e. The costs of obtaining, maintaining and securing the Repository.

10. Counsel for Potential Plaintiffs and Unnamed Defendants shall be fairly and equitably reimbursed their costs of identifying, tagging, photographing, storing Artifacts and maintaining the Repository by any person who wishes to have access to such items for the purpose of making or defending claims arising out of injuries incurred at The Station Fire. Counsel for Potential Plaintiffs shall be reimbursed as follows:

a. Potential Plaintiffs' total will be apportioned pro rata for each plaintiffs' attorney or Potential Plaintiffs' attorney who make use of the Repository rather than by number of plaintiffs represented. Since the total number of attorneys who will make use of the Repository cannot be determined until the end of all the litigation arising out of the fire, the costs will be reallocated each time an additional party seeks access to the Repository. For example, if the total costs are $100,000 and are initially borne by plaintiffs' counsel ($33,333.33 each), then when the fourth attorney makes use of the Repository, the fourth attorney will contribute $25,000 towards reimbursement of the original three attorneys. As each additional attorney makes use of the Repository, this reimbursement process will be repeated.

b. As to Potential Plaintiffs, all such apportioned payments are contributions to be advanced by attorneys personally and not by their clients. This provision is without prejudice to the right of the Potential Plaintiffs' attorneys to be reimbursed from the proceeds of any future recovery.

11. Counsel for Unnamed Defendants shall be reimbursed in a manner to be subsequently determined pursuant to an Order of this Court. Triton Realty shall be granted access to the scene and the storage facility without obligation to reimburse counsel for Unnamed Defendants subject to a future Order of this Court.

12. Prior to admittance to the Premises, each expert, assistant and attorney shall sign a copy of this Order agreeing to be bound by its terms and a Release holding the Town of

West Warwick and the owners of the premises and each Interested Party harmless from any claim for damages or injuries that may arise out of the participation in the investigation. Such agreed Order and Release will be made available at the check point for signature prior to admission to the Premises.

13. All existing notices and orders regarding the Premises issued by the Town of West Warwick, including but not limited to its Building Official, shall be held in abeyance until further order of this Court.

14. Counsel for the Potential Parties and counsel for Unnamed Defendants, shall work cooperatively withe the Town of West Warwick to resolve issues of site security during Phase II and shall also work with the Town to attempt to insure that work conducted in connection with Phase II at the site does not increase the ultimate cost of clean up of the site at the conclusion of Phase II.

Entered this 31st day of March, 2003.

Alice Bridget Gibney

JUDGE, SUPERIOR COURT Assoc. Justice

Dawn McGeiche
Deputy

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

| | | | |
|---|---|---|---|
| IN RE: | THE STATION FIRE IN WEST WARWICK, RHODE ISLAND ON FEBRUARY 20, 2003 | : : : : | M.P. NO.: 03-1326<br>M.P. NO.: 03-1346<br>C.A. NO.: 03-1171<br>C.A. NO.: 03-1084 |

**PRETRIAL ORDER NO. 1**
**(Preliminary Case Management Order)**

This Court having been specially assigned to preside over all Superior Court litigation arising from the February 20, 2003 fire at The Station nightclub in West Warwick, Rhode Island, and it appearing that the just, speedy and inexpensive resolution of the pending and anticipated litigation will be advanced by early and specific administration by this Court,

It is clear that this case presents the likelihood of significantly complex litigation that will impose substantial burdens on the courts and parties. The Court is advised and knows that the vast majority of potential claimants have not filed suit and there is no requirement that they do so at such an early date. Indeed, there is substantial benefit to all parties to have the cases ultimately filed proceed in a uniform, coordinated manner.

In order to establish a preliminary structure and case management procedure for this case,

**IT IS HEREBY ORDERED THAT**

1. This order shall apply to and govern all pending actions, petitions relating to or arising from the February 20, 2003 Station fire as well as any actions that may be filed in the future.

EXHIBIT 7

Interim Associate Counsel is:

**Patrick Jones, Esquire**
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 02110

Appointment of Interim Associate Counsel is conditional upon said counsel's shouldering an appropriate portion of both the resources and the funding demanded by this endeavor. The Court will confer with Interim Lead Counsel and Interim Associate Counsel next Wednesday, May 14, 2003 at 8:30 a.m. to confirm details of this arrangement.

The Court finds these lawyers represent a substantial group of plaintiffs, have demonstrated their ability to work together for the benefit of all plaintiffs, and have the ability and resources to discharge the duties of Interim Lead Counsel and Interim Associate Counsel. The Interim Lead Counsel and Interim Associate Counsel shall serve until further order of this Court.

7. Liaison Counsel. This Court finds it appropriate to appoint Interim Liaison Counsel for the purposes of:

(1) facilitating communications between Court and defense counsel and between Interim Lead Counsel and Interim Associate Counsel and defense counsel,

(2) facilitating receiving and distributing notices, orders, motions, briefs and other communications on behalf of defendants, convening meetings of counsel, and otherwise assisting in organization and coordination of activities.

Liaison Counsel is:

**James A. Ruggieri, Esquire**
HIGGINS, CAVANAGH & COONEY
123 Dyer Street
Providence, RI 02903

8. Privileges Preserved. No communication among plaintiffs' counsel or among defendants' counsel shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

**ENTER:**

Alice B. Gibney
Associate Justice

**BY ORDER:**

Deputy Clerk

**DATE:** 5/9/03