UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TAMMY PASSA, alias, et al.,

*Plaintiffs,*

vs.

JEFFREY DERDERIAN, et al.,

*Defendants.*

C.A. NO. 03-148L

**OBJECTION OF DEFENDANTS, TOWN OF WEST WARWICK AND DENIS LAROCQUE, TO CO-DEFENDANT AMERICAN FOAM CORPORATION'S MOTION TO ABSTAIN OR DISMISS**

NOW COME Defendants, Town of West Warwick and Denis Larocque, and hereby object to Co-defendant American Foam Corporation's Motion to Abstain or Dismiss. In support thereof, these defendants rely on the memorandum attached hereto and incorporated herein.

Defendants,
Town of West Warwick and Denis Larocque,
By their Attorneys,

Marc DeSisto

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

70

C.A. No. 03-148L

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within Objection of Defendants, Town of West Warwick and Denis Larocque, to Co-defendant American Foam Corporation's Motion to Abstain or Dismiss was mailed, postage prepaid, on this 5th day of August 2003, to:

Ronald J. Resmini, Esq.
Resmini Law Offices Ltd.
155 South Main St – Ste 400
Providence, RI 02903
(401) 751-8855
(401) 737-6464 fax

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
Morrison, Mahoney & Miller
1 Providence Washington Plz
Providence, RI 02903
(401) 331-4660
(401) 351-4420 fax

Thomas C. Angelone, Esq.
Hodosh Spinella & Angelone, PC
1 Turks Head Pl – Ste 1050
Providence, RI 02903
(401) 272-0200
(401) 274-7538 fax

James R. Lee, Esq.
Chief, Civil Division
Department of Attorney General
State of Rhode Island
150 South Main St
Providence, RI 02903
(401) 274-4440
(401) 222-2995 fax

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 fax

William P. Robinson, III, Esq.
Stephen M. Prignan, Esq.
Stephen J. MacGillivrary, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 fax

Anthony F. DeMarco, Esq.
Reynolds, DeMarco & Boland, Ltd.
170 Westminster St – Ste 200
Providence, RI 02903
(401) 861-5522
(401) 331-4861 fax

Daniel P. McKiernan, Esq.
146 Westminster St
Providence, RI 02903
(401) 273-2210
(401) 273-0340 fax

C.A. No. 03-148L

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Pl
Providence, RI 02903
(401) 421-3060
(401) 272-6803 fax

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington St
Roxbury, MA 02119
(617) 442-0050 x 24
(617) 442-2319 fax

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson & Curran, LLP
146 Westminster St
Providence, RI 02903
(401) 421-2154
(401) 521-7040 fax



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TAMMY PASSA, alias, et al.,

*Plaintiffs,*

vs. C.A. NO. 03-148L

JEFFREY DERDERIAN, et al.,

*Defendants.*

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF DEFENDANTS, TOWN OF WEST WARWICK AND DENIS LAROCQUE, TO CO-DEFENDANT AMERICAN FOAM CORPORATION'S MOTION TO ABSTAIN OR DISMISS**

## I. INTRODUCTION

The "Multiparty, Multiforum Jurisdiction Act", *28 U.S.C. § 1369,* was enacted to confer jurisdiction on this Court in mass tort litigation such as raised by the instant suit. Although a newly enacted statute, the clear language of the Act supports not only the conclusion that this Court possesses jurisdiction over this Complaint, but also that this Court should not abstain from exercising that jurisdiction.

Co-defendant American Foam Corporation (hereinafter "American Foam") has nevertheless asked this Court to rely upon the legislative history of *§ 1369* to rule that this Court lacks jurisdiction over the instant action. American Foam also maintains that the language of *§ 1369* itself requires this Court to abstain from exercising its jurisdiction over this Complaint.

Co-defendants, Town of West Warwick and Denis Larocque (hereinafter collectively "Town") submit, in the first instance, that the Court does not need to resort to the legislative history of the Act to interpret the same because the language of *§ 1369* is neither vague nor

ambiguous. Moreover, in giving the language of *§ 1369* its plain and ordinary meaning, it becomes clear that this Court not only possesses jurisdiction over this Complaint, but also that there is no basis for the Court to abstain from hearing the instant claim.

