IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TAMMY PASSA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | C.A. No. 03-148-L |
| | ) | |
| JEFFREY DERDERIAN, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS ANHEUSER-BUSCH, INC. AND ANHEUSER-BUSCH COMPANIES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF AMERICAN FOAM CORPORATION AND DERDERIAN DEFENDANTS**

NOW COME Defendants Anheuser-Busch, Inc. and Anheuser-Busch Companies, Inc., (collectively "Anheuser-Busch"), by their undersigned attorneys and respectfully submit this Memorandum of Law In Opposition to (1) Defendant American Foam Corporation's Motion to Abstain and to Dismiss Case ("American Foam") and (2) Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station's Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) ("Derderians").

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542

78

**INTRODUCTION**

This action arises from the February 20, 2003 fire at The Station nightclub in West Warwick, Rhode Island. The fire claimed victims from at least eight states, killing 100 and allegedly injuring an estimated 180 more. *See* Second Amended Complaint at ¶ 64. The fire was ignited by the band Great White when it used pyrotechnics indoors at The Station that night. Plaintiffs Tammy Passa and Walter Castle, Jr. allege injuries as a result of the fire and plaintiff Cheryl Harris-Rossi is the wife of Joseph E. Rossi, who is alleged to have died in the fire. *Id.* at ¶¶ 3, 60-62. Plaintiffs are all citizens of Rhode Island. *Id.* at ¶¶ 1-3.

The Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA") confers jurisdiction upon this Court to adjudicate this action. *See* Multiparty, Multiforum Trial Jurisdiction Act of 2002, Public Law 107-273, § 11020, 116 Stat. 1828 (2002).[1] The MMTJA resulted from Congress' multi-year efforts to adopt comprehensive legislation to allow all state and federal actions arising from accidents resulting in multiple deaths involving minimally diverse parties to be consolidated in a single federal court.[2]

On June 30 and July 18, 2003, American Foam and the Derderians filed their respective motions. Conceding that the jurisdictional requirements of 28 U.S.C. § 1369(a) are satisfied, they argue that abstention is required under 28 U.S.C. § 1369(b). This Court must exercise its subject matter jurisdiction conferred by § 1369(a) and deny

---

1 The provisions of the MMTJA are codified at various sections of the Judicial Code. *See* 28 U.S.C. § § 1369, 1441(e), 1697, 1785, and 1391(g).

2 For a list of pending actions seeking recovery for injuries related to the fire, see Anheuser-Busch Inc.'s Supplemental Notice Of Pendency Of Other Actions Or Proceedings filed in the related action of *Kingsley v. Derderian, et al.,* C.A. No. 03-208-L, pursuant to Local Rule 31.

the motions because Abstention Defendants have not established (because they cannot) that abstention is required under § 1369(b).

## ARGUMENT

### I. The MMTJA Governs This Action

#### A. Purpose and Legislative History of The MMTJA

Enacted by Congress in November 2002, the MMTJA is the culmination of a legislative process initiated years ago to craft comprehensive legislation to consolidate actions arising from deadly accidents into a single federal forum.[3] This Act and its legislative history leave no doubt Congress intended the MMTJA to apply to an event just like The Station fire – one that produces "dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries." H.R. Conf. Rep. No. 107-685, at *199 (2002), *reprinted in* 2003 U.S.C.C.A.N. 1120, 1151 (attached to *Kingsley* Appendix, Exhibit A, at 9-10); *see also* H.R. Rep. No. 102-373, at *4 (1991) (legislation intended to deal with "problems of dispersed and complex litigation arising out of airline accidents, hotel fires and *other disasters in which many people are killed or seriously injured in a single accident*") (emphasis added) (attached to *Kingsley* Appendix, Exhibit B, at 16); H.R. Rep. No. 101-515, at 6 (1990) (noting legislation would apply to "limited

