TRB:ems 02-206 8/15/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TAMMY PASSA, ALIAS, WALTER
CASTLE, JR., ALIAS and
CHERYL L. ROSSI, next of kin
of decedent JOSEPH E. ROSSI,
Plaintiffs

VS. C.A. No. 03-148L

JEFFREY DERDERIAN, MICHAEL
DERDERIAN, DERCO, d/b/a
THE STATION, et al,
Defendants

**DEFENDANT TRITON REALTY LIMITED PARTNERSHIP'S OBJECTION TO MOTIONS TO ABSTAIN AND/OR DISMISS**

Now comes defendant, Triton Realty Limited Partnership to object to the following motions:

1. Defendant Jeffrey Derderian, Michael Derderian and Derco, d/b/a The Station's Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Jurisdiction.

2. Defendant American Foam Corporation's Motion to Abstain and to Dismiss.

Defendant submits the accompanying memorandum of law in support of the objection to each motion.

Triton Realty Limited Partnership
By its Attorneys,

HANSON CURRAN LLP

James T. Murphy (by TRB)

James T. Murphy, Esq. #1698

84

Thomas R. Bender

Thomas R. Bender, Esq. #2799
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154 – Telephone
(401) 521-7040 - Fax

and

Scott J. Tucker (by TRB)

Scott J. Tucker (BBO #503940)
Tucker Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108
(617) 557-9696 – Telephone
(617) 227-9191 – Fax
admitted pro hac vice

**PROOF OF SERVICE**

I hereby certify that on this 26 day of August, 2003, I served the within document by mailing a copy of same to the following:

Thomas C. Angelone, Esq.
HODOSH, SPINELLA & ANGELONE, P.C.
One Turks Head Place, Suite 1050
Providence, RI 02903-2205

Stephen E. Breggia, Esq.
BREGGIA, BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Brian Cunha, Esq.
LAW OFFICES OF BRIAN CUNHA & ASSOC.
904 Broadway
East Providence, RI 02914

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

Anthony F. DeMarco, Esq.
REYNOLDS, DEMARCO & BOLAND, LTD.
170 Westminster Street, Suite 200
Providence, RI 02903

Marc DeSisto, Esq.
DESISTO LAW
211 Angell Street, P.O. Box 2563
Providence, RI 02906-2563

Curtis R. Diedrich, Esq.
Edward T. Hinckey, Esq
SLOANE & WALSH
3 Center Plaza
Boston, MA 02108

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

Scott Hubbell, Esq.
SUMMERS LAW OFFICE
P.O. Box 306
Franklin, MA 02038-0306

Stephanie Larivee-DiMaio, Esq.
James Howe, Esq.
215 Broadway
Providence, RI 02903

Eva Marie Mancuso, Esq.
387 Atwells Avenue
Providence, RI 02909

Max Wistow, Esq.
WISTOW & BARYLICK INCORPORATED
61 Weybosset Street
Providence, RI 02903

Mark S. Mandell, Esq.
Yvette Boisclair, Esq.
MANDELL, SCHWARTZ & BOISCLAIR
One Park Row
Providence, RI 02903

Oleg Nikolyszyn, Esq.
155 South Main Street
Suite 303
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103-3508

William A. Filippo, Esq.
373 Elmwood Avenue
Providence, RI 02907

Patrick T. Jones, Esq.
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 02110

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Steven A. Minicucci, Esq.
373 Elmwood Avenue
Providence, RI 02907

Donald A. Migliori, Esq.
NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE
321 South Main Street, Suite 402
Providence, RI 02903

Ralph J. Monaco, Esq.
CONWAY & LONDREGAN
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
MORRISON, MAHONEY & MILLER
One Providence Washington Plaza
Providence, RI 02903

J. Renn Olenn, Esq.
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886

James A. Ruggieri, Esq.
HIGGINS, CAVANAGH & COONEY
The Hay Building
123 Dyer Street
Providence, RI 02903-3987

Michael A. St. Pierre, Esq.
REVENS, REVENS & ST. PIERRE, P.C.
946 Centerville Road
Warwick, RI 02886

Randall L. Souza, Esq.
NIXON PEABODY, LLP
One Citizens Plaza
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M. Prignano, Esq.
EDWARDS & ANGELL
2800 Financial Plaza
Providence, RI 02903

Andrew Trevelis, Esq.
REED SMITH LLP
259 Liberty Place
Philadelphia, PA 19103-7301

Charles N. Redihan, Jr., Esq.
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903

Mark D. Tourgee, Esq.
Timothy A. Williamson, Esq.
INMAN & TOURGEE
1193 Tiogue Avenue
Coventry, RI 02816

Amy Scheeley, Esq.
LAW OFFICE OF DONALD E. GREENE
2235 Washington Street
Roxbury, MA 02119

Faith LaSalle, Esq.
Zizik, LaSalle & Powers, P.C.
40 Westminster St., Suite 201
Providence, RI 02903

Edward M. Crane, Esq.
Deborah G. Solomor, Esq.
SKADDEN, ARPS, SLATE, MAGER & FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Thomas R. Bender

of Hanson Curran LLP

TRB:ems 02-206 8/15/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TAMMY PASSA, ALIAS, WALTER
CASTLE, JR., ALIAS and
CHERYL L. ROSSI, next of kin
of decedent JOSEPH E. ROSSI,
Plaintiffs

VS. C.A. No. 03-148L

JEFFREY DERDERIAN, MICHAEL
DERDERIAN, DERCO, d/b/a
THE STATION, et al,
Defendants

**DEFENDANT TRITON REALTY LIMITED PARTNERSHIP'S MEMORANDUM IN SUPPORT OF OBJECTION TO MOTIONS TO ABSTAIN AND/OR DISMISS**

**Introduction**

Triton asserts that, notwithstanding the claims of DERCO and American Foam, the issue that is presented by their motions to dismiss is not one of subject matter jurisdiction. The issue is abstention.

28 U.S.C. §1369, enacted as part of the Multiparty, Multiforum Trial Jurisdiction Act of 2002, consists of two distinct parts. Section 1369(a) is the grant of original jurisdiction. Section 1369(b) is an abstention provision describing when a court should abstain from exercising the jurisdiction conferred under section (a). Jurisdiction is plainly conferred by the text of §1369(a) and the plain meaning of the text is supported by the legislative history. That section gives the Court original jurisdiction over single accident mass torts occurring at a discrete location, when

at least 75 people die in the accident and there is minimal diversity, that is, at least one plaintiff and one defendant are from different states. The Station fire tragedy certainly qualifies as such a single accident mass tort and minimal diversity exists in this case.

The real question is one of abstention. Section 1369(b) directs the Court to abstain where the "substantial majority" of plaintiffs and the "primary" defendants are from the same state. Neither the statute nor the legislative history gives any guidance as to what meaning those terms were intended to convey. The abstention provision was, however, enacted against a legal background in which federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them by Congress, and may only abstain from exercising jurisdiction in narrow and exceptional circumstances. Given the heavy presumption against abstention and its disfavored status in the law, of which Congress was presumptively aware, §1369(b) must be strictly construed against abstention.

Triton asserts that strictly construed, and construed in accordance with the object of the MMTJA to facilitate and encourage the consolidation of all litigation arising out of a single accident mass tort in one court, §1369(b) does not apply to this action arising out of the Station fire. It can only apply where virtually all litigation arising out of a single accident mass tort can be consolidated in one state court, and the defendants who are alleged to be actively negligent are residents of that state.

## Argument

**I.) 28 U.S.C. §1369 consists of two distinct parts, a jurisdictional grant and an abstention provision.**

**A.) Section 1369(a) is a grant of original jurisdiction.**

The "Multiparty, Multiforum Jurisdiction" statute, 28 U.S.C. §1369, enacted as part of the MMTJA, consists of two distinct sections at issue here. Section (a) is the congressional grant of jurisdiction to the federal courts. It provides in pertinent part:

> The district courts shall have jurisdiction of any civil ation involving *minimal diversity between adverse parties* that arises from a *single accident*, where at least *75 natural persons have died* in the accident at a discrete location, if
>
> (1) a defendant resides in a state and a substantial part of the accident took place in another state . . . [or]
>
> (2) any two defendants reside in different states[.]

28 U.S.C. §1369(a) (emphasis added). Accident is defined as "a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons[.]" 28 U.S.C. §1369(c)(4). Minimal diversity between adverse parties exists if any party is a citizen of one state and an adverse party is a citizen of another. 28 U.S.C. §139(c)(1).

The use of the term "minimal diversity" signals a departure from the concept of "complete diversity." Complete diversity is a requirement derived from acts of Congress such as the federal diversity statute, 28 U.S.C. §1332, and its predecessors. *See Saadeh v. Farouki*, 107 F.3d 52, 54-5 (D.C. Cir. 1997); *Dresser Industries, Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 998 (3rd Cir. 1997); *H.B. General Corp. v. Manchester Partners, L.P.*, 95 F.3d

1185, 1197 (3rd Cir. 1996). Article III of the federal constitution requires only "minimal diversity" for diversity jurisdiction in the federal district courts, meaning only one defendant and one plaintiff need to be citizens of different states, even if other parties are co-citizens. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531, 87 S.Ct. 1199, 1204, 18 L.Ed.3d 270 (1967); *Saadeh*, 107 F.3d at 54; *H.B. General Corp.*, 95 F.3d at 1197. The Constitution permits the extension of federal jurisdiction founded on diversity "so long as any two adverse parties are not co-citizens." 386 U.S. at 53, 87 S.Ct. at 1204. The MMJTA is predicated on the constitutionality of minimal diversity as a jurisdictional basis.

**B.) Section §1369(b) is not a limitation on the Court's jurisdiction, but rather, is an abstention provision describing when the Court should abstain from exercising the jurisdiction conferred by §1369(a).**

The expansion of diversity jurisdiction to its constitutional limits for single accident mass torts is followed by a section attempting to delineate the circumstances requiring a district court to "abstain" from hearing actions within the Court's subject matter jurisdiction under section (a). It states:

> The district court *shall abstain from hearing* any civil action described in subsection (a) in which –
>
> (1) The *substantial majority* of all plaintiffs are citizens of a single state of which the *primary* defendants are also citizens; and
>
> (2) The claim asserted will be governed primarily by the laws of that State.

28 U.S.C. §1369(b) (emphasis added).

Although section (b) is entitled "Limitation of jurisdiction of district courts," the actual text of the section uses the word abstain. "Although it is true that courts sometimes rely on titles

of statutory enactment in plumbing their meaning, . . . , that practice should not be indulged at the expense of the text itself." *Massachusetts Association of Health Maintenance Organizations v. Ruthardt*, 194 F.3d 176, 180 (1st Cir. 1999). "The title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase." *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 1956, 141 L.Ed.2d 215 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947) (internal brackets omitted)). The word abstain has a precise and widely known legal meaning. With respect to federal courts, to abstain means "to refrain from exercising jurisdiction over a matter." *Black's Law Dictionary*, p. 8 (7th ed. 1999). Abstaining presumes subject matter jurisdiction, and abstention provisions are concerned with whether a court should exercise jurisdiction, not whether it has jurisdiction in the first instance. *In re S.G Phillips Contractors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995); *accord, Doughty v. Underwriter's at Lloyds of London*, 6 F.3d 856, 860 (1st Cir. 1993) ("abstention, by definition, assumes the existence of subject matter jurisdiction in the abstaining court – after all, one must have (or, at least presume the presence of) subject matter jurisdiction in order to decline the exercise of it[.]"). Congress' use of the word "abstain" is significant and it must be "assume[d] that the words Congress chose to implement its wishes, if not specifically defined, carry their ordinary meaning and accurately express Congress' intent." *Bolvin v. Black*, 225 F.3d 36, 40 (1st Cir.).

The fact Congress stated district courts "shall have original *jurisdiction*" in section (a), and that "[t]he district court shall *abstain* from hearing any civil action described in subsection (a)" signifies that section (b) is not a limitation of the district court's jurisdiction granted under section (a), but rather a limitation on the exercise of that jurisdiction. *See In re Hart*, 328 F.3d

456, 49 (1st Cir. 2003) ("It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it is another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."). Determining whether a court has jurisdiction and whether it should abstain from exercising that jurisdiction are two entirely separate and distinct inquiries, and they are decided under separate and distinct rules and considerations.

This Court therefore is faced with two separate questions. First, does this action come within the Court's subject matter jurisdiction under the jurisdictional grant of section (a), and second, if the action is within the Court's subject matter jurisdiction, must it abstain from exercising that jurisdiction under section (b)? Triton submits there is little doubt this Court has subject matter jurisdiction over this matter under §1369(a). The real issue before the Court is whether it should abstain from exercising that jurisdiction under section (b).

## II.) This matter comes within the jurisdictional grant under §1369(a).

### A.) Jurisdiction is conferred on this Court under the plain, unambiguous text of §1369(a).

This Court clearly has subject matter jurisdiction over this civil action under the jurisdictional portion of the statute, §1369(a). Neither American Foam Corporation nor DERCO assert the requirements of section (a) are not met, or are in any way ambiguous. There is minimal diversity between adverse parties, 100 people died in a single accident occurring at a discrete location, and a number of defendants reside in states other than Rhode Island and in states different from each other. Both American Foam and DERCO acknowledge the plain terms of section (a) are met. *See American Foam Memo* at 4 ("at first blush it would appear that the

circumstances of the Station fire meet the preliminary jurisdictional requirements of §1369(a)"); *DERCO Memo* at 10 (discussing 1369(a) "[a]t first glance it appears that the MMTJA may apply because more than 75 people died in the Station Fire and at least two defendants in this action reside in different states.").

Both movants, however, then resort to legislative history to argue the plain language of the jurisdictional grant which applies on its face to the Station fire, was not intended to apply to the Station fire. American Foam asserts the Court may look to legislative history, not because any of the terms of the jurisdictional grant are ambiguous, but rather, because the terms of *the abstention* provision are ambiguous. *See American Foam Memo* at 5. DERCO does not even offer an explanation as to why the Court should, or even may, resort to legislative history to interpret the jurisdictional grant of section (a). Their failure to do so is an implicit, and correct, recognition that it is not ambiguous and unaffected by any ambiguity in the abstention section.

When construing a statute the inquiry starts with the statute's text. *Mullane v. Chambers*, 333 F.3d 322, 330 (1st Cir. 2003). If the language is plain and unambiguous the judicial inquiry is complete except in rare and exceptional circumstances, *id.,* where the plain language would yield a patently absurd result. *Pritzer v. Yari*, 42 F.3d 53, 67-8 (1st Cir. 1999). The Court "must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *In re Hart*, 328 F.3d at 49 (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). While legislative history can sometimes be a useful aid to statutory construction, "recourse to it is impermissible to carry the words of an unambiguous statute where those words, straightforwardly applied, yield an entirely plausible result." *In re: 229 Main Street Limited Partnership*, 261 F.2d 1, 10 (1st Cir. 2000).

The jurisdictional grant in §1369(a) is plain and unambiguous, and the movants have not argued to the contrary. It simply requires: 1) a single accident resulting in 75 or more deaths, 2) minimal diversity -- that is diversity between any two adverse parties, and 3) two defendants who reside in different states. As applied to this case, §1369(a) confers original subject matter jurisdiction on this Court. Although it is unnecessary to resort to legislative history to divine the meaning of section (a), the legislative history in fact confirms, as explained in the next section, that the jurisdictional grant was intended to include disasters like the Station fire. *See Massachusetts Association of Health Maintenance Organizations v. Ruthardt*, 194 F.3d 176, 189 (1st Cir. 1999) ("[W]e sometimes have looked to legislative history to confirm textual intuitions.").

**B.) The legislative history concerning §1369(a) supports the text.**

It is important to note that the jurisdictional grant of section (a) and the abstention provision in section (b) have distinct legislative histories. The history of the jurisdictional grant is fairly lengthy and substantial while the history of the abstention provision is short and spare. Legislation aimed at providing federal court jurisdiction for multi-party, multi-forum mass tort litigation was introduced as early as 1989, when such a bill was introduced by Representative Kastenmeyer who explained that his bill "would create a new Federal court subject matter jurisdiction, specially tailored to meet the problems created by mass tort litigation" and would "expand the authority of courts receiving mass tort cases[.]" Cong. Rec. No. 135, E32-75-01, October 4, 1989) (101st Congress 1st Session). The abstention provision, on the other hand, did not come to life until 2001 during the 107th Congress. It was one of three changes offered by the

House to generate more support in the Senate. *See* H.R. No. 107-14, March 12, 2001 (107th Congress, 1st Session). Section (b) was added to create:

> an exception to the minimum diversity rule. In brief, a U.S. district court may not hear any case in which a "substantial majority" of plaintiffs and the "primary" defendants are all citizens of the same state; and in which the claims asserted are governed "primarily by the laws of that same state. In other words, only state courts may hear such cases.

House Conference Report No. 107-685, September 25, 2002 (107th Congress, 2nd Session). Although this "explanation" simply restates the text of the provision and does not illuminate it, it is the only characterization, description or explanation of the abstention provision that is ever applied to section (b).[1]

As a consequence virtually all the legislative history is directed at expanding federal court jurisdiction over mass tort cases. Indeed the legislative record is replete with references to "mass tort litigation arising from a single accident,"[2] "single accident mass tort cases,"[3] "mass torts arising from a single accident,"[4] "mass accident cases,"[5] "mass accident litigation,"[6] and

[1] *See, e.g.,* H.R. No. 107-14, March 12, 2001 (107th Congress, 1st Session) (proffered during "eleventh hour" negotiations with the Senate); House Conference Report No. 107-685, September 25, 2002 (107th Congress, 2nd Session); Cong. Rec. No. E-280, March 6, 2001; Cong. Rec. No. H6586, September 25, 2002.

[2] H.R. No. 106-276, July 30, 1999 (106th Congress, 1st Session); Cong. Rec. No. H893, March 14, 2001 (comments of Rep. Jackson-Lee).

[3] H.R.Report No. 107-14, March 12, 2001 (107th Congress, 1st Session); Cong. Rec. No. H8106 September 13, 1999 (comments of Rep. Coble); Cong. Rec. No. E280, March 6,2001 (comment of Rep. Sensenbrenner).

[4] H.R. Report No. 107-14, March 14, 2001 (107th Congress, 1st Session).

[5] Cong. Rec. No. 136, H3 116-02, June 5, 1990 (101st Congress, 2nd session); Cong. Rec. No. 137, E1923-02, May 24, 1991 (102nd Congress, 1st Session).

[6] Cong. Rec. No. 137, E1923-02, May 24, 1991 (102nd Congress, 1st session).

"multidistrict litigation governing disasters."[7] The purpose of the legislation that was to become §1369(a) was to "expand[ ] federal court jurisdiction by requiring only minimal diversity . . . for mass torts arising from a single incident[.]" H.R. Report No. 107-14, March 12, 2001 (107th Congress, 1st Session). Section 1369(a) was one of a number of amendments to the Judicial Code designed to create:

> Federal court jurisdiction to deal with problems of dispersed and complex litigation arising out of airline accidents, earthquakes, hotel fires and *other disasters in which many people are killed* . . . [because a]ccidents of this nature can give rise to a multitude of lawsuits in Federal and State courts.
>
> * * *
>
> [The changes] would remove the barriers that impede consolidation of related litigation in the Federal court system, in the limited context of cases arising out of single accidents in which many people are killed[.]

H.R. No. 101-515, June 1, 1990 (101st Congress, 2nd Session) (emphasis added). The proponents of the legislation considered it a "narrowly focused use of the Federal judicial forum to employ its unique capabilities to deal with dispersed, related actions[,]" resting "squarely on the constitutional authorization of minimal diversity in Article III and meet[ing] a need that state court systems are constitutionally unable to fill." *Id.*[8]

It cannot be seriously argued that the Station fire does not, or will not constitute "mass tort litigation arising from a single accident" or a "single accident mass tort case" when 100 people died in the fire, scores more were injured, and where the plaintiffs have cast a broad net

[7] House Conference Report No. 1707-685, September 25, 2002 (107th Congress, 2nd Session).

[8] The legislation originally would have been applicable where a single accident or incident killed or injured 25 people. *See* H.R. No. 101-515, June 1, 1990 (101st Congress, 2d session). By the time it was enacted, however, the qualifier was the death of 75 or more people.

(and are still casting) to include defendants from across the United States. The case at bar clearly meets the plain and unambiguous requirements set forth in the jurisdictional statute, §1369(a), and the Station fire is undoubtedly the type of single accident mass tort Congress wished to address.

The real question facing the Court is whether the Court should, or must, abstain from exercising the jurisdiction that Congress has conferred. Under §1369(b) the answer to that question will depend on the Court's construction and application of the phrases "substantial majority of all plaintiffs" and "primary defendants." As stated earlier, section (b) was added at the "eleventh hour" during negotiations between the House and Senate, and the legislative history of the MMTJA sheds no light on what Congress meant or intended by the terms "substantial majority" and "primary defendants" – the meaning of which is not immediately obvious or apparent. Since Congress has not provided the Court with any guidance as to how those terms or the abstention section as a whole are to be interpreted, Triton asserts the Court must begin the analysis of the abstention provision by examining the judicial attitude toward abstention that is the broad backdrop to its enactment.

**III.) The abstention provision, §1369(b), must be strictly construed in favor of the exercise of jurisdiction, and declining to exercise jurisdiction in this case would be unwarranted and counter to the object of the MMTJA.**

**A.) Section 1369(b) was enacted against a legal background in which federal courts have a virtually unflagging obligation to exercise jurisdiction and may abstain only in exceptional circumstances.**

It has long been presumed in this Circuit "that Congress acts against the background of prior law." *Penobscot Nation v. Fellencer*, 164 F.3d 706, 712 (1st Cir. 1999) (internal quotes omitted); *accord, North Sea Steel Company v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 1930

132 L.Ed.2d 27 (1995). ("[I]t is not only appropriate but realistic to presume that Congress was thoroughly familiar with our precedents ... and that it expects its enactments to be interpreted in conformity with them[.]"). To interpret the abstention provision, therefore, the Court must begin by examining the basic principles governing abstention, and then construe section (b) in light of those principles. It is an understatement to say abstention is disfavored.

"Federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them[.]" *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 716, 116 S.Ct. 1712, 1720, 135 L.Ed. 2d 1 (1996) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 821, 96 S.Ct. 1236, 1248, 47 L.Ed.2d 483 (1976)). Abstention is concerned with "whether, in the interests of judicial efficiency and comity, federal courts should refuse to decide cases within their constitutionality and congressionally-conferred jurisdiction[.]" *Green v. City of Tuscon*, 255 F.3d 1086, 1089 (9th Cir. 2001). Abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244; *accord, KPS & Associates Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003) ("There must be some extraordinary circumstances for a federal court to shrink from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.").

Judicial abstention doctrines embody the general notion that federal courts may decline to exercise their jurisdiction only in circumstances "where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by consideration of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 174, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *Quackenbush*, 517 U.S. at 716, 116 S.Ct. at

1720-1721). *See also New England Multi-Unit Housing Laundry Association v. Rhode Island Housing and Mortgage Finance Corporation*, 893 F.Supp. 1180, 1194 (D.R.I. 1995) ("Considerations of federal-state comity and judicial economy underlie a court's decision to abstain.").

> Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the *federal interests in retaining jurisdiction* over a dispute and the competing concern for the "independence of state action," (citation omitted), that a state's interests are paramount and that a dispute would be best adjudicated in a state forum. (citation omitted). This equitable decision balances the *strong federal interest in having certain classes of cases,* and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of essentially a local problem[.]" (citation omitted). * * * *This balance only rarely favors abstention*[.]

*Quackenbush*, 517 U.S. at 728, 116 S.Ct. at 1726-27 (emphasis added). In short, there is a "heavy presumption favoring the exercise of jurisdiction." *KPS & Associates, Inc.*, 318 F.3d at 10 (quoting *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 13 (1st Cir. 1990)).

These authorities demonstrate that: 1) courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them by Congress, 2) a heavy presumption exists in favor of exercising jurisdiction, and 3) abstention is to be exercised in only extraordinary and narrow circumstances. In light of the well-settled judicial attitude toward abstention it is fair to say abstention is disfavored in the law. Statutory abstention provisions must therefore be strictly construed against abstention and in favor of the exercise of jurisdiction. *Compare Allan v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997) ("Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed."); *Florida Municipal Power Agency v. Florida Power & Light Company*, 64 F.3d 614, 616 (11th Cir. 1995) ("[E]xemptions from the antitrust laws are strictly construed and strongly disfavored.").

Moreover the Court must also keep in mind the purpose Congress sought to serve in enacting the MMTJA. The act is comprised of a number of related jurisdictional, removal, service and venue amendments designed to permit consolidation in a federal court of the numerous, disperse lawsuits that may arise out of a single accident mass tort. As described earlier, §1369(a) expands federal court diversity jurisdiction to its constitutional limits for single accidents resulting in 75 deaths. 28 U.S.C. §1441(e) was added to authorize a single defendant to remove a §1369(a) action to federal court without the consent of the other defendants, as is required for removal under §1441(a).[9] Section 1441(e)(1)(B) permits a defendant to even remove an action that could not have originally been brought in federal court, provided it arises from the same accident as an action that is already in federal court and to which the defendant is already a party. The act also authorized nationwide service of process and nationwide service of subpoenas in actions governed by §1369 by amendments to 28 U.S.C. §§1697 and 1785 respectively. Finally, 28 U.S.C. §1391(g) fixes venue in an action brought under §1369 "in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place."

What all these changes demonstrate is that Congress recognized an important federal interest in the consolidation and coordination of mass tort case, and determined the federal forum had the most tools and the best chance of achieving that result. In light of this purpose and strong federal interest the abstention provision should apply only where the goal of the MMTJA can be achieved in state court. That is, where the litigation can be almost completely consolidated and coordinated in one state jurisdiction. But the changes also reflect Congress' concern for out-of-state defendants, and a policy of having mass torts involving out-of-state

[9] *See* Triton's Memorandum of Law in *Kingsley v. Derderian*, C.A. NO. 03-208L.

defendants be heard in federal court. So in addition to limiting abstention to situations where virtually all the cases can be consolidated in a single state court, the "primary defendants" must also reside in that same state. The abstention provision must be construed so that it is limited to that situation.

**B.) Strictly construed, and construed in accord with the Act's object, §1369(b) does not apply to this action or the Station fire litigation.**

**1.) "Primary Defendants"**

Neither the statute nor the legislative history behind the abstention provision, §1369(b), defines or hints at what Congress intended by the phrase "primary defendants." Black's Law Dictionary, at page 1190, defines primary as "[f]irst; principal; chief; leading." Practically speaking, the primary defendants in any lawsuit are those defendants who have assets that make them the most likely to satisfy the judgments obtained by the plaintiffs. In the circumstances of the Station fire the primary defendants go far beyond the Derderians or even American Foam. If they were in fact the "primary defendants" or targets, all the lawsuits would have been filed by now, and not just a handful. Many of the plaintiffs are still looking for defendants as evidenced by the miscellaneous petitions that have been filed. And if "primary defendants" means primary targets, how is the Court to determine at this stage which defendants possess the most assets, and on what basis is it to be determined when there are numerous corporations named as defendants? Triton asserts there is an alternative tort concept that can be meaningfully applied at the inception of a lawsuit to distinguish between primary defendants and "secondary" defendants. That concept is the tort principle of primary liability as embodied in the doctrine of equitable indemnity.

Equitable indemnity is based on the theory that one who is exposed to liability solely as the result of a wrongful act of another should be able to recover from that party. *Rhode Island Depositors Economic Protection Corp v. Hayes*, 64 F.3d 22, 25 (1st Cir. 1995); *Muldowney v. Weatherking Products, Inc.*, 590 A.2d 441, 443 (R.I. 1986). Equitable indemnity can only be obtained where the liability of the claimant is solely constructive or derivative, that is, where the prospective indemnitor's wrongful acts have caused liability to be imposed on the claimant constructively, derivatively, or vicariously. *Muldowney*, 590 A.2d at 444. Under the doctrine of equitable indemnity the party who was actively negligent is considered to be the party "primarily liable" while the defendant who is not guilty of any active negligence, but is nevertheless constructively, derivatively, or vicariously liable for the other defendant's negligence, is considered to be "secondarily liable." *Id.*; *Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 441, 335 A.2d 339, 341 (1975). Equitable indemnity involves "an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to their own fault, to another person who should more properly bear responsibility for that loss because he was the actual wrongdoer." *County of Westchester v. Welton Beckett Associates*, 102 A.D.2d 34, 46, 478 N.Y.S.2d 305, 314 (1984).

> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence . . . It depends on a difference in the character or kind of the wrong which caused the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person . . . But the important point to be noted in all

> the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law . . .

*Builders Supply Co. v. McCabe*, 366 Pa. 322, 325-28, 77 A.2d 368, 370-71 (1951).

Given the vague nature of the phrase "primary defendants," the absence of any illustrative legislative history, and the historic attitude of the courts to favor the exercise of jurisdiction properly conferred, Triton asserts this Court should construe the term "primary defendants" to refer to those tort defendants the common law refers to as "primarily liable." This would mean that the requirement that the "primary defendants" be from the same state as the "substantial majority of plaintiffs" would only be met where the out-of-state defendants can only be "secondarily liable" – that is, constructively, derivatively or vicariously liable because of the acts of the "primary defendants." If any out-of-state defendant is alleged to have been actively negligent or culpable, abstention is not appropriate under §1369(b) and the Court should exercise its jurisdiction. Since the complaint here alleges that several out-of-state defendants are guilty of active negligence the abstention provision cannot apply, and the Court is obliged to exercise the jurisdiction conferred by §1369(a).

**2.) "Substantial Majority of Plaintiffs"**

Standing alone, the phrase "substantial majority" of plaintiffs may be even more vague and less helpful than the phrase "primary defendants." American Foam urges the Court to conclude that 60% of all possible plaintiffs arising out of the Station fire should constitute a substantial majority for purposes of abstention. At the other end of the spectrum, percentages as high as 92.6% to 100% have been given the label "substantial majority." *See Board of Education*

*of Kiryas Joel Village School District v. Grument*, 512 U.S. 687, n. 2, 736, 114 S.Ct. 2481, 2508, n. 2, 129 L.Ed.2d 596 (1994) (Scalia, J., dissenting). Anheuser-Busch asserts in its memorandum opposing abstention that, since the purpose of the MMTJA is to consolidate mass tort litigation in a single court, and abstention should only occur in very narrow and exceptional circumstances, Congress intended the phrase "substantial majority of all plaintiffs" to mean *virtually all plaintiffs*. (Anheuser-Busch Memo at 12-13). Triton agrees. As stated earlier, a federal court should not abstain under §1369(b) unless virtually all of the litigation flowing out of a single accident mass tort can be consolidated in a single state court. That will not happen unless virtually all the plaintiffs are from the same state.[10]

Given the "virtually all" guidepost Rhode Island citizens will not constitute the "substantial majority" of the potential plaintiffs that can be expected to file suit. According to DERCO, victims have been identified as citizens of at least 7 states other than Rhode Island, with a significant number (73) of victims whose citizenship is as yet unknown. (DERCO Mot. to Dismiss at 2). Suits have already been filed in Massachusetts and Connecticut, albeit in federal court.

The Station fire litigation simply cannot be accurately characterized as a "local" or Rhode Island matter. It will eventually involve a multitude of lawsuits with hundreds of plaintiffs from several states and defendants from across the country. It is not the narrow and exceptional circumstance where abstention under §1369(b) should be exercised.

---

[10] Anheuser-Busch also points out that an abstention provision in the proposed Class Action Fairness Act of 2002 also used the term "substantial majority" and the legislative history shows that it was understood in that context to mean "virtually all," and gave an example of 99.7%.

**Conclusion**

The Court's jurisdiction over this matter is clear. The issue is abstention. For all the above-stated reasons Triton respectfully asserts the requirements for abstention set forth in §1369(b), properly construed, are not present. This Court should deny the motion to abstain or dismiss, and retain its jurisdiction over this action.

Triton Realty Limited Partnership
By its Attorneys,

HANSON CURRAN LLP

James T. Murphy (by TRB)

James T. Murphy, Esq. #1698

Thomas R. Bender

Thomas R. Bender, Esq. #2799
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154 – Telephone
(401) 521-7040 - Fax

and

Scott J. Tucker (by TRB)

Scott J. Tucker (BBO #503940)
Tucker Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108
(617) 557-9696 – Telephone
(617) 227-9191 – Fax
admitted pro hac vice

**PROOF OF SERVICE**

I hereby certify that on this ______ day of August, 2003, I served the within document by mailing a copy of same to the following:

Thomas C. Angelone, Esq.
HODOSH, SPINELLA & ANGELONE, P.C.
One Turks Head Place, Suite 1050
Providence, RI 02903-2205

Stephen E. Breggia, Esq.
BREGGIA, BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Brian Cunha, Esq.
LAW OFFICES OF BRIAN CUNHA & ASSOC.
904 Broadway
East Providence, RI 02914

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

Anthony F. DeMarco, Esq.
REYNOLDS, DEMARCO & BOLAND, LTD.
170 Westminster Street, Suite 200
Providence, RI 02903

Marc DeSisto, Esq.
DESISTO LAW
211 Angell Street, P.O. Box 2563
Providence, RI 02906-2563

Curtis R. Diedrich, Esq.
Edward T. Hinckey, Esq
SLOANE & WALSH
3 Center Plaza
Boston, MA 02108

Christopher C. Fallon, Jr., Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103-3508

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

William A. Filippo, Esq.
373 Elmwood Avenue
Providence, RI 02907

Scott Hubbell, Esq.
SUMMERS LAW OFFICE
P.O. Box 306
Franklin, MA 02038-0306

Patrick T. Jones, Esq.
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 02110

Stephanie Larivee-DiMaio, Esq.
James Howe, Esq.
215 Broadway
Providence, RI 02903

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Eva Marie Mancuso, Esq.
387 Atwells Avenue
Providence, RI 02909

Steven A. Minicucci, Esq.
373 Elmwood Avenue
Providence, RI 02907

Max Wistow, Esq.
WISTOW & BARYLICK INCORPORATED
61 Weybosset Street
Providence, RI 02903

Donald A. Migliori, Esq.
NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE
321 South Main Street, Suite 402
Providence, RI 02903

Mark S. Mandell, Esq.
Yvette Boisclair, Esq.
MANDELL, SCHWARTZ & BOISCLAIR
One Park Row
Providence, RI 02903

Ralph J. Monaco, Esq.
CONWAY & LONDREGAN
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Oleg Nikolyszyn, Esq.
155 South Main Street
Suite 303
Providence, RI 02903

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
MORRISON, MAHONEY & MILLER
One Providence Washington Plaza
Providence, RI 02903

J. Renn Olenn, Esq.
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886

Charles N. Redihan, Jr., Esq.
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903

James A. Ruggieri, Esq.
HIGGINS, CAVANAGH & COONEY
The Hay Building
123 Dyer Street
Providence, RI 02903-3987

Mark D. Tourgee, Esq.
Timothy A. Williamson, Esq.
INMAN & TOURGEE
1193 Tiogue Avenue
Coventry, RI 02816

Michael A. St. Pierre, Esq.
REVENS, REVENS & ST. PIERRE, P.C.
946 Centerville Road
Warwick, RI 02886

Amy Scheeley, Esq.
LAW OFFICE OF DONALD E. GREENE
2235 Washington Street
Roxbury, MA 02119

Randall L. Souza, Esq.
NIXON PEABODY, LLP
One Citizens Plaza
Providence, RI 02903

Faith LaSalle, Esq.
Zizik, LaSalle & Powers, P.C.
40 Westminster St., Suite 201
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Edward M. Crane, Esq.
Deborah G. Solomor, Esq.
SKADDEN, ARPS, SLATE, MAGER & FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606

William P. Robinson, III, Esq.
Stephen M. Prignano, Esq.
EDWARDS & ANGELL
2800 Financial Plaza
Providence, RI 02903

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Andrew Trevelis, Esq.
REED SMITH LLP
259 Liberty Place
Philadelphia, PA 19103-7301

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Thomas R. Bender

of Hanson Curran LLP