UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **TAMMY PASSA** ***et al.*****,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **C.A. NO.: 03-148-L** |
| | ) | |
| **JEFFREY DERDERIAN** ***et al.*****,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS FOAMEX INTERNATIONAL INC. AND GENERAL FOAM CORPORATION'S RULE 12(B)(6) MOTION TO DISMISS**

Defendants General Foam Corporation and Foamex International Inc. (collectively "GFC") moved to dismiss Plaintiffs' Complaint on the grounds that, as a matter of law, the causal connection between GFC's alleged negligence and Plaintiffs' injuries was severed by any one or more of the other defendants' numerous intervening acts. Plaintiffs' Memorandum in Opposition ("Plaintiffs' Opposition") does not challenge the well-reasoned Rhode Island legal authority cited by GFC in support of its original Motion to Dismiss. Rather, Plaintiffs argue that distinguishable cases from non-Rhode Island courts that involved old claims regarding polyurethane foam are controlling of the legal issues here. Neither these cases, nor any of the Rhode Island cases discussed by Plaintiffs, suggest that GFC's remote manufacture of bulk polyurethane foam could be the proximate cause of Plaintiffs' injuries from The Station fire.

## I. The Intervening Acts of Other Defendants Severed any Causal Link Between GFC's Alleged Negligence and Plaintiffs' Injuries.

Plaintiffs' assertion that proximate cause may often be appropriately decided by a jury fails to recognize or counter the numerous cases in which the Rhode Island Supreme Court "has not hesitated, in certain circumstances, to declare the absence of proximate cause as a matter of

154

law." *See* Defendants' Memorandum in Support of Motion to Dismiss ("Opening Memorandum") at p. 15 (citing *The Travelers Insurance Co. v. Priority Business Forms, Inc.*, 11 F. Supp. 2d 194, 199 (D.R.I. 1998)). The unprecedented events presented in this case warrant but one conclusion – that GFC's alleged negligence was rendered completely inoperative by the number and quality of intervening acts occurring after its remote manufacture of bulk foam and before Plaintiffs' injuries from The Station fire.

In arguing that GFC's manufacture of polyurethane foam was just one of many concurrent causes, Plaintiffs incorrectly equate "factual cause" with "proximate cause." "Proof of causation is a two-step process. Modern tort doctrine requires that plaintiff must establish both factual *and* proximate causation." *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 51 F. Supp. 2d 81, 103 (D.R.I. 1999) (emphasis added). Factual cause is established by showing that "but for" the defendant's actions (or that it is "reasonably probable that but for" the defendant's actions), the plaintiff would not have suffered injury. *Id.* (citing *Mesolella v. City of Providence*, 508 A.2d 661, 670 (R.I. 1986)).

Proximate cause, on the other hand, is "the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41 at 264 (5th ed. 1984).

> In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation."

*Id.* (citation omitted). There is no reasonable basis, in the law or in policy, to hold a remote manufacturer of bulk polyurethane foam liable when, more than two and a half years after manufacture, an improper resale and illegal end use of its product as structural soundproofing ignites and burns from pyrotechnics illegally used in an overcrowded and unsafe nightclub – and

after three inspections by government officials overlooked the illegal use and failed to order its removal. GFC's alleged negligence is remote in time, space and sequence from the events that led to Plaintiff's injuries.

Plaintiffs rely heavily on two cases involving polyurethane foam to sustain their claims that GFC had a duty to Plaintiffs and that GFC's alleged negligence in manufacturing non-fire retardant foam was the proximate cause of their injuries.[1] These cases, from a Minnesota state court and a Pennsylvania state court, dealt with fires involving polyurethane foam being legally used for its intended purpose, and involved events entirely different from those presented by The Station fire.

*Independent School District No. 14 v. AMPRO* Corp., 361 N.W.2d 138 (Minn. Ct. App. 1985), involved polyurethane foam gym mats being used in an anticipated and intended manner. A fire, started by high school students, ignited the gym mats. The court concluded that the harm did not result from an unanticipated use of the gym mats, since storing them in a school building was a normal practice. *Id.* at 142. The court further held that a jury could have concluded that the risk of vandalism by high school students was foreseeable. *Id.* at 143-44.

It is inconceivable that the situation in *AMPRO* – polyurethane foam being used for an intended purpose combined with a single foreseeable risk of vandalism by high school students – could be equated with The Station fire events. Here, it is indisputable that GFC's foam was being used by the Derderians for an *improper and unintended* use as structural soundproofing – a use prohibited by law – quite unlike the normal and lawful use of foam for gym mat padding.

---

[1] *See also* Section II, *infra*. The questions of proximate cause and legal duty are essentially one and the same. "It is quite possible to state every question which arises in connection with 'proximate cause' in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?" PROSSER AND KEETON, § 43 at 274.

Any determination by the *AMPRO* court regarding the propriety of manufacturing non-fire retardant foam for gym mats cannot be taken out of that context and projected onto the illegal and unintended use of packing foam as structural soundproofing that occurred here. Beyond that, the risks presented by any *one* of the *multitude of acts* intervening between GFC's manufacture of buns of polyurethane foam and the Station Fire – notwithstanding their *combination* – were not foreseeable in the way that vandalism in a high school was foreseeable.

Similarly, *KIMCO v. Michael D's Carpet Outlets*, 637 A.2d 603 (Pa. 1993), involved polyurethane foam carpet padding being used in an intended manner. The padding had been stacked to the ceiling in a storage area of Michael D's carpet store, and ignited from either an electrical failure or by coming into contact with a light bulb. A jury determined that the foam manufacturer, GFC, was 20% at fault for failing to warn its own customer of the foam's highly flammable nature, and the customer, Michael D's, was 80% at fault for carelessly storing the carpet padding. There were no independent intervening acts by others for the court to consider, and no remote bulk supplier issues as Michael D's was GFC's direct customer in that case. Thus, this decision regarding an *intended* use of polyurethane foam as carpet padding by a customer adds nothing to this Court's analysis of whether GFC's alleged negligence in producing bulk foam was rendered causally inoperative by the *resale, unintended use* and *multitude* of unforeseeable, independent intervening acts that ultimately resulted in the Station Fire.[2]

Plaintiffs in essence contend that because GFC has been sued in the past when polyurethane foam has caught fire, all fires involving foam-containing products are henceforth

---

[2] Note that the claim asserted by Michael D's regarding a light bulb as an ignition source is not available today. *See* Exh. 2 to GFC's Opening Memorandum, Affidavit of Margaret Hebner ¶ 14.

foreseeable and GFC should be responsible for every such instance, regardless of the warnings it provides or the aberrant and inappropriate use of such products by others. Plaintiffs' contention is not consistent with the law.

The Plaintiffs' cases in which a defendant's negligence was deemed a concurrent cause of the plaintiff's injuries are incomparable to GFC's remote manufacture of foam years before The Station fire and the numerous unforeseeable intervening acts that came between those two events. For example, in *Roberts v. Kettelle*, 356 A.2d 207 (R.I. 1976), the defendant police officer was traveling below the minimum speed limit in the interstate highway's fast lane. The intervening act was the plaintiff traveling in the fast lane in excess of the speed limit – *at the same time* the officer was traveling at the unlawful reduced speed – which caused a collision between the two. The court concluded that the officer could have reasonably anticipated the plaintiff's behavior, and thus, his original negligence was not so remote as to be considered merely a past condition or circumstance. *Id.* at 215.

In *Welsh Manufacturing v. Pinkerton's Inc.*, 474 A.2d 436, 444 (R.I. 1984), the original negligence was a security firm's negligent hiring of an employee to guard a client's facility. The intervening act was the guard's involvement in a robbery at the client's facility during the time he was supposedly guarding those premises. The court concluded that the guard's participation in the criminal thefts could be found to be a reasonably foreseeable result of defendant's negligence in not taking the necessary steps to ensure the employee's honesty, trustworthiness and reliability.

In *Martinelli v. Hopkins*, 787 A.2d 1158 (R.I. 2001), the original negligence was the defendant city's issuance of a license for a yearly festival, although the city's conduct later came into play again when it failed to adequately control the festival crowd after learning that the

event had become raucous. The court concluded that the city knew or should have known of the risks to the event's spectators from the large, intoxicated and unruly crowd. However, it failed to inquire as to the quantity of alcohol that would be provided, and whether there would be adequate toilet facilities and private security guards to patrol the event. Under these circumstances, it was foreseeable that attendees of the event would be forced to find alternative toilet arrangements, and thus that a nearby rotting tree would fall on the plaintiff and injure him.

In all of these cases, the intervening acts were close in time *and* distance, *and* directly related to the risk created by the defendant's negligence – *i.e.* the risk created by driving well below the legal speed limit in the fast lane of an interstate highway (*Roberts*), the risk created by negligently hiring an employee to serve as a security guard (*Welsh*), and the risk created by negligently issuing a festival license and failing to control that festival when it becomes unruly (*Martinelli*).

The negligent and illegal intervening acts here – all involving the improper, illegal and unintended use of remanufactured polyurethane foam as structural soundproofing – are not directly related to any risk created by the remote manufacture of bulk polyurethane foam to be used in an appropriate and intended end use.

## II. A Bulk Manufacturer of Polyurethane Foam in Buns has no Duty to Plaintiffs Injured in the Nightclub Fire.

As noted earlier, the question of legal duty is essentially the same as proximate cause, in that it reflects the conclusion of the policy decision regarding where the bounds of liability will be drawn. PROSSER AND KEETON, § 43 at 281. Rhode Island courts consider the following factors in determining whether a duty of care exists, paralleling those considered in a proximate cause analysis: the foreseeability of the harm; the degree of certainty that the plaintiff suffered an injury; the closeness of connection between the defendant's conduct and the injury suffered;

the policy of preventing future harm; and the extent of the burden to defendant and consequences to the community for imposing a duty with resulting liability for breach. *Morrissey v. Capstone Financial Services, Inc.*, 706 A.2d 1338 (R.I. 1998) (holding no duty to investigate insurance status of an independent contractor).

The fact that Plaintiffs' injuries may be somehow connected to an alleged defective warning does not automatically establish that they were foreseeable. If that were the case, there would be no explanation for the numerous Rhode Island cases in which intervening acts of others were determined to be unforeseeable, severing the causal link between the defendant's initial conduct and the plaintiff's harm. For example, in *Travelers*, 11 F. Supp. 2d 194 (D.R.I. 1998), the Court found that the presence of flammable chemicals on the premises was a *condition*, rather than a proximate cause, of the destruction caused by an arsonist's fire, and no danger existed in the unsecured storage of these materials alone; absent the intervening act of arson, the premises would not have been destroyed. Certainly the risk of unsecured storage of flammable chemicals is that they would result in a fire, but the fact that a fire actually occurred did not render that harm foreseeable to the defendant.

Similarly, in *Walsh v. Israel Couture Post, No. 2274 V.F.W. of the United States*, 542 A.2d 1094 (R.I. 1988), a handrail became dislodged when struck by the defendant's truck. Although the risk of harm created by the defendant's negligence – that someone would lean against the railing and be injured – actually occurred, the court held that the VFW's failure to either repair or post a warning about the rail was not foreseeable to the defendant and, therefore, constituted an intervening cause. *See also Carroll v. Yeaw*, 850 A.2d 90, 2004 R.I. LEXIS 108 (R.I. 2004) (Holding that, because the connection between defendant's actions and plaintiff's injuries was tenuous due to intervening breaks in chain of causation, the absence of the causal

element outweighed foreseeability of plaintiff's injury and public policy arguments, creating no duty of care.)

As to the remaining factors, GFC's Opening Memorandum and this Reply thoroughly demonstrate that GFC's alleged negligence is not linked in time or space to Plaintiffs' injuries. GFC's remote manufacture and sale of the foam occurred more than two and a half years before The Station fire. It was purchased by defendant American Foam who processed it and then sold it to the Derderian defendants. It remained on the walls of the nightclub for more than two years before the fire, through three different government inspections that should have identified the illegal use and ordered it removed. The owners of the nightclub then permitted illegal pyrotechnics to be used in the building where they had illegally installed the foam, and they intentionally allowed the club to become overcrowded and unsafe on the night of the fire.

It is fruitless to talk about the "policy of preventing future harm" by imposing a duty on a bulk foam manufacturer, when the relevant policy considerations have already been addressed and incorporated into the building codes, fire codes and OSHA regulations that all made the use of foam as structural soundproofing, and in the presence of pyrotechnics, illegal at the time of the fire. Finally, imposing a duty on GFC to prevent harm caused by unknown and unknowable illegal and unintended uses of its bulk foam would make GFC an absolute insurer of its product – a result the Rhode Island Supreme Court has already rejected as "absurd." *See* GFC's Opening Memorandum at pp. 13-14.

As a matter of law, there is no reasonable rationale for imposing a duty on GFC to prevent the harm to Plaintiffs that occurred from The Station fire, and Plaintiffs' claims against GFC should be dismissed.

**III. The Bulk Supplier Doctrine Applies to GFC's Remote Manufacture of Bulk Polyurethane Foam.**

According to Plaintiffs, the mere fact that they alleged GFC's foam was defectively designed and lacked appropriate warnings renders the bulk supplier doctrine inoperative to their claims. Although the bulk supplier doctrine is an alternative rationale for dismissal of Plaintiffs' claims against GFC – in addition to the lack of proximate cause and absence of duty – it is directly applicable to this case.

As explained in GFC's Opening Memorandum at p. 30, the Restatement (Third) of Torts § 5, comment d, provides that a bulk seller ordinarily is not liable for failing to incorporate a safety feature that is peculiar to the specific adaptation for which another utilizes an incomplete product.[3] Although the Restatement presumes that any specific adaptation will be an intended application, as opposed to the illegal and unintended use made of GFC's foam here, it recognizes that a duty should not be imposed on the bulk seller to warn purchasers of the incomplete product, or end users of the integrated product, of dangers arising from special adaptations of the incomplete product by others.

GFC warned its manufacturing customers, including American Foam, of the highly flammable nature of the foam and the hazard from vapors and smoke which, in fact, were already known to American Foam. (GFC's Opening Memorandum at p. 30.) It had no duty to warn American Foam's customers, the Derderians, or Plaintiffs of dangers arising from the illegal, unintended use of the remanufactured foam as structural soundproofing.

Plaintiffs rely heavily on *Gifaldi v. Jefferson Chemical Co.*, 1995 U.S. Dist. LEXIS 206 (W.D.N.Y. 1995) (unpublished) to argue that the bulk supplier doctrine has been rejected in the

---

[3] "Incomplete products" are products that can be put to different uses depending on how they are integrated into the end products. *See* Restatement (Third) of Torts § 5, cmt. d.

context of polyurethane foam. In addition to the fact that the Restatement makes explicit reference to polyurethane foam as a bulk material, the *Gifaldi* case is neither on point nor persuasive. The bulk chemical at issue was used almost exclusively to produce polyurethane foam and, therefore, the rationale for the doctrine – to prevent the imposition of an obligation to research every end use of a bulk material – did not apply. Moreover, in *Gifaldi*, the bulk chemical supplier had *actual* knowledge of the singular end use for which the chemical was being used and had misled its customer about the flammability of polyurethane foam. There is no similar allegation in this case, nor can there be one.

GFC has no duty to warn the remote users of end products into which its bulk foam has been incorporated. It certainly has no duty to warn them of hazards related to illegal, unintended uses of its foam about which it has no knowledge.

## IV. Conclusion

For the reasons set forth in GFC's Opening Memorandum and this Reply, GFC requests that the Court dismiss, with prejudice, all of Plaintiffs' claims against GFC.

Respectfully submitted,

GENERAL FOAM CORPORATION AND
FOAMEX INTERNATIONAL, INC.

By Their Attorneys,

HIGGINS, CAVANAGH & COONEY

Gerald C. DeMaria (JAR)
James A. Ruggieri

Gerald C. DeMaria, Esq. #0637
James A. Ruggieri, Esq. #2828
123 Dyer Street
Providence, RI 02903
Tel: (401) 272-3500
Fax: (401) 273-8780

Of Counsel:

Carl A. Henlein, Esq.
John R. Crockett, III, Esq.
Susan S. Wettle, Esq.
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

**PASSA CERTIFICATION**

I hereby certify that on the 30th day of July, 2004, a true copy of the within was mailed to:

Ronald J. Resmini, Esq.
Ronald J. Creamer, Esq.
RONALD J. RESMINI LAW OFFICES
155 South Main Street
Providence, RI 02903

Thomas C. Angelone, Esq.
HODOSH, SPINELLA & ANGELONE
One Turks Head Place, Suite 1050
Providence, RI 02903

Mark Reynolds, Esq.
Anthony F. DeMarco, Esq.
BOYER, REYNOLDS & DeMARCO, LTD
170 Westminster Street, Suite 200
Providence, RI 02903

Howard A. Merton, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M. Prignano, Esq.
Stephen J. MacGillivray, Esq.
EDWARDS & ANGELL LLP
2800 Financial Plaza
Providence, RI 02903

Donna M. Lamontagne, Esq.
Steven T. Hayes, Esq.
ZIZIK, LaSALLE & POWERS, P.C.
40 Westminster Street, Suite 201
Providence, RI 02903

Edward T. Hinchey, Esq.
Curtis Diedrich, Esq.
SLOANE & WALSH, LLP
Three Center Plaza
Boston, MA 02108

James R. Lee, Esq.
RI DEPT OF THE ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903

Fred A. Kelly, Esq.
Randall L. Souza, Esq.
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903

Scott J. Tucker, Esq.
TUCKER HEIFETZ & SALTZMAN LLP
Three School Street
Boston, MA 02108

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Thomas Bender, Esq.
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103-3508

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

James H. Reilly, III, Esq.
Donald J. Maroney, Esq.
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903

Marc DeSisto, Esq.
DeSISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906

Andrew J. Trevelise, Esq.
REED SMITH LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

W. Thomas McGough, Jr., Esq.
James J. Restivo, Jr., Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Robert I. Reardon, Jr., Esq.
Robert I. Rimmer, Esq.
THE REARDON LAW FIRM, PC
160 Hempstead Street
New London, CT 06320

Deborah G. Solmor, Esq.
Edward M. Crane, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Carl A. Henlein, Esq.
John R. Crockett, III, Esq.
Susan S. Wettle, Esq.
FROST BROWN TODD
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Faith A. LaSalle, Esq.
One Turks Head Building
76 Westminster Street, Suite 1010
Providence, RI 02903

Jean Audino [signature]