UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Tammy Passa, et al. : Plaintiffs :
vs. : C.A. No. 03-148 L
Jeffrey Derderian, et al : Defendants :

PLAINTIFF TAMMY PASSA'S REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS FOAMEX INTERNATIONAL INC. AND GENERAL FOAM CORPORATION'S RULE 12(b)(6) MOTION TO DISMISS

## I. Introduction

Defendants FOAMEX INTERNATIONAL INC. AND GENERAL FOAM CORPORATION (hereinafter "Defendants," "GFC," "Fomaex" or "General Foam") have filed a reply motion, arguing that certain cases cited by Plaintiff in her support of her Motion in Opposition to Motion to Dismiss are distinguishable and off-point. Plaintiff stands by her initial memorandum, and makes further observations herein.

## II. Argument of Law

### A. Duty of Care.

Defendants in their Reply Memorandum fails to meaningfully distinguish the case of Independent School District No. 14 v. AMPRO Corporation, 361 N.W.2d 138 (Minn. App. 1985), a case which addressed and rejected the very same defenses raised by GFC in the instant case. Defendants posit that it is "inconceivable" for the events in AMPRO to be equated with the Station fire. (GFC Reply Memorandum, p.3) Yet any objective reading of the two cases promotes

157

the conclusion that they are analogous.

In both cases, third parties intentionally lit fires which ignited polyurethane foam products, which caused a fire to burn rapidly out of control due to the peculiar hazard associated with the burning of polyurethane. In AMPRO, two young students in a school gymnasium ignited a polyurethane gymnasium mat, which burned rapidly with intense heat and the emission of black, dense smoke. In the instant case, the crew of Great White intentionally lit fireworks that ignited polyurethane foam on the ceiling and walls of the Station nightclub, causing a rapid, intense fire and the emission of toxic, dense smoke. In AMPRO, the mats were intended to be used inside a building for high-jumping and pole-vaulting. In the instant case, the foam was intended to be used for an alleged variety of purposes within residential and mercantile establishments, including sound insulation. Neither foam product came with warnings as to its dangerous, non-fire retardant nature.

AMPRO rejected the foam manufacturers' argument that the harm resulted from an unanticipated use of the mats (i.e., that the foam's normal anticipated use was providing cushioning to landings after high jumps and pole vaults). The court reasoned that "[s]torage in a school building, in an area close to students and to valuable equipment, however, is also a normal, anticipated use." AMPRO found the existence of a duty of care and foreseeability of injury, even though students *intentionally* ignited the foam

and even though the mats were not being used for their intended purpose (of cushioning falls). Likewise, in the Station fire case, the use of polyurethane foam as sound insulation is a normal, anticipated use of the product, and indeed, the nightclub owners purchased the foam from American Foam specifically for that purpose.

B. Bulk Supplier Doctrine.

Defendant contends that Gifaldi v. Jefferson Chemical Co., 1995 U.S. Dist. LEXIS 206 (W.D.N.Y. 1995), is "neither on point or persuasive." However, an objective reading of the case refutes this stance. The plaintiffs in Gifaldi claimed that the fire which destroyed their building was exacerbated by the building's polyurethane foam insulation, which was created by the mixture of chemicals sold by the defendant-chemical suppliers.

First, GFC argues that, unlike the defendants in Gifaldi, it had no actual knowledge (GFC's emphasis) that polyurethane was highly flammable. This assertion is patently ridiculous, as GFC has been sued in the past for failing to give warnings regarding the highly flammable nature of its polyurethane products.

Second, GFC argues that, unlike itself (a manufacturer of foam products), the defendant in Gifaldi was a chemical supplier of chemicals used almost exclusively to produce polyurethane foam. Plaintiff posits that, rather than being a distinction, the Gifaldi rationale applies even more so to manufacturers (as opposed to chemical suppliers) of foam

products. Furthermore, Gifaldi stressed that, even assuming the applicability of the bulk supplier doctrine, the defendant-chemical supplier still had a duty to warn intermediaries of the flammability characteristics of polyurethane foam. As in Gifaldi, a factual issue exists in the instant matter as to the adequacy of the Defendants' warnings.

**C. Proximate Cause.**

Defendants argue strenuously that proximate cause is lacking in this case because the negligent and/or illegal acts of other various other defendants constitute intervening/superseding causes, thus absolving GFC from liability. However, Defendant has failed to distinguish in any meaningful way two cases cited by Plaintiff dealing with polyurethane fires. Specifically, in AMPRO, supra, in which students intentionally and criminally set ablaze a gymnasium mat, the court ruled that the students' arson was not an intervening/superseding cause as a matter of law and thus did not insulate the defendant-foam manufacturer and distributor from liability. Noting that a superseding cause is not legally sufficient if it is reasonably foreseeable, the court concluded that a jury could reasonably have determined that vandalism involving fire is foreseeable in a high school. Likewise, in the instant matter, it is reasonably foreseeable that non-fire retardant polyurethane foam used as sound insulation in a public place might come into contact, either intentionally or unintentionally, with

fire.

Similarly, in Kimco Development Corp. v. Michael D's Carpet Outlets, 536 Pa. 1, 637 A.2d 603 (1993), the Pennsylvania Supreme Court affirmed a judgment against General Foam Corporation -- *the very same defendant in the instant matter* -- despite negligent conduct by a co-defendant in piling carpet padding too close to ceiling light bulbs, causing the carpet padding to ignite. The court rejected General Foam's argument (which GFC has reprised in the instant case) that the product defect (failure to warn) was not the legal cause of the fire. Rather, the court ruled that both General Foam was comparatively liable for the harm. Id. Likewise, in the instant case, the polyurethane foam product was being used in a foreseeable manner as sound insulation, and proximate cause is not broken merely by the fact that concurrent causes may also have added to the dangerous situation at the Station club on the might in question.

Contrary to Defendant's assertion, Plaintiff does not posit that GFC should be liable whenever its polyurethane foam ignites. This is a gross misstatement and over-simplification of Plaintiff's position. Rather, Plaintiff asserts, as delineated in her Second Amended Complaint, that General Foam should be held liable under theories of negligence, breach of warranty and strict products liability as the manufacturer of the highly-flammable, non-fire retardant polyurethane foam that was used as soundproofing

at the Station night club; that Foamex, which purchased General Foam after the sale of the foam in question, is liable as the successor corporation; that American Foam, which bought the foam from General Foam and sold the foam to the owners of the Station nightclub, is also liable in negligence, breach of warranty, and strict products liability. Second Amended Complaint, paragraphs 25-27; counts 14-16. Other than making bald assertions of distinctions, Defendant's Reply Memorandum does nothing to refute the precedential value of the three cases cited and discussed above.

**III. Conclusion**

For the reasons stated herein, this Court should deny the Defendants' Rule 12(b)(6) motion to dismiss.

By their Attorneys,
RESMINI LAW OFFICES, LTD.
BY:

DONALD J. RESMINI, ESQ. #0484
155 South Main St.
Suite 400
Providence, RI 02903
DATED: August 17, 2004
(401)751-8855

CERTIFICATION

I hereby certify that on this 17th day of August, 2004 I mailed a copy of the within Memorandum by regular mail, postage prepaid to the following:

Anthony F. DeMarco, Esq.
170 Westminster St.
Prov., RI 02903

Thomas C. Angelone, Esq.
One Turks Head Place
Prov., RI 02903

Marc DeSisto, Esq.
211 Angell St.
Prov., RI

Joseph V. Cavanagh, Jr., Esq.
30 Exchange Terrace
Providence, RI 02903

James R. Lee, Esq.
150 South Main St.
Prov., RI 02903

Robert Reardon, Esq.
160 Hemstead St.
New London, CT 06320

William Robinson, Esq.
Edwards & Angell
2800 Financial Plaza
Prov., RI 02903

Kathleen M. Hagerty, Esq.
70 Jefferson Blvd.
Warwick, RI

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Prov., RI 02903

Fred A. Kelly, Jr., Esq.
NIXON PEABODY LLP
One Citizens Plaza - Suite 700
Prov., RI 02903

Faith LaSalle, Esq.
Law Ofrfices of Faith A. LaSalle
One Turks Head Place
76 Westminster St.
Suite 1010
Prov., RI 02903

Stefanie DiMaio Larivee, Esq.
215 Broadway
Prov., RI

James Murphy, Esq.
HANSON CURRAN LLP
146 Westminster St.
Prov., RI 02903

James J. Restivo, Jr., Esq.
Reed Smith LLP
435 Sixth Ave,
Pittsburgh, PA 15219

Andrew J. Trevelise, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market St.
Philadelphia, PA 19103

Claire M. Orsini