## II. STANDARD OF REVIEW

American Foam has asked this Court to dismiss the instant action for lack of jurisdiction or, in the alternative, to abstain from hearing the instant Complaint. In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the court must "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)*. The plaintiff "carr[ies] the burden of demonstrating the existence of federal jurisdiction." *Id. See also Campagna v. Com. of Massachusetts Dept. of Environmental Protection, 206 F.Supp.2d 120, 121 (D.Mass. 2002).*

In the instant case, plaintiffs—all alleged victims of a fire that occurred at the Station nightclub in West Warwick, RI, on February 20, 2003—claim jurisdiction by virtue of *28 U.S.C. § 1369*, the "Multiparty, multiforum jurisdiction" statute. The Town submits that when plaintiffs' Complaint is viewed liberally and its facts treated as true, there can be no dispute that this Court possesses jurisdiction over the instant complaint and that this Court is not required to abstain from exercising that jurisdiction.

## III. ARGUMENT

### *A. The Language of the Statute—Not The Legislative History— Dictates Its Application.*

The Town submits, in the first instance, that the clear language of *§ 1369* supports the finding that this Court possesses subject matter jurisdiction over the instant suit. American Foam nevertheless has moved to dismiss based on the position that the legislative history of *§ 1369* demonstrates that it was not enacted to cover suits of the instant nature. However, because the language of *§ 1369* is unambiguous, this Court does not need to resort to the legislative history in order to interpret the plain language of the statute.

It is well-settled that in interpreting statutes, courts must "begin with the language of a statute and ask whether Congress has spoken on the subject." *Norfolk & Western Railway Co. v. American Train Dispatchers' Ass'n, 499 U.S. 117, 128 (1991).* "[I]f the language of the statute is reasonably definite, it must be regarded as conclusive, and legislative history should not be consulted." *United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987).* As noted by the Supreme Court, "[t]he plain words and meaning of a statute cannot be overcome by legislative history which through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." *Gemsco (Inc.) v. Walling, 324 U.S. 244, 260 (1945). See also Summit Investment & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir. 1995).*

In the instant case, the plain and unambiguous language of *§ 1369* supports a finding that this Court possesses subject matter jurisdiction over the instant suit. Section 1369(a) specifically outlines the elements needed to confer jurisdiction in the District Court. Pursuant to the plain language of that subsection, this Court possesses jurisdiction over any civil action where:

1. a single accident has occurred at a discrete location;

2. at least 75 have died;

3. minimal diversity[1] exists between adverse parties; and

4. a defendant resides in a different State from where a substantial part of the accident took part place, or any two (2) defendants reside in different States, or substantial part of the accident took place in different States. *28 U.S.C. § 1369(a).*

While the statute goes on to outline circumstances wherein the District Court should abstain from exercising this jurisdiction, it is these four (4) elements that dictate in the first instance whether jurisdiction exists. These four (4) elements are clear and unambiguous and there can be no dispute that each of these elements is met in the instant case. *American Foam's Memorandum, at 4.*

First, as reflected by plaintiffs' Complaint, a single accident, a fire, took the lives of at least 75 individuals. *Plaintiffs' Complaint, at ¶4.* In addition, at least one of the defendants resides in a State different from the named plaintiffs, thus establishing minimal diversity among the parties. *Id. at ¶1 and ¶12, for example.* Finally, at least one defendant resides in a State different from that in which the accident occurred. *Id. at ¶12, for example.* Consequently, under the clear terms of the statute and plaintiffs' Complaint, *§ 1369* confers jurisdiction in this Court.

Co-defendant, American Foam, does not challenge the plaintiffs' factual allegations relating to jurisdiction or the fact that the prima facie elements of jurisdiction under *§ 1369(a)* are met by the instant Complaint. *American Foam's Memorandum, at 4.* Rather, American

[1] As defined by the statute, "minimal diversity" exists where any party is a citizen of a state and any adverse party is a citizen of another State or foreign State. 28 U.S.C. § 1369(c)(1).

Foam argues that this Court should nevertheless look at the legislative history to determine if this statute intended to confer jurisdiction in the instant case because certain terms in other parts of the statute are "ambiguous." Even assuming, without conceding, that other terms of the statute are vague or ambiguous, resorting to the legislative history would only be appropriate to assist in interpreting those ambiguous terms. The legislative history cannot be used to change the plain meaning of *§ 1369(a)* which, as conceded by American Foam, clearly grants this Court jurisdiction over the instant suit. *Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (reiterating "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there").* Consequently, American Foam's plea for this Court to resort to the legislative history in order to defeat such jurisdiction should be rejected and their motion to dismiss for lack of jurisdiction should likewise be denied.

The Town further submits that even if this Court were to look beyond subsection (a) to determine if the language in the statute was ambiguous, there is no support for the position that the terms cited by American Foam are vague or ambiguous. American Foam specifically argues that because the terms "substantial majority" and "primary defendants," as contained in subsection (b), are not defined by the statute, they are inherently ambiguous. However, simply because a term is not defined in a statute is not in itself a basis for finding that the term is ambiguous. *U.S. v. Houlihan, 871 F.Supp. 1495, 1502 n.4 (D.Mass. 1994) ("[Q]uestions regarding the application of a statute to the facts of a particular case do not render a statute ambiguous") citing Office Of Legal Policy, Report To The Attorney General, Using And Misusing Legislative History: A Re-Evaluation Of The Status Of Legislative History In Statutory Interpretation IV (1989) (meaning of statute may be plain even where the application of the statute is in dispute).* Under the rules of statutory construction, the Court will "attribute to words

that are not specially defined in the text their ordinary usage, albeit with the commonsense understanding that meaning can only be ascribed to language when it is taken in context." *Atlantic Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224 (1st Cir. 2003).* As more fully explained below, when one ascribes to these terms the meanings of their ordinary usage, not only are the terms *not* ambiguous, it also becomes clear that this Court should not abstain from hearing the instant suit but rather exercise its jurisdiction.

The Town finally submits that even if this Court were to look to the legislative history to ascertain the application of the statute to the instant suit, American Foam erroneously focuses on the events that led to the introduction of the Act rather than on the ultimate intended effect of the same. More specifically, American Foam cites the fact that the primary example used by Congressmen of the type of claim that would fall under the auspices of the Act was disasters involving airplane crashes. However, while it is true that this is one of the examples cited during discussions involving passage of the Act, it certainly was not the only example. As noted by American Foam itself, the plane crash scenario was just one of the disasters contemplated by Congress. Other examples cited by Congressmen included "a hotel [that] has burned in a Las Vegas fire, or two trains [that] have collided in Maryland." *American Foam's Memorandum, at 6 citing 137 Cong. Rec. E1923 (daily ed. May 24, 1991).*

However, perhaps the best evidence that Congress did not intend to limit the application of *§ 1369* to airplane crashes is revealed in the language of the statute itself. *Norfolk & Western Railway Co., 499 U.S. at 128 (courts must "begin with the language of a statute and ask whether Congress has spoken on the subject").* In enacting the statute, Congress could have easily specifically identified plane crashes as the sole type of claims covered by the Act. Rather than do so, however, Congress recognized that there were other kinds of disasters that warranted

establishing federal jurisdiction. Congress thus identified the parameters that would warrant the Court's exercising its jurisdiction. Simply because a certain type of disaster was a common example cited by Congressmen to support the need for the legislation, this commentary cannot be used to overcome the clear language of the statute. Gemsco (Inc.), *324 U.S. at 260 ("[t]he plain words and meaning of a statute cannot be overcome by legislative history which through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction").* If this were the rule, then commonly used statutes such as the Civil Rights Act, *§ 1983*, would likewise be limited in its application. The Civil Rights Act, originally named the Ku Klux Klan Act of 1871, was enacted to instill federal control over state and territorial officials who were reluctant to prosecute persons who violated the rights of newly freed slaves and union sympathizers. However, since its plain language permitted broader application, *§ 1983* has been used over the past 100 years to address state actors' violation of constitutional rights beyond simply a failure to prosecute individuals violating the rights of newly freed slaves. Likewise in the instant case, although disasters involving plane crashes may have been one of the types of claims contemplated as falling under the Act, the plain language of *§ 1369* is not limited to such disasters.

In the final analysis, it is the language of the statute and not the legislative history that must control whether this Court exercises jurisdiction over the instant claim. The Town submits that this plain language reveals that this Complaint falls within the clear parameters of the type of the Complaints Congress intended to confer jurisdiction on this Court. Accordingly, American Foam's Motion to Dismiss the instant action should be denied.

***B. This Court Should Not Abstain From Exercising Its Jurisdiction.***

As noted, American Foam alternatively maintains that pursuant to subsection (b) of *§ 1369*, this Court must abstain from exercising its jurisdiction over the instant Complaint. Section 1369(b) specifically states that this Court shall abstain from exercising its jurisdiction "if the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens and . . . the claims asserted will be governed primarily by the laws of that State." *28 U.S.C. § 1369.*

In the first instance, the Town agrees that the second prong of this standard is met in that the negligent claims asserted against the various defendants will be governed primarily by Rhode Island law. The question then becomes whether a "substantial majority" of the plaintiffs herald from the same or different State than that of the "primary defendants."

In support of its claim that this Court should abstain from the instant suit, American Foam first maintains that approximately fifty-nine percent (59%) of the entire class of potential plaintiffs are residents of Rhode Island. American Foam takes the position that this fifty-nine percent (59%) represents a "substantial majority" of the entire class of potential plaintiffs. However, even though "substantial majority" is not defined by the statute, as noted, the Court must apply the plain and ordinary meaning of the terms in order to ascertain the true intent of the Act. In this case, there can be no dispute that the term "majority" is ordinarily defined as encompassing more than fifty-percent (50%).[2] Meanwhile, "substantial" is defined as "considerable in quantity or significantly great."[3] Accordingly, in order to qualify as a

---

[2] "Majority." Merriam-Webster, 2003. Merriam-Webster OnLine. 01 Aug, 2003 <http://www.m-w.com/cgi-bin/dictionary>.
[3] "Substantial." Merriam-Webster, 2003. Merriam-Webster OnLine. 01 Aug, 2003 <http://www.m-w.com/cgi-bin/dictionary>.

"substantial majority," the class of plaintiffs from Rhode Island must account for a "considerable" or "significant" number in excess of fifty-percent (50%). In this case, according to American Foam, just over fifty-nine percent (59%) of the entire plaintiff class reside in Rhode Island. This additional nine percent (9%) above the majority can hardly be said to be "significant" or "considerable." The Town thus submits that although a majority of the plaintiffs herald from Rhode Island, it cannot be said that fifty-nine (59%) amounts to a "substantial majority."

The Town further submits that even if the Court were to conclude that a "substantial majority" of the plaintiffs are from Rhode Island, the Court would further have to find that the "primary defendants" herald from a state other than Rhode Island in order to justify abstention from the instant suit. American Foam maintains that owners of the Station nightclub, who are residents of Rhode Island, are the "primary defendants" as contemplated by the statute. American Foam thus maintains that because the Station owners are residents of Rhode Island, the same state as the "substantial majority" of plaintiffs, the Court must abstain pursuant to *§ 1369(b)*.

However, as noted, when interpreting a statute, the Court must give the undefined words their ordinary usage and definition. *Atlantic Fish Spotters Ass'n, 321 F.3d at 224.* Claiming that the general definition of "primary" is not helpful to the Court, American Foam alleges that, as defined, "primary" is limited to "first or highest in rank, quality, or importance; principal." *American Foam's Memorandum, at 12.* American Foam reasons that because the statute contemplates more than one (1) defendant (as evident by use of the plural form of defendant), this definition is of no assistance to the Court. *Id.* However, American Foam erroneously relies upon the definition of "primary" when it is used as a noun. According to Merriam Webster,

when the word "primary" takes on the function of an adjective, as it does in *§ 1369(b)*, it is defined, inter alia, as "belonging to the first *group* or order in successive divisions, combinations, or ramifications."[4] In the instant case, taking the terms "primary defendants" in context and applying the ordinary usage of the same, it reasonably follows that Congress intended "primary defendants" to encompass the "first group" who primarily could be held liable to plaintiffs for their injuries.

This interpretation of "primary defendants" is well supported by the clear text of the statute. *Norfolk & Western Railway Co., 499 U.S. at 128 (courts must "begin with the language of a statute and ask whether Congress has spoken on the subject").* As written, *§ 1369(b)* specifically contemplates that there will more than one (1) primary defendant in a mass tort litigation. In fact, as recognized by American Foam, Congress specifically used the term "primary defendants." Use of the plural term demonstrates Congress' recognition that in mass tort litigation such as the instant case, there is more than likely going to be more than one (1) primary defendant who could potentially be held liable for damages to plaintiffs.

The instant case is a prime example of such a circumstance. While the Town recognizes that the Station nightclub owners are a primary defendant, they are not the only one. Rather, plaintiffs' Complaint specifically alleges that co-defendants, members of the Great White band (Jack Russell, Mark Kendall, David Filice, and Eric Powers) and their management staff (Daniel Bichele, Tour Manager; and Paul Woolnaugh of Knight Records), caused the fire through their negligent use of pyrotechnic display during the stage show. *Plaintiffs' Complaint, at ¶102.* The Complaint further alleges that it was the duty and responsibility of the Great White band

---

[4] "Primary." Merriam-Webster, 2003. Merriam-Webster OnLine. 01 Aug, 2003 <http://www.m-w.com/cgi-bin/dictionary>.

members and their staff to obtain the necessary permits for such displays. *Id. at ¶104*. If the allegations in plaintiffs' Complaint are accepted as true and all reasonable inferences are drawn in favor of plaintiffs, then it is quite clear that the primary defendants, those who will be first held liable to the plaintiffs, would include the parties who actually started the fire through the negligent use of the pyrotechnics.

American Foam argues that the nightclub owners are the sole "primary defendants" because they hold the first level of duty to protect business invitees. According to American Foam: "but for the existence of the Station nightclub there would have been no case." *American Foam's Memorandum, at 15.* Under this rationale, it likewise follows that "but for" the alleged negligent pyrotechnic display by Great White, "there would have been no case." While plaintiffs' Complaint alleges that the nightclub owners contributed to the fire through various negligent acts, it is simply unfathomable to consider that a jury would hold the nightclub owners primarily responsible over the parties alleged to have actually started the fire, namely, the band members. Rather, under the facts as alleged by plaintiffs' Complaint, it is more likely that the primary liability for the plaintiffs' injuries would fall on both the nightclub owners and the Great White band members and its management team.

The Town thus submits that, in maintaining that the "primary defendants" in the instant case encompasses merely the owners of the nightclub, American Foam is asking the Court to read the statute far too narrowly. Instead, if one reads the statute as written and interpreting it as the ordinary usage of the terms dictate, then the primary defendants in the instant case must include the parties alleged to have negligently started the fire that caused plaintiffs' injuries—the band members and their staff.

As further alleged in plaintiffs' Complaint, Great White band members and their management team reside in California. Thus, assuming that the "substantial majority of plaintiffs" reside in Rhode Island, it is apparent that the primary defendants herald from a different state. Consequently, pursuant to *§ 1369(b)*, this Court should not abstain from exercising its jurisdiction over the instant action.

## V. CONCLUSION

For the reasons cited herein, as well as those that may be raised at hearing, the Town respectfully requests that co-defendant American Foam's Motion to Dismiss the instant suit, and its alternative Motion to Abstain, be denied.

Defendants,
Town of West Warwick and Denis Larocque,
By their Attorneys,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within Memorandum in Support of Objection of Defendants, Town of West Warwick and Denis Larocque, to Co-defendant American Foam Corporation's Motion to Abstain or Dismiss was mailed, postage prepaid, on this 5th day of August 2003, to:


Ronald J. Resmini, Esq.
Resmini Law Offices Ltd.
155 South Main St – Ste 400
Providence, RI 02903
(401) 751-8855
(401) 737-6464 fax

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
Morrison, Mahoney & Miller
1 Providence Washington Plz
Providence, RI 02903
(401) 331-4660
(401) 351-4420 fax

Thomas C. Angelone, Esq.
Hodosh Spinella & Angelone, PC
1 Turks Head Pl – Ste 1050
Providence, RI 02903
(401) 272-0200
(401) 274-7538 fax

James R. Lee, Esq.
Chief, Civil Division
Department of Attorney General
State of Rhode Island
150 South Main St
Providence, RI 02903
(401) 274-4440
(401) 222-2995 fax

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 fax

William P. Robinson, III, Esq.
Stephen M. Prignan, Esq.
Stephen J. MacGillivrary, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 fax

Anthony F. DeMarco, Esq.
Reynolds, DeMarco & Boland, Ltd.
170 Westminster St – Ste 200
Providence, RI 02903
(401) 861-5522
(401) 331-4861 fax

Daniel P. McKiernan, Esq.
146 Westminster St
Providence, RI 02903
(401) 273-2210
(401) 273-0340 fax

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Pl
Providence, RI 02903
(401) 421-3060
(401) 272-6803 fax

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington St
Roxbury, MA 02119
(617) 442-0050 x 24
(617) 442-2319 fax

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson & Curran, LLP
146 Westminster St
Providence, RI 02903
(401) 421-2154
(401) 521-7040 fax