---

[3] Legislation aimed at providing original federal court jurisdiction over actions arising from deadly accidents was first introduced during the 98th Congress of 1983-1984. The Conference Report accompanying the MMTJA notes that there is "ample legislative history that preceded [the Act] from the 95th Congress through the 106th." H.R. Conf. Rep. No. 107-685, at ¶ 200 (2002), *reprinted in* 2003 U.S.C.C.A.N. 1120, 1152 (that portion of the Conference Report related to the MMTJA is attached as Exhibit A, at 10, to the Appendix filed in the related action *Kingsley v. Derderian, et al.*, CA-03-208-L). As the legislative history is lengthy, only portions of that legislative history are cited herein. Copies of the cited material are attached as Exhibits to the *Kingsley* Appendix filed herewith, and bates stamped for the Court's convenience.

context of cases arising out of single accidents in which many people are killed or injured") (attached to *Kingsley* Appendix, Exhibit C, at 33).

Keenly aware that "[a]ccidents of this nature can give rise to a multitude of suits[4] in Federal and State courts," Congress concluded that "under existing law, a variety of impediments exist to effective consolidation of these closely related cases." (*Kingsley* App. Ex. C, at 32). For example, "in the case of state court systems, the main impediments to effective consolidation are constitutional in nature," with "no single state forum in which the contacts with all relevant parties [would be] sufficient to permit consolidation of all related litigation." *Id.* at 33. In the federal system, "[t]he requirement of complete diversity among the parties will frequently prevent all parties from getting into Federal court." *Id.* Congress determined that the critical public interests of conserving judicial resources, decreasing litigation costs, and reducing the risk of inconsistent adjudications would best be served by consolidation of these actions. *Id.* at 34. Congress ultimately discerned that "full consolidation cannot occur in the absence of federal legislative redress." (*Kingsley* App. Ex. A, at 11).

The MMTJA is that redress. It achieves full consolidation for qualifying cases through a series of related jurisdictional, removal, service and venue provisions which became law when Congress passed the MMTJA. First, 28 U.S.C. § 1369(a) expands the federal court's original subject matter jurisdiction to actions involving minimal diversity arising from a single accident resulting in the deaths of at least 75

---

4 The Conference Report accompanying the MMTJA states: "It is common after a serious accident to have many lawsuits filed in several states, in both state and federal courts, with many different sets of plaintiffs' lawyers and several different defendants." (*Kingsley* App. Ex. A, at 10).

persons. Second, 28 U.S.C. § 1441(e) authorizes the removal of § 1369 actions "both to invoke the proposed jurisdiction . . . and to join actions within the jurisdiction pending in the federal court." (*Kingsley* App. Ex. B, at 21). Specifically, § 1441(e) authorizes *a defendant* (singular) to remove an action which could have been brought in federal court under § 1369. *See* 28 U.S.C. § 1441(e)(1)(A). Congress expressly expanded the reach of removal declaring that a defendant may also remove an action, regardless of whether it could have been brought originally in federal court, provided the defendant is a party to an action which is or could have been brought under § 1369 and arises from the same accident as the action in state court. *See* 28 U.S.C. § 1441(e)(1)(B). Third, 28 U.S.C. § § 1697 and 1785 respectively authorize nationwide service of process and nationwide service of subpoenas in actions governed by § 1369. Finally, 28 U.S.C. § 1391(g) fixes venue in an action brought under § 1369 "in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place." 28 U.S.C. § 1391(g).

Congress passed the MMTJA to remove all impediments to full consolidation of cases arising out of qualifying accidents and thereby advance the critical public interests of conserving judicial resources, decreasing litigation costs and diminishing the risk of inconsistent adjudications. Concluding that federal court is the only forum where full and effective consolidation is achievable, Congress included provisions for nationwide service of process, nationwide service of subpoenas and expanded venue so that all parties could be joined and all evidence could be obtained in a single federal forum. Congress, therefore, intended not only to confer subject matter jurisdiction but also took affirmative steps to make the exercise of that jurisdiction likely. The MMTJA thus acts

as a virtual magnet, drawing all civil actions arising from a qualifying accident into federal court, via the original subject matter jurisdiction conferred by § 1369, via a defendant's removal of a state court action which could have been brought under § 1369, and/or via a defendant's removal of an action based on that defendant's status as a defendant in a federal court action arising from the same accident.[5]

**B. This Action Fits Squarely Within The Jurisdictional Prerequisites of § 1369(a)**

This Court has subject matter jurisdiction over this action under § 1369. All of § 1369(a)'s jurisdictional requirements are satisfied because (1) this action arises from a single accident that resulted in the deaths of at least 75 natural persons, *see* Second Amended Complaint at ¶ 64 ("As a result of the fire at The Station nightclub, 100 people died . . . and over 180 people were injured."); (2) minimal diversity between adverse parties exists as plaintiffs are citizens of Rhode Island and at least one of the defendants is not, *see id.* at ¶¶ 1-3, 11-20, 23-24, 26-27, 29-33; and (3) both sections 1369(a)(1) and (2) are satisfied (although only one need be). Section 1369(a)(1) is satisfied because at least one defendant resides in a state other than Rhode Island, the state where a substantial part of the accident took place. *See id.* at ¶¶ 11-20, 23-24, 26-27, 29-33. Section 1369(a)(2) is also satisfied because at least two defendants reside in different states. *Id.* Conceding that § 1369(a)'s jurisdictional requirements are satisfied, Abstention Defendants instead urge the Court to abstain from hearing the action, citing § 1369(b).

---

5 As the MMTJA took effect on January 31, 2003, litigation arising out of The Station fire appears to be the first to invoke its provisions. Accordingly, Anheuser-Busch has found no reported decisions interpreting § 1369 or the other provisions of the MMTJA.

## C. Abstention Is Not Required Under § 1369(b)

### 1. Abstention Defendants Have Not Met And Cannot Meet Their Burden Of Showing That § 1369(b) Abstention Is Required

As the parties urging this Court to abstain from exercising its jurisdiction, Abstention Defendants bear the burden of showing that § 1369(b) requires abstention. *See Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 14 (S.D.N.Y. 2002) (party seeking mandatory abstention under bankruptcy statute must show that all statutory requirements have been satisfied). That burden is a heavy one because abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 188 (1959) (holding district court could not abstain from exercising properly invoked diversity jurisdiction in state eminent domain case); *see also Buy-Rite Costume Jewelry, Inc. v. Albin*, 676 F. Supp. 433, 435-436 (D.R.I. 1988) (court has a "virtually unflagging obligation" to exercise its jurisdiction) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Consonant with the history and purpose of the MMTJA, § 1369(b) abstention must also be interpreted narrowly and invoked rarely, with any doubts about its interpretation or invocation resolved in favor of the court exercising subject matter jurisdiction under § 1369(a).

This case presents no doubts for the Court to resolve, however, because Abstention Defendants have not met, and indeed cannot meet, their burden.[6] Section 1369(b) only applies to that narrow category of cases in which: "the substantial majority

---

6 The Derderians have also failed to meet their burden of establishing that principles of comity warrant abstention. *See* Derderians' Memorandum at p. 13.

of all plaintiffs are citizens of a single state of which the primary defendants are also citizens."[7] 28 U.S.C. § 1369(b) (2003). These statutory terms must be construed so as to give effect to Congress' intent. *United States v. American Trucking Associations*, 310 U.S. 534, 542 (1940); *Cablevision of Boston, Inc. v. Public Improvement Commission of the City of Boston*, 184 F.3d 88, 101 (1st Cir. 1999). As Congress intended that all civil actions arising out of a qualifying accident be heard in a single federal forum, § 1369(b) can only be invoked when litigation ensues from a uniquely local accident. Abstention Defendants must therefore show that the "primary defendants" are citizens of the same state *and* are also citizens of the same state as a "substantial majority of all plaintiffs." They can do neither.

**2. <u>The Primary Defendants are Not Citizens of the Same State</u>**

Though undefined in the MMTJA, the phrase "primary defendants" must be interpreted in a manner consistent with common understanding and effectuation of Congressional intent to provide full consolidation of qualifying cases absent a uniquely localized controversy. *Atlantic Fish Spotters Ass'n v. Evans*, 321 F.3d 220, 223 (1st Cir. 2003) ("In discerning Congress's intent from the statute itself, [the court] attributes to words that are not specially defined in the text their ordinary usage . . . ."); *American Trucking Associations*, 310 U.S. at 542 (statute should be interpreted to give effect to Congressional intent). In another context, the United States Supreme Court defined a "primary defendant" as one with a "dominant relationship to the subject-matter of a controversy." *United States of America v. American Tobacco Company*, 221 U.S. 106,

---

7 Section 1369(b) also requires that the claims asserted will be governed primarily by the law of that same state.

142 (1911). As the subject matter of the controversy here is The Station fire, the primary defendants are those with the dominant relationship to the events leading to the fire. At a minimum, those defendants include: (1) the parties responsible for starting the fire with their indoor pyrotechnics – the four surviving members of the band Great White and their tour manager Daniel Biechele ("Great White Defendants"); and (2) the owners of The Station – the Derderians and DERCO.

Plaintiffs allege that Biechele, "in his capacity in setting up the stage for Great White, put in place certain pyrotechnic devices," "prepared the pyrotechnic device for later activation," and "with the permission of Jack Russell, activated the pyrotechnic device he previously prepared and placed on the stage." Second Amended Complaint at ¶¶ 55, 57-58. The sparks from the pyrotechnic device "ignited the sound insulation on the ceiling above the stage and the back wall of the stage," thereby causing the deadly blaze. *Id.* at ¶ 58. Plaintiffs further contend that Biechele and the band members were negligent in their "use, operation, supervision, management and installation of the pyrotechnics." *Id.* at ¶¶ 103, 109. Based on these allegations, the Great White Defendants, all California citizens, *id.* at ¶¶ 12-16, are primary defendants because of their dominant relationship to the subject matter of the controversy – they started the fire.

Jeffrey and Michael Derderian are also primary defendants under § 1369(b). As the owners of the nightclub, they owed a duty of care to their patrons which plaintiffs allege was breached by allowing the use of pyrotechnics in the club without proper permits, by failing to ensure that the foam insulation was fire resistant, and by failing to install emergency lighting and lighted exit signs. *Id.* at ¶¶ 68, 71-72.

They are, therefore, parties with a dominant relationship to the subject matter of the controversy. The Derderians are citizens of Rhode Island. *Id.* at ¶¶ 7-8.

Abstention Defendants agree that the Derderians are primary defendants, but their analysis stops short of its logical conclusion. Abstention Defendants' failure to include the Great White Defendants as "primary defendants" is a transparent attempt to avoid federal court by arguing that the parties responsible for starting the fire do not qualify as "primary defendants." The Court must reject this argument, as it lacks any logical or factual support.

The phrase "primary defendants" in this particular case also includes defendants with no culpability for causing the fire at The Station. Given the magnitude of the harm resulting from the fire, the practical reality is that the Derderians and the Great White Defendants lack the resources necessary to satisfy judgments likely to be entered against them in fire-related litigation. Plaintiffs asserting joint and several liability theories under Rhode Island law will ultimately seek to recover their damages from the remaining defendants named herein, including many non-Rhode Island corporate defendants. Thus, though not primary in terms of culpability, these defendants will likely be pursued as primary sources of recovery. Classifying these defendants as "primary" serves the MMTJA's goals by ensuring that litigation implicating the rights and interests of multiple out-of-state defendants remains in a federal forum. Therefore, those defendants likely to be pursued as primary sources of recovery should be deemed "primary defendants" for purposes of § 1369(b) in this case.

The classification of "primary defendants" as those parties who are primary litigation targets (based on culpability or ability to pay, or both) is further

supported by the House Judiciary Committee's interpretation of a similar abstention provision contained in the Class Action Fairness Act of 2002 ("CAFA") which was under consideration at the same time and by the same Congressional committee as the MMTJA. Though CAFA has not been enacted by Congress, the committee report provides insight about Congress' view of "primary defendants" as "those who are real 'targets' of the suit; that is, the parties that would be expected to incur most of the loss if liability is found." H.R. Rep. No. 107-370, at *30 (2002) (a copy of the relevant portions is attached as Exhibit D, at 47, to the *Kingsley* Appendix).

In summary, the primary defendants in culpability terms – the Great White Defendants (California citizens) and the Derderian defendants (Rhode Island citizens) – are not citizens of the same state. The defendants most likely to be pursued as primary sources of recovery under theories of joint and several liability include many non-Rhode Island corporations. Therefore, Abstention Defendants cannot show that the primary defendants are citizens of the same state and § 1369(b) abstention cannot be invoked.

### 3. The Substantial Majority of All Plaintiffs Are Not Citizens of the Same State

Should Abstention Defendants somehow meet their burden of establishing that the primary defendants are all citizens of the same state, they must also establish that a "substantial majority of all plaintiffs" are citizens of that same state. The phrase "substantial majority of all plaintiffs" is not defined in the MMTJA and the Court must again look to the common usage of the terms and Congressional intent to guide its interpretation. *Atlantic Fish Spotters Ass'n v. Evans*, 321 F.3d at 223.

The history and purpose of the MMTJA establish that Congress intended the phrase "substantial majority of all plaintiffs" to mean *virtually all plaintiffs*. The MMTJA and its legislative history evince overarching Congressional intent to consolidate *all* civil actions arising out of a qualifying accident into a single federal court. The abstention provision was a last minute addition[8] to the MMTJA, and the clear inference from the text of the Act and the circumstances surrounding its passage is that Congress intended the abstention provision to apply only to those rare instances where the governing law, the situs of the accident, the victims and the targets of the litigation all share the same state. Interpreting § 1369(b) to require that less than virtually all of the plaintiffs be citizens of the same state would circumscribe the subject matter jurisdiction conferred by § 1369(a) in a manner not intended by Congress. Such an interpretation would squarely conflict with the well established principle that abstention is a narrow exception to the court's "virtually unflagging responsibility" to exercise its jurisdiction.[9] *See Buy-Rite Costume Jewelry, Inc.*, 676 F. Supp. at 436.

The Judiciary Committee's Report on CAFA is further evidence in support of this interpretation. The Committee explained that under CAFA's proposed abstention provision, the "substantial majority of the members of the proposed plaintiff class"

---

8 The abstention provision was added "in an effort to develop greater [Senate] support . . . in the waning days of the 106th Congress." (*Kingsley* App. Ex. A, at 11).

9 This interpretation is also consistent with the principle of statutory construction whereby, when a statutory term is undefined, "[c]ourts are free to use standard dictionary definitions to assist in determining the ordinary meaning of statutory language." *Riva v. Commonwealth of Massachusetts*, 61 F.3d 1003, 1007 (1st Cir. 1995) (*citing FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). "Substantial" ordinarily means "considerable in quantity" and "significantly large." A "majority" is defined as "a number greater than half of a total." *Webster's Ninth New Collegiate Dictionary* (1986). Thus, taken together, a "substantial majority" must refer to an amount that is significantly larger than half of a total.

requirement must be read to mean "virtually all." (*Kingsley* App. Ex. D, at 46-47). By way of example, the report provides that "a proposed class of 1000 persons . . . presumably would fit this exception if 997 of those persons were . . . [citizens of the same state.]" *Id.* at 47. Thus, under CAFA, a "substantial majority of all proposed class members" translates to 99.7%.

In this action, a "substantial majority of all plaintiffs" are not citizens of the same state. Abstention Defendants contend that the phrase "all plaintiffs" must be construed to include "all persons with claims arising out of the disaster." American Foam's Memorandum at p. 10; *see also* Derderians' Memorandum at p. 10.[10] Assuming this to be correct, Abstention Defendants cannot meet their burden of showing that virtually all plaintiffs are citizens of Rhode Island, as they contend. The Station fire claimed victims from at least eight states. Of the 100 people killed, 41 were citizens of states other than Rhode Island. Plaintiffs allege that over 180 more were injured in the fire and it is undisputed that many of the injured are also from states other than Rhode Island. Multiple Connecticut citizens have already filed suit in federal court there seeking recovery for injuries allegedly sustained by eight Connecticut citizens in The Station fire.

---

[10] In this action and in *Kingsley*, where plaintiffs are allegedly Rhode Island citizens, the Derderians initially contend that the phrase "all plaintiffs" means the plaintiffs in a particular action, and that the substantial majority of "all plaintiffs" are citizens of Rhode Island. However, in the recently dismissed *Kinan* action, where the plaintiffs were allegedly Massachusetts citizens, the Derderians argued instead that "all plaintiffs" meant *all* fire victims, presumably because under the interpretation they initially put forth here and in *Kingsley*, the Derderians could not argue for abstention. To interpret "all plaintiffs" to mean only the plaintiffs in a particular action is inconsistent with the MMTJA's intent to consolidate *all* actions arising from a qualifying accident in a single federal court.

*See Henault, et al. v American Foam Corp., et al.* The plaintiffs in the recently dismissed *Kinan* action (who will undoubtedly refile that case) are Massachusetts citizens seeking recovery for injuries allegedly caused by the fire. *See Kinan* Complaint at ¶¶ 1, 2. American Foam and the Derderians identify at least 30 additional injured victims who are citizens of states other than Rhode Island; 23 from Massachusetts; 4 from Connecticut; 1 from Maine, 1 from Nevada; and 1 from Ohio. The Derderians also identify another 73 individuals whose citizenship is alleged to be unknown. *See* Derderians' Memorandum at p. 2.

On the basis of this record, Abstention Defendants cannot show that the substantial majority of all plaintiffs are citizens of Rhode Island. Indeed, the record demonstrates that litigation arising from The Station fire is " . . . dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries," *see Kingsley* App. Ex. A, at 10 – exactly the type of litigation Congress intended the MMTJA to consolidate into a single federal court. This Court should therefore find that § 1369(b) does not require abstention and deny the motions.

**CONCLUSION**

As the jurisdictional requirements of § 1369(a) are clearly met, this Court has jurisdiction over this action. Abstention Defendants have not met, and cannot meet their burden of establishing that § 1369(b) requires abstention. Accordingly, Anheuser-Busch respectfully requests that this Court deny all motions, exercise its jurisdiction, and adjudicate this case.

Dated: August 14, 2003

Respectfully submitted,

Joseph V. Cavanagh, Jr. (by her) Kristin E. Rodgers

Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Telecopier: (401) 751-7542

Counsel for Defendants Anheuser-Busch, Inc. and Anheuser-Busch Companies, Inc.

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606

Pro Hac Vice on behalf of Defendants Anheuser-Busch, Inc. and Anheuser-Busch Companies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2003, I served a true copy of the within document via first class mail, postage prepaid to the following parties:

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

Anthony F. DeMarco, Esq.
Reynolds Demarco & Boland
170 Westminster Street, Suite 200
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
P.O. Box 2563
Providence, RI 02903-2563

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh Spinella & Angelone
One Turks Head Place
Providence, RI 02903

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

William P. Robinson, III, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, RI 02903

Andrew J. Trevelise, Esq.
Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

W. Thomas McGough, Jr., Esq.
James J. Restivo, Jr., Esq.
Reed Smith LLP
345 Sixth Avenue
Pittsburgh, PA 15219

James T. Murphy, Esq.
Hanson Curran, LLP
146 Westminster Street
Providence, RI 02903

Scott J. Tucker, Esq.
Tucker Heifetz & Saltzman LLP
Three School Street
Boston, MA 02108

Faith LaSalle, Esq.
Zizik Lasalle & Powers, PC
40 Westminster Avenue
Providence, RI 02903

Kurt E. Rogers
_______________________