UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TAMMY PASSA, Alias, et al.,

*Plaintiffs,*

vs.

JEFFREY DERDERIAN, et al.,

*Defendants.*

C.A. No. 03-148L

**DEFENDANTS', DENIS LAROCQUE AND TOWN OF WEST WARWICK'S MOTION TO DISMISS In LIEU OF ANSWER**

NOW COME Defendants, Denis Larocque and Town of West Warwick and hereby move to dismiss the above captioned matter in lieu of answer in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, defendants rely upon the Memorandum of Law, attached and incorporated herein.

Defendants,
Denis Larocque and
Town of West Warwick,
By their attorneys,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,
Denis Larocque and
Town of West Warwick,
By their attorneys,

Michael A. DeSisto, Esq. (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
michael@desistolaw.com

166

Defendants,
Denis Larocque and
Town of West Warwick,
By their attorneys,

Kathleen M. Daniels, Esq. (#4766)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
kathleen@desistolaw.com

C.A. No. 03-148L

CERTIFICATION OF SERVICE

I hereby certify that a copy of the within has been mailed, postage prepaid, and/or hand-delivered on this 31st of ~~April~~ August 2004 to:

Ronald J. Resmini, Esq.
RONALD J. RESMINI LTD.
155 South Main St – Ste 400
Providence, RI 02903
(401) 751-8855
(401) 737-6464 fax
*for Plaintiffs*

Anthony F. DeMarco, Esq.
REYNOLDS, DEMARCO & BOLAND, LTD.
170 Westminster St – Ste 200
Providence, RI 02903
(401) 861-5522
(401) 331-4861 fax
*for Jeffrey Derderian, Michael Derderian, and DERCO, d/b/a The Station*

Randall L. Souza, Esq.
Fred A. Kelly, Jr., Esq.
Ian C. Ridlon, Esq.
NIXON PEABODY, LLP
One Citizens Plaza – Ste 700
Providence, RI 02903
(401) 454-1000
(401) 454-1030 fax
*for Jack Russell*

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 fax
*for Anheuser-Busch Companies, Inc.*

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Pl
Providence, RI 02903
(401) 421-3060
(401) 272-6803 fax
*for McLaughlin and Moran, Inc.*

Curtis R. Diedrich, Esq.
SLOANE & WALSH, LLP
127 Dorrance St – 4th Flr
Providence, RI 02903-2828
(401) 454-7700
(617) 227-0927 fax
*for Luna Tech, Inc. and Luna Tech Pyrotechnik, GmbH*

Thomas C. Angelone, Esq.
HODOSH SPINELLA & ANGELONE, PC
1 Turks Head Pl – Ste 1050
Providence, RI 02903
(401) 272-0200
(401) 274-7538 fax
*for American Foam Corporation*

William P. Robinson, III, Esq.
Stephen M. Prignan, Esq.
Stephen J. MacGillivrary, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 fax
*for Clear Channel Communications, Inc. d/b/a WHJY-FM*

James R. Lee, Esq.
Chief, Civil Division
Department of Attorney General
STATE OF RHODE ISLAND
150 South Main St
Providence, RI 02903
(401) 274-4440
(401) 222-2995 fax
*for State of Rhode Island and Irving J. Owens*

James T. Murphy, Esq.
Kelly N. Michels, Esq.
HANSON CURRAN, LLP
146 Westminster St
Providence, RI 02903
(401) 421-2154
(401) 521-7040 fax
*for Triton Realty Limited Partnership and Triton Realty, Inc.*

James H. Reilly, Esq
Donald J. Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster St – Ste 500
Providence, RI 02903
(401) 272-1312
(401) 331-9397 fax
*Representing: Daniel Biechele*

Laura Souza

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TAMMY PASSA, alias, et al.,<br>*Plaintiffs,*<br>vs.<br>JEFFREY DERDERIAN, et al.,<br>*Defendants.* | C.A. NO. 03-148L |

**MEMORANDUM OF LAW In SUPPORT OF DEFENDANTS', DENIS LAROCQUE AND TOWN OF WEST WARWICK'S MOTION TO DISMISS IN LIEU OF ANSWER**

## *I. INTRODUCTION*

Defendants, Denis Larocque and the Town of West Warwick (hereinafter "Town defendants") hereby move to dismiss the above captioned matter in lieu of answer in accordance with Rule 12(b)(6). In support thereof, the defendants submit that even when the factual averments in plaintiffs' Second Amended Complaint are taken as true and read in the light most favorable to plaintiffs, it fails to state a cause of action against the Town defendants. In particular, plaintiffs seek to maintain negligence claims against the Town defendants challenging the Town's enforcement of the State Fire Safety Code in its inspection of the Station nightclub. The Town defendants submit that there is no cause of action either at common law or under R.I. statutes for the negligent enforcement of a statute. Moreover, the instant Complaint should be dismissed because the Town defendants, in addition to being entitled to absolute immunity for their quasi-judicial functions are protected by both the statutory immunity afforded

by *R.I.G.L. § 23-28.2-17* and the public duty doctrine. The Town defendants alternatively submit that the instant Complaint should be dismissed because, even assuming the truth of the allegations of the Complaint, the illegal and unanticipated use of the pyrotechnics was an intervening, superceding cause breaking any alleged causal chain to the Town defendants. Thus, for the reasons more fully outlined herein, the Town defendants respectfully request that the instant Complaint be dismissed

## *II. Background*

On February 23, 2003, a fire broke out at the Station Nightclub in West Warwick, R.I. At the time of the fire, a 1980's rock band, "White Snake" was performing a concert that involved the illegal use of pyrotechnics without a permit. At approximately 11:00 pm, as Great White began playing its first song, pyrotechnics were ignited from three (3) "cones" set on the stage. Within seconds, sparks from the pyrotechnics ignited the structure, apparently first striking soundproofing material or "foam egg-crating" behind and above the stage. The fire quickly spread as the smoke-blinded the patrons tried to exit the building. Unfortunately, in the push to exit the building through the narrow hallway leading to the front door, some patrons fell blocking the exit. Other patrons exited through the bar area doors or broke windows to escape the fire. Within minutes, the entire building was engulfed in flames, trapping many patrons inside. Approximately one hundred (100) individuals were killed while approximately two hundred (200) more were injured.

Multiple plaintiffs have filed suit against a number of entities including the instant defendants, Town of West Warwick and Deputy Fire Marshal Denis Larocque. The claims against the Town defendants specifically sound in negligence for the alleged inadequate inspection and enforcement of the State fire codes both before and on the night of the fire.

Plaintiffs further make the conclusory statement that such inadequate inspection caused the death and injury to the named plaintiffs. For the reasons outlined herein, the Town submits that the instant complaint must be dismissed as a matter of law because it fails to state a recognizable cause of action against these defendants even when read in the light most favorable to plaintiffs.

## *III. STANDARD OF REVIEW*

Defendants file the instant Motion pursuant to Rule 12(b)(6) and seek dismissal of the instant action in lieu of answer. The standard of review on a motion to dismiss in lieu of answer is well-settled. First, this Court must take all well-pleaded factual averments as true. However, it "need not credit a complaint's 'bald assertions' or legal conclusions." *Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)(citations omitted).* In judging the adequacy of a plaintiff's allegations, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation" carry no weight. *Puertorriquenos En Accion v. Herenandez, 367 F.3d 61, 68 (1st Cir. 2004); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).* Thus, Courts have noted that although "this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).* This Court's role is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir., 2004) quoting Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).*

In the instant case, the Town defendants submit that the instant Complaint should be dismissed for the following reasons:

1. There is no cause of action under Rhode Island law for the negligent enforcement of the State Fire Safety Code;

2. Defendant Larocque and the Town are nevertheless entitled to quasi-judicial immunity;
3. Defendant Larocque is also protected from the instant suit by the immunity afforded under *R.I.G.L. § 23-28.2-17*;
4. The public duty doctrine protects the Town defendants from the instant suit because the factual averments do not support a finding that the Town defendants owed plaintiffs a special duty or acted "egregiously";
5. The illegal and unforeseeable use of pyrotechnics is an intervening, superceding cause of plaintiffs' injures and thus, there is no causal connection as a matter of law between the Town defendants' actions and plaintiffs' injuries;
6. Plaintiffs have failed to name the proper parties.

## *IV. ARGUMENT*

### A. Plaintiffs' Complaint fails to state a cause of action against the Town Defendants

The Town defendants first submit that plaintiffs' Second Amended Complaint should be dismissed because there is no cause action for a governmental entity's negligent enforcement of a regulatory scheme. As noted, the crux of plaintiffs' Complaint is that the Town defendants were negligent in the inspection of the nightclub for compliance with the State Fire Safety Code. In their Complaint, plaintiffs specifically allege that the defendants were responsible for the enforcement of the Fire and Building Code and that their negligence in the performance of these statutory duties caused plaintiffs to suffer damages. *See i.e. Plaintiffs' Complaint, at ¶174.* Relying upon negligence theories, plaintiffs are attempting to create a new cause of action premised upon the statutory duty imposed by the Fire Safety Code on the Town defendants. However, under the well-settled case law of Rhode Island, as well as other jurisdictions, the

faulty enforcement of such statutory provisions does not give rise to a cause of action against the municipal defendants.

As generally stated in the Restatement Second of Torts, the mere fact that a person has been harmed by governmental action does not automatically mean that his damage was tortious. *Restatement Second, Torts, § 895B, Comment e, Conduct not tortious.* This principle arises by the "oft-quoted phrase" of U.S .Supreme Court Justice Jackson that "[o]f course, it is not a tort for government to govern." *Id. quoting Dalehite v. U.S., 346 U.S. 15, 57 (1953) (Jackson, J., dissenting).* Plaintiffs therefore must identify either common law or statutory support for the claim against the municipal defendants.

The Town defendants first submit that there was no cause of action under the common law against a municipality for its negligent enforcement of regulatory schemes. The Kentucky Supreme Court specifically addressed a claim similar to the instant case and rejected the notion that the plaintiffs could maintain an action against a city or the Commonwealth for the negligent enforcement of Kentucky's Fire Safety Codes. In *Grogan v. Commonwealth of Kentucky, 577 S.W.2d 4, 6 (Ky 1979)*, the plaintiffs, who were injured or the personal representatives of those who lost their lives in a fire at the Beverly Hills Supper Club in Southgate, Kentucky, sued *inter alia* the City of Southgate and the Commonwealth of Kentucky alleging negligence in the enforcement of the laws and regulations establishing the safety standards for the construction and use of buildings. The Kentucky Court of Appeals affirmed the dismissal of the claims against the defendants and concluded that there was no cause of action for a government's failure to enforce the laws. As held by the Kentucky Court of Appeals "government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers (including, of course, those yet unborn) to liability for failures of omission in its attempt to enforce them. It

is better to have such laws, even haphazardly enforced, than not to have them at all." Grogan v. Commonwealth of Kentucky, *577 S.W.2d 4, 6 (KY 1979)*. The Court further rejected the claim that the common law as applied to municipalities offered a comparable analogy to the functions performed by governmental entities. Id. *at 5.* The Kentucky Court's decision was based in part on the recognition that failing to prevent an injury by enforcement of regulatory laws is quite different from claims against governmental agencies for *causing* the injury. Id. *at 6.* See also Gas Service Co., Inc. v. City of London, *687 S.W.2d 144, 149 (KY 1985).*[1] Rather, as noted by Grogan, permitting such a cause of action would impose on the municipality the responsibility of bearing a loss occasioned by someone else's failure to comply with the law. Grogan, *577 S.W.2d at 5.*[2]

As explained a year later by the Kentucky Supreme Court in Commonwealth of Kentucky v. Brown, *605 S.W.2d 497, 499 (KY 1980)*:

> when the governmental entity is performing a self-imposed protective function . . . the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function. Any ruling to the contrary would tend to constitute the [governmental entity] an insurer of the quality of services its many agents perform and serve only to stifle government's attempts to provide needed services to the public which could not otherwise be effectively supplied.

In Bolden v. City of Covington, *803 S.W.2d 577 (KY 1991)*, the Kentucky Supreme Court reversed the lower court's judgment apportioning liability to the City for the injuries tenants of

---

[1] It is noteworthy that in affirming the holding of Grogan, the Kentucky Supreme Court simultaneously overturned some of the cases cited in Grogan. See Gas Service Company, Inc., *687 A.2d at 149.* Those cases have no bearing on the instant analysis.

[2] This concern has likewise been cited by the R.I. Supreme Court in Mall at Coventry Joint Venture v. McLeod, *721 A.2d 865, 870 (R.I., 1998)* when the Court refused to permit a claim against DEM for the erroneous issuance of preliminary approval to a wetland plan. After the developer had contracted to sell the land, DEM changed the wetlands designation thus killing the deal to sell the land. The Supreme Court found that the duty to accurately depict the location of

an apartment building suffered during a fire for the City's failure to enforce Fire and Safety Codes. In so ruling, the Court held that the trial court's decision was in error "because the incompetent performance of decision-making activity of this nature by a governmental agency is not the subject of tort liability." Id. *at 581.* "Tort liability does not extend to 'cases where the government takes upon itself a regulatory function.'" Id.

The Supreme Court of Vermont has likewise held that there is no common law right of action for a municipality's failure to enforce an ordinance. In *Corbin v. Buchanan, 163 A.2d 170 (Vt. 1994)*, a wrongful death action was brought against the Town of Brattleboro, Vermont after a child died in an apartment fire. The plaintiffs alleged that the apartment lacked smoke detectors in violation of the Town's ordinance and that the Town officials had violated its own ordinances which required it to inspect and enforce the ordinances. Id. *at 143.* The Vermont Supreme Court, however, held that the adoption of the BOCA Building and Fire Prevention Codes did not create a private right of action in tort against a municipality for its failure to enforce an ordinance. Id. *at 144-145 (cases cited therein).*

Likewise, in the instant case, the enactment of the Fire Safety Code does not create a cause of action for the defendants' alleged negligent enforcement of the same. In particular, the statute is completely devoid of any civil remedy for the perceived negligent enforcement of its provisions.[3] The Town defendants submit that plaintiffs' reliance upon negligence principles to support a claim against the municipal defendants is likewise misplaced. Rather, as the R.I. Supreme Court has previously held, when the General Assembly has enacted a statute in

---

the wetlands was on the developer and that the duty did not pass to DEM as the regulator upon its approval of the same. Id. *at 868.*

[3] Rather, as more fully outlined below, the Fire Safety Code offers the Fire Marshal and his deputies protection from such civil suits. See *R.I.G.L. § 23-28.2-17.*

derogation of the common law but failed to provide a civil remedy under that same statute, a injured party cannot rely upon a claim of negligence to maintain an action against the State or municipal defendant.

This issue was recently addressed in Bandoni v. State of Rhode Island, *715 A.2d 580 (R.I. 1998).* In that case, the plaintiffs had been injured by a drunk driver who was subsequently arrested and criminally charged by the defendant Town of Coventry. Id. *at 583.* The drunk driver thereafter entered a plea agreement to the criminal charges without the plaintiffs' knowledge or participation. Id. Plaintiffs brought suit against the State of Rhode Island and Town of Coventry alleging *inter alia* that the defendants were negligent in failing to comply with the Victim's Bill of Rights statute by apprising the plaintiffs of their right to participate in the plea hearing. Plaintiffs maintained that the Victim's Bill of Rights statute, *R.I.G.L. § 12-28-1 et seq.,* placed an affirmative duty on the defendants to advise the plaintiffs that they had the right to address the court during sentencing as well as to request that restitution be an element of the final disposition of the case. Id. *at 584.* The R.I. Supreme Court, however, rejected the plaintiffs' negligence claim against the State and Town for their failure to perform their statutory duties.

Although recognizing that the challenged statute imposed the affirmative duty cited by plaintiffs, the Supreme Court also recognized that the General Assembly had not created an enforcement provision permitting civil liability. Id. Because the creation of new causes of action is a legislative function, the Supreme Court refused to create an action by "judicial fiat" and refused to permit plaintiffs to proceed on a negligence claim for the alleged violation of the statute. Id. *citing* Accent Store Design, Inc. v. Marathone House, Inc., *673 A.2d 1223, 1226 (R.I. 1996).* "[I]n the absence of such a provision [within the statute, the court] must exercise [its]

judicial restraint in declining to divine the Legislature's intent." Id. *citing* in re John, *605 A.2d 486, 488 (R.I. 1992)("because the statute does not plainly provide for a private cause of action, such a right cannot be inferred");* Knutson v. County of Maricopa, *175 Ariz. 445, 857 P.2d 1299, 1300 (Ariz. Ct. App. 1993);* Bruegger v. Faribault County Sheriff's Department, *497 N.W.2d 260, 262 (Minn. 1993).*

The Bandoni Court relied primarily upon its prior holding in Accent Store Design v. Marathon House, *674 A.2d 1223, 1226 (R.I., 1996).* In that case, the plaintiff subcontractor claimed to have been injured by the State's failure to require a contractor, who had been awarded a public works contract, to file a bond with the proper authority in accordance with *R.I.G.L. § 37-13-14.* The Supreme Court, however, in rejecting the plaintiff's attempt to recover damages from the State, noted that *§ 37-13-14* did not specifically provide a cause of action in the event that its provisions were violated. Without a cause of action being established by the statute, the R.I. Supreme Court refused to create a new cause of action by judicial rule. Id. *at 1226.* The R.I. Supreme Court further noted that "the absence of a remedy that could easily have been created evinces the intent of the General Assembly not to create a tort that would subject a governmental entity to liability." Id.

Likewise, in the instant case, there is no statutory right of recovery for the negligent enforcement of the Fire Safety Code. Plaintiffs nevertheless attempt to circumvent this lack of statutory relief by basing their claim for recovery on negligence principles. However, as Grogan and its progeny make clear, an injured party has no common law right to recovery when the governmental entity fails in its enforcement obligations. Rhode Island's own case law further negates any claim that a cause of action sounding in negligence can be maintained when municipal defendants are negligent in the enforcement of a regulatory provisions. Bandoni, *715*

*A.2d at 584;* *Accent Store Design, 673 A.2d at 1226.* To permit such a claim would circumvent the General Assembly's own intent to prohibit such a claim. *R.I.G.L. § 23-28.2-17.* "[T]he absence of a remedy that could easily have been created evinces the intent of the General Assembly not to create a tort that would subject a governmental entity to liability." *Accent Store Design, 674 A.2d at 1226.* The instant Complaint thus fails to state a cause of action against the Town defendants and should accordingly be dismissed pursuant to Rule 12(b)(6).

B. Quasi Judicial Immunity

The Town defendants alternatively submit that they are entitled to absolute immunity based upon the fact that plaintiffs' Complaint seeks to recover for the exercise of quasi-judicial/prosecutorial authority. As more fully outlined below, the Deputy Fire Marshal's discretionary authority to order that violations of the Fire Code be corrected is a quasi-judicial function and thus the Deputy Fire Marshal is entitled to absolute immunity for the corresponding decisions made in the exercise of that authority.

First, there can be no dispute that officials exercising quasi-judicial or quasi-prosecutorial authority are entitled to absolute immunity for their discretionary acts. *Butz v. Economou, 438 U.S. 478 (1978).* *See also* *Psilopolous v. State, 636 A.2d 727 (R.I. 1994);* *Mall at Coventry Joint Venture, 721 A.2d at 870.* As explained by the U.S. Supreme Court "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz, 438 U.S. at 515.* This permits the authority to make decisions without fear of having to defend a retaliatory response. *Id.*

In *Psilopolous v. State, 636 A.2d 727 (R.I. 1994)*, the R.I. Supreme Court likewise held that agents of the state who performed a quasi-judicial function were entitled to immunity both

for themselves and for the sovereign entity that employed them. *Id. at 727-28 citing Butz, 438 U.S. at 515.* The R.I. Supreme Court has also noted that it "sternly opposes the bringing of separate actions against agency officials in respect to their performance of quasi-judicial or quasi-prosecutorial functions." *Mall at Coventry Joint Venture, 721 A.2d at 870.*

The Town defendants submit that the challenged actions of the deputy fire marshal in the instant case clearly fall within the quasi-judicial/prosecutorial functions entitled to absolute immunity. "[Quasi judicial] is defined as a term applied to the action and discretion of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *Suitor v. Nugent, 98 R.I. 56, 61 (R.I., 1964) quoting State v. Winne, 91 A.2d 65 (NJ ).*[4] Deputy fire marshals perform such quasi-judicial functions when called on to inspect buildings for fire code violations. *R.I. Fire Prevention Code, § 1-4.3.*

Under the Fire Safety Code, promulgated in conjunction with General Law Chapters 23-28.1 through 23-29.1, the Fire Marshal and, by designation, the deputy fire marshal is authorized to inspect buildings for compliance with the Fire Safety Code and "order any person(s) to . . . remedy . . . dangerous or hazardous condition." *R.I. Fire Prevention Code, § 1-4.4.* Individuals aggrieved by such a decision may take an appeal to the Fire Safety Code Board of Appeal &

---

[4] "Quasi-judicial" functions have also been defined as those positions that "entail[] making decisions of a judicial nature -- i.e. decisions requiring the application of governing rules to particular facts, an 'exercise of reasoned judgment which could typically produce different acceptable results.'" *Wantanabe Realty Corp. v. City of New York, 2003 U.S. Dist. LEXIS 17645, *5 (S.D.NY 2003).* Just like the defendant Commissioner in *Wantanabe*, the deputy fire marshal in the instant case had to apply the governing rules, the State Fire Code, to the Station nightclub, make a judgment as to whether the nightclub violated those provisions and then exercise his discretion as to the manner of enforcement and compliance with the statute. The defendants performance of these quasi-judicial functions is accordingly protected by absolute immunity. *Id.*

Review. Id. These functions epitomize the actions defined by the R.I. Supreme Court as "quasi-judicial functions." Suitor, *98 R.I. at 61.* See also Bolden v. City of Covington, *803 S.W.2d 577, 581 (KY 1991)(activities assigned by housing code in relation to investigation of fire and safety violations are quasi-judicial in nature);* Overhoff v. Ginsburg Development, L.L.C., *143 F.Supp. 2d 379, 386 (S.D.N.Y. 2001) (action of a building inspector in determining whether or not an applicant is entitled to issuance of a building permit or in the issuance of a stop-work order is discretionary and quasi-judicial in nature).* That is, under the Fire Safety Code, deputy fire marshals "investigate[ ] the facts" by inspecting the premises and "draw[ ] conclusions" as to whether the conditions on the premises violates the Fire Safety Code. The deputy fire marshal may then "exercise his discretion" and order compliance with the Fire Safety Code. As defined by the R.I. Supreme Court, such activities are clearly "quasi-judicial" in nature and thus entitled to absolute immunity. Suitor, *98R.I. at 61.*

In Bolden v. City of Covington, *803 S.W.2d 577, 581 (KY 1991)* the Kentucky Supreme Court reviewed a Court of Appeals ruling that found a City and its employees were protected by quasi-judicial immunity for failing to close a building or force correction of fire code violations that allegedly led to the plaintiff's injury in a subsequent fire. The plaintiffs sued the City's Housing Director for failing to enforce the fire safety code. The Court stated:

> These steps classify as regulatory and quasi-judicial in nature. Legal liability flowing from the existence of these fire and safety violations rests on the owner or other person in possession and control of the building. The duties assigned by the ordinances to the Director and city inspectors are to find or confirm violations, and to decide what needs to be done, whether repairs or placarding the building. The judicial nature of these decisions is underscored by the fact that there are avenues of appeal from the decision of the Director to a reviewing authority and to the courts. There is no more legal liability in this

> situation for the City than there would be where a judge fails to make a decision or makes a wrong one. *Id. at 581.*[5]

This use of quasi-judicial immunity is entirely consistent with the Rhode Island Supreme Court's decisions in both *Psilopolous, 636 A.2d at 727 and Mall at Coventry Joint Venture, 721 A.2d at 870.* As such, the deputy fire marshal and by extension, the Town are absolutely immune from suit and the instant Complaint should be dismissed as against these Town defendants.

C. R.I.G.L. § 23-28.2-17 grants the Deputy Fire Inspector Immunity from the instant suit

Defendant Larocque alternatively submits that as a deputy fire marshal empowered to inspect and enforce the Fire Safety Code he is entitled to statutory immunity pursuant to *R.I.G.L. § 23-28.2-17.* Even when the factual averments contained in plaintiffs' Second Amended Complaint are read in the light most favorable to plaintiffs, they do not overcome the immunity afforded the inspector under *§ 23-28.2-17.* Consequently, the instant Complaint against this defendant should be dismissed.

Chapter 28.2 of Title 23, the General Provisions of the Fire Safety Code creates the State Division of Fire Safety and the office of State Fire Marshal. Under this statute, the State Fire Marshal is charged with enforcing the state fire code through inspections and investigations into fires. Section 23-28.2-4 specifically states that "[i]t shall . . . be the duty of the state fire marshal to enforce all laws of this state in regard to . . . conducting and supervising fire safety

[5] Although the Kentucky Supreme Court concluded that the city inspectors performed "quasi-judicial functions', it reached its decision in favor of the City not on immunity grounds but on the holding that "the incompetent performance of decision-making activity of this nature by a governmental agency is not the subject of tort liability." *Id. at 581.*

inspections of all buildings regulated by the code within the state." Pursuant to the statute, the State Fire Marshal may appoint "as many nonsalaried assistant deputy fire marshals as he or she may deem necessary to carry out the purposes of Chapters 28.1- 28.39" of Title 23. Denis Larocque is such a nonsalaried deputy fire marshal who, according to plaintiffs' Complaint, inspected the Station nightclub for compliance with the State Fire Code.

As a deputy fire marshal, Defendant Larocque is entitled to the protections of *§ 23-28.2-17.* That section, in pertinent part, states that:

> The state fire marshal, his or her deputies, and assistants, charged with the enforcement of the Fire Safety code, chapters 28.1 through 28.39 of this title, shall not render themselves liable personally, and they are hereby relieved from all personal liability for any damage that may accrue to persons or property as a result of any act required or permitted in the discharge of their official duties.

According to plaintiffs' Second Amended Complaint, defendant Larocque was negligent in his inspection of the Station nightclub by his failure to identify certain fire code violations. Such an allegation clearly falls within the protection afforded deputy fire marshals under *§ 23-28.2-17.* As such, the claims against defendant Larocque should be dismissed.

D. The Public Duty Doctrine Protects the Town Defendants from the Instant Suit

The Town defendants further submit that the plaintiffs' Second Amende Complaint should be dismissed because the public duty doctrine protects the Town Defendants from the instant suit. In particular, the actions alleged in plaintiffs' Complaint clearly fall within discretionary activities that the public duty doctrine was designed to protect. Moreover, the factual averments in the Complaint, even when accepted as true and read in the light most favorable to the plaintiffs, fail to support a finding that the defendants' actions in this case fall

within any of the exceptions to the public duty doctrine.[6] Consequently, defendants submit that the instant Complaint should be dismissed.

The public duty doctrine evolved out of the General Assembly's enactment of the Tort Claims Act, *R.I.G.L. § 9-31-1, et seq.,* which abrogated, to an extent, the immunity of the state and its political subdivisions. *Verity v. Danti, 585 A.2d 65, 66 (R.I. 1991).* As noted by the Supreme Court, *§ 9-31-1 et seq.* does not create a cause of action against governmental bodies, *Catone v. Medberry, 555 A.2d 328, 330 (R.I. 1989),* and was not intended "to operate so as to impose liability upon the state for any and all acts or omissions of its employees and officers which might cause injury to persons," *Calhoun v. City of Providence, 390 A.2d 350, 353 (R.I. 1978).* Rather, the R.I. Supreme Court recognized through the adoption of the public duty doctrine that certain governmental activities engaged in by employees and officers "must be free from the threat of potential litigation." *Barratt v. Burlingham, 412 A.2d 1219, 1220 (R.I. 1985).* The doctrine thus embodies the recognition that "the public treasury should not be exposed to claims involving acts done for the public good as a whole, given that 'the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person.'" *Haworth v. Lannon, 813 A.2d 62, 66 (R.I. 2003). Barratt, 412 A.2d at 1220.* "The rationale behind the public duty doctrine 'is to encourage the effective administration of governmental operations by removing the threat of potential litigation.'" *Haley, 611 A.2d at 849.*

---

[6] Although the R.I. Supreme Court has noted that it is "virtually impossible" to succeed on a Motion to Dismiss based on the public duty doctrine, *Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992),* there are occasions when dismissal is appropriate. *See i.e. Ryan v. State Department of Transportation, 420 A.2d 841, 842-43 (R.I. 1980) (complaint appropriately dismissed when plaintiffs failed to "allege facts that would give rise to a special duty owed to them"); Orzechowski v. State, 485 A.2d 545 (R.I. 1984) (Supreme Court affirmed the dismissal of Complaint for failure to state a claim upon which relief could be granted).*

There are, however, three (3) exceptions to the immunity afforded under the public duty doctrine whereby the governmental entity is liable for injuries to individuals: "(1) when the governmental entity owes a 'special duty' to the plaintiff, (2) when the alleged act or omission on the part of the governmental entity was egregious, or (3) when the governmental entity engaged in activities normally undertaken by private individuals or corporations." Schultz v. Foster-Glocester Regional School Dist., *755 A.2d 153, 155 (R.I. 2000) (citations omitted).* The Town defendants submit that even when the factual averments in plaintiffs' Second Amended Complaint are taken as true, the actions of the Town defendants fail to rise to the level of any of these exceptions to the public duty doctrine. In particular, it is first apparent that the actions challenged by the plaintiffs are not activities normally undertaken by private individuals. That is, the plaintiffs challenge the defendants enforcement of the Fire Code, an activity that clearly can not be performed by a private individual.

In addition, the factual averments in plaintiffs' Second Amended Complaint fail to support a finding that the Town defendants owed plaintiffs a "special duty." The special duty exception is applicable when there is a special relationship, separate from the duty running to the general public, between the injured party and the governmental entity. As recently reiterated by the Supreme Court, this standard requires the finding that: "(1) one or more city officials had some form of prior contact with or other knowledge about [the injured] or [his] situation before the alleged negligent act * * * occurred, (2) city officials thereafter took some action directed toward [the injured] or [his] interests or failed to act in some way that was potentially injurious to [the injured's] person or property, and (3) [the] injury * * * was a reasonably foreseeable consequence of the city's action or inaction." *Schultz, 755 A.2d at 155-56. See also Kuzniar v. Keach, 709 A.2d 1050, 1054 (1998) and Quality Court Condo. Assoc. v. Quality Hill Dev. Corp.,*

*641 A.2d 746, 750 (R.I. 1994).* In order to meet this standard, the plaintiffs must demonstrate that the town had "specific knowledge of a particular plaintiff." *Haworth, 813 A.2d at 65.* This requires the plaintiffs to demonstrate that the plaintiffs had specific contact with the Town defendants such that the Town defendants "should have foreseen injury to them *in particular*." *Id. (emphasis added).*

For example, in *Haworth* plaintiff homeowners purchased homes that had been inspected and issued certificates of occupancies by the Town building officials. Shortly after moving into the homes, the plaintiffs experienced flooding and subsequently discovered that the homes had been built below the water table. *Id. at 64.* The plaintiffs brought suit against the Town alleging that it was negligent by failing to properly inspect the homes and in failing to insure that the homes were not subject to flooding. The R.I. Supreme Court, however, affirmed summary judgment in favor of the Town and held that building officials did not owe a special duty to the homeowners because the plaintiffs were not particularly known to the Town at the time of the alleged negligent acts. *Id. at 66. Compare Quality Court, 641 A.2d at 750 (special duty found where the building inspector had specific knowledge of the building occupants and the inspector had confirmed earlier issuances of certificates of occupancy even though he had noticed defects and discussed defects with plaintiffs).*

It is also noteworthy that this contact must be beyond mere personal intervention and contact with the plaintiff or the public official's observations of a citizen's conduct that might foreseeably result in harm. *Barratt, 492 A.2d at 1221.* For example, in *Barratt*, the R.I. Supreme Court found that there was no special duty owed to a plaintiff injured in an automobile accident after a police officer failed to detain the intoxicated plaintiff and his intoxicated friend, the driver of the vehicle. In *Barratt*, the plaintiff and his friends were leaving a restaurant and

bar in North Kingstown after a night of drinking. Id. The defendant officer was working a detail at the bar that evening and encountered the drunken youths as they attempted to leave the parking lot. The officer directed plaintiff and his friends to park the car until they sobered up. Id. The plaintiff approached the officer and explained that he was "straighter" than his friends and could drive them home. The officer eventually allowed the friends to leave with plaintiff as their driver. After leaving the restaurant, the plaintiff and his friends stopped for cigarettes where they switched drivers. The plaintiff, now a passenger, was subsequently injured when his intoxicated friend drove into a utility pole and tree. The R.I. Supreme Court rejected plaintiff's claim that the officer's contact with him at the restaurant created a special relationship such to overcome immunity under the public duty doctrine. Id. Rather, according to the Supreme Court, allowing such contact to amount to a "special relationship" would interfere with the discretionary performance of the officer's duty and would be contrary to the public interest. Id.

In the instant case, even the most liberal reading of plaintiffs' Complaint fails to support a finding the individual plaintiffs meet the special duty standard because they were particularly known to the Town defendants at the time of the alleged negligent acts. In the instant case, the plaintiffs clearly had no prior contact with the Town defendants such to bring them within the realm of those owed a special duty at the time of the alleged negligent acts. Rather, the plaintiffs were simply members of an unlimited group of the general public who may become patrons of the Station nightclub. This is clearly insufficient to amount to a special duty to the plaintiffs and thus the claims against all the Town defendants should be dismissed. Haworth, *813 A.2d at 66; Barratt, 492 A.2d at 1221.*

The Town defendants further submit that the factual averments in plaintiffs' Complaint fail to support a finding that Town defendants acted "egregiously" such to abrogate the

protections afforded by the public duty doctrine. It is first noteworthy that although plaintiffs allege in their Complaint that defendants' actions were "egregious," under a Rule 12(b)(6) Motion to dismiss, this Court does not need to "credit a complaint's 'bald assertions' or legal conclusions." *Shaw, 82 F.3d at 1216.* Moreover, in attempting to overcome the immunity afforded to a governmental agency under the public duty doctrine, it is not enough for a party to simply claim that the actions of the entity were "egregious." Rather, the R.I. Supreme Court has outlined specific standards that must be met. In the instant case, even when the factual averments in plaintiffs' Complaint are taken as true, the Complaint fails to support the conclusion that the Town defendants acted egregiously such to overcome the public duty doctrine.

Under the public duty doctrine, a governmental entity engages in "egregious conduct" when it "has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation." *Houle v. Galloway School Lines, Inc., 643 A.2d 822, 826 (R.I.1994) quoting Verity v. Danti, 585 A.2d 65, 67 (R.I.1991).* Thus, for the egregious conduct exception to apply, the following elements must be established:

> (1) [T]he state, in undertaking a discretionary action or in maintaining or failing to maintain the product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril;
>
> (2) the state, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and
>
> (3) the state, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so.

*Kashmanian v. Rongione, 712 A.2d 865, 868 (R.I. 1998) quoting Haley, 611 A.2d at 849.*

The egregious conduct exception emanates from the R.I. Supreme Court's decision in Verity v. Dante, *585 A.2d 65 (R.I. 1989).* In Verity, a plaintiff child was injured when she stepped from the sidewalk along Rte. 44 in order to get around a large tree that blocked her path along the sidewalk. The State in that case admitted that the tree had been there for over 100 years and that there had been no efforts to "move the tree, remove it or reduce its girth" despite knowledge that it completely blocked the sidewalk and forced pedestrians onto the highway. *Id.* In finding that the public duty doctrine should not protect governmental officials in such circumstances, the Supreme Court noted that permitting governmental officials such protection "would effectively excuse governmental employees from remedying perilous situations *that they themselves have created.*" *Id. at 67 (emphasis added).* Thus, in Verity the Court held that the state's conduct was "egregious" because they had created the dangerous condition presumptively by building the sidewalk around the tree and failing to remedy the situation by allowing the tree to remain blocking the sidewalk.

In *Bierman v. Shookster, 590 A.2d 402 (R.I. 1991)*, the Supreme Court again found sufficient evidence to support a finding of egregious conduct on the part of the State for its failure to maintain a traffic light. In that case, one of the traffic control devices at the intersection of Dyer and Friendship Street was broken. The plaintiff was injured when another vehicle, whose view of the other traffic light was obstructed by a parked truck, entered the intersection against the light. The Supreme Court concluded that the decision to place the traffic light at the intersection caused the public to rely on the signals. The State's failure to maintain the same amounted to "egregious" conduct because it created a circumstance (installation of faulty traffic devices) that placed a person into peril and then failed to correct the dangerous situation. *Id. at 404.*

In one of the most recent cases on egregious conduct, the R.I. Supreme Court again reiterated the requirement that the governmental entity must *create* the dangerous condition with *knowledge* that it was placing an individual into a position of peril. In *Martinelli v. Hopkins, 787 A.2d 1158 (R.I. 2001)*, the plaintiff was a spectator at an outdoor music festival who was injured when a rotted tree presumptively fell on him. The plaintiff sued the Town claiming that the Town was negligent in the issuance of an entertainment license. In affirming the trial justice's finding that the Town acted egregiously in granting the license, the Supreme Court first relied upon the fact that the Town had failed to inspect the premises that they permitted "an indefinite sized crowd" from accessing. *Id. at 1168.* The Court also noted that the Festival, which was held on a yearly basis for the past thirteen (13) years, had grown steadily in attendance over the years. The Town had known at the time the license was issued from its past experience that the co-defendant had dispensed free beer to the crowd who typically became unruly and disorganized posing certain risks to the neighborhood. *Id.* In fact, the Chief of Burrillville police informed the Town Council in 1990 that each year the festival's associated problems had escalated and that he was tired of "babysitting a beer party." *Id.* The Supreme Court upheld the Superior Court's finding that despite abundant knowledge of the dangerous conditions of this festival based on their past experiences, the Town failed to take appropriate steps during the licensing process to protect against these dangers by, fore example, inspecting the premises. According to the Supreme Court, such a failure, despite long-term knowledge, "created" the dangerous condition that led to plaintiff's injuries.

In the instant case, plaintiffs base their claim of egregious conduct on the mere fact that the Deputy Fire Marshal allegedly failed to identify certain fire code violations during the inspection process. Unlike the plaintiff in *Martinelli*, plaintiffs in the instant case do not allege a

history of events that would impose knowledge on the Town as to the "creation" of a dangerous condition at the Station nightclub. Thus, even accepting the factual allegations of the Second Amended Complaint that the deputy fire marshal failed to notice the Fire Safety Code violations, under the well-settled egregious conduct standard, the such a faulty inspection as a matter of law did not "create" the dangerous condition and thus does not amount to egregious conduct such to overcome the public duty defense. More precisely, clearly these facts do not support the conclusion that the Town defendants "created" the dangerous condition or that they had knowledge of the perilous circumstances under the standard outlined in *Verity* and its progeny.[7] Therefore, as a matter of law, even when the factual averments are accepted as true, plaintiffs' Second Amended Complaint fails to support a finding that the Town defendants' actions were egregious such to overcome the public duty doctrine protections. The Town defendants' Motion to Dismiss should accordingly be granted.

E. Plaintiffs' Injuries Were Caused by Illegal and Negligent Acts of Others for Which the Town Defendants Are Not Responsible.

The factual allegations contained in Plaintiffs' Complaint fail to support a finding that the alleged negligence of the town defendants was the proximate cause of Plaintiffs' injuries. More precisely the intervening criminal acts that occurred after the Town defendants' alleged negligence severed any already tentative causal link to plaintiffs' injuries and superceded any alleged negligence by the Town defendants. Therefore, Plaintiffs' claim against the Town defendants must fail as a matter of law.

[7] This becomes even more apparent in recognition of plaintiffs' claim that the fire was started by the illegal use of pyrotechnics. *See Infra at section "E. Plaintiffs' Injuries Were Caused by Illegal and Negligent Acts of Others for Which the Town Defendants are Not Responsible."*

The law pertaining to proximate cause in Rhode Island is well-settled and is contained in the memoranda filed by co-defendants Foamex International, Inc. and State of Rhode Island supporting their respective Rule 12(b)(6) motions to dismiss. To reiterate, Rhode Island law states that

> "a defendant's original act of negligence will be considered as a remote and not a proximate cause of a plaintiff's injury when there is an intervening act on the part of a responsible third party unless it can be made to appear that the defendant reasonably should have anticipated that such an intervening act would be a natural and probable consequence of his own act."

*The Travelers Insurance Co. v. Priority Business Forms, Inc., 11 F.Supp.2d 194, 199 (D.R.I. 1998) (citing Nolan v. Bacon, 216 A.2d 126, 129 (R.I. 1966).*

Although proximate cause is normally a question of fact, "the Rhode Island Supreme Court has not hesitated, in certain circumstances, to declare the absence of proximate cause as a matter of law." *Travelers, 11 F.Supp.2d at 199 (citing Splendorio v. Bilray Demolition Co., 682 A.2d 461, 467 (R.I. 1996); Walsh v. Israel Couture Post, No. 2274 V.F.W. of the United States, 542 A.2d 1094, 1097 (R.I. 1988); Clements v. Tashjoin, 168 A.2d 472, 475 (R.I. 1961); Kemplin v. H.W. Golden & Son, Inc., 157 A. 872, 873 (R.I. 1931).*

For example, in *Travelers*, defendant tenant had discontinued the use of a burglar alarm system protecting its rental unit without notifying the landlord. Unknown persons broke into the unit and set it on fire. The rental unit was severely damaged by the fire and by chemicals stored in the unit. Landlord's insurance company, Travelers, filed suit against the tenant alleging, among other things negligence. Travelers contended that the police would have arrived on the scene quicker if the alarm had been operational. Further, Travelers argued that the improper storage of certain chemicals by tenant aided in the destruction of the unit. The bottom line,

according to Travelers: tenant should have notified the landlord that it was disconnecting the burglar alarm system and that it was storing chemicals in the unit.

With respect to Traveler's negligence claim, the court ruled that the tenant's actions were not the proximate cause of the destruction of the unit. *Id. at 199.* The destruction of the unit was caused by an illegal act – arson – which tenant was not bound to anticipate, and not the natural and probable consequence of the allegedly negligent behavior by tenant. "The commission of arson by a third party is not the natural and probable result of discontinuing a burglar alarm system and failing to notify the landlord thereof." *Id.* Also, the flammable chemicals stored in the unit, constituted a condition, not the proximate cause of the destruction. "No danger existed in the unsecured storage of these materials alone; absent the illegal intervening act of arson, the Premises would not have been destroyed." *Id.*

Similarly in *Clements*, a visitor to Butler Hospital left his key in the ignition of his unattended motor vehicle. A patient stole the motor vehicle and collided with the plaintiff's motor vehicle injuring her. The issue before the court was whether the defendant car owner, "in leaving his automobile in the place and in the manner he did, was a concurring proximate cause of the plaintiff's injury notwithstanding that the thief's negligence was the direct cause thereof. Or, stated otherwise, did the negligence of the thief intervening between the defendant's negligence and plaintiff's injury break the chain of causation and render such negligence the remote cause and the thief's negligence the sole proximate cause." *Clements, 168 A.2d. at 475.* The Court held that the defendant car owner's negligence, if any, was not the direct and proximate cause of plaintiff's injury, "but merely a condition or circumstance which did not operate to cause any injury to the plaintiff except for the intervening independent negligence of

the thief." Id. The defendant car owner was not bound to foresee this negligence as a natural and probable consequence of his actions. Id.

The court also cited with approval 65 C.J.S. Negligence 111 d., which states:

> "Liability cannot be predicated on a prior and remote cause which merely furnishes the condition or occasion for an injury resulting from an intervening unrelated and efficient cause, even though the injury would not have resulted but for such condition or occasion * * * If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause * * * ."

The court also noted that "if there is no evidence connecting the alleged negligence with the injury, or if it is obvious that the act or omission was not the natural and proximate cause thereof, the question is for the court." Id. *quoting* Smith v. Public Service Corp., *78 N.J.L. 478, 481, 75 A. 937, 938.*

In Splendorio, an asbestos inspector incorrectly certified that a building slated to be demolished was asbestos free. The demolition company took down the building. However, instead of deposing of the debris at a licensed solid waste facility, the demolition company deposited it at its wrecking yard. When it was discovered the building had in fact contained asbestos, the wrecking yard neighbors sued, among others, the asbestos inspection company. The Supreme Court granted summary judgment to the inspection company holding that it was the wrecking company's "unforeseeable and illegal act of depositing the demolition materials at its company wrecking yard that proximately caused the [plaintiffs] alleged harm and damages, thereby cutting off [the inspection company's] liability." Splendorio, *682 A.2d at 466.*

In the instant case, the fire was started by the illegal and unanticipated use of pyrotechnics. Section 23-28.11-3 of R.I. General Laws require a permit to possess and display pyrotechnics. No permit was applied for or obtained to use pyrotechnics. Similarly, R.I.G.L. §

23-28.11-4 requires a valid certificate of competency from the state fire marshal to possess or display pyrotechnics. Once again, a certificate of competency was not applied for or issued by the state fire marshal. "One is bound to anticipate and provide against what usually happens or is likely to happen, but one is not bound to provide against what is unusual and unlikely to happen or events which are only remote or slightly probable. The question is not whether the defendant should have foreseen that damage by fire was a possible consequence. The defendant was only bound to foresee that which is probable; that is, what, according to the usual experience of mankind, is likely to happen." *New England Tree Expert Co. v. United Electric Rys. Co., 169 A. 325 (R.I. 1933).* Absent knowledge to the contrary, the town defendants ordinarily have the right to assume that others – in this case, the Defendants Derderians, Biechle and the members and management of Great White – will exercise reasonable care in the circumstances. *Id.* Reasonable care in these circumstances would require these defendants to obey the law and obtain the necessary permits before using pyrotechnics.

The town defendants cannot be bound by the unforeseeable illegal act of using pyrotechnics without a permit and without a certificate of competency from the state fire marshal. Therefore, even assuming the truth of the allegations of the Complaint, the illegal and unanticipated use of the pyrotechnics was an intervening, superceding cause breaking any alleged causal chain to the Town defendants.

F. Plaintiffs Have Failed To Name The Proper Parties

The Town defendants finally submit that plaintiffs have failed to name the proper parties to the instant suit. First, although plaintiffs name Denis Larocque in the caption of their Second Amended Complaint individually and in his official capacity, they do not identify him as a named defendant and further fail to seek to maintain a count against him. Rather, plaintiffs

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Pl
Providence, RI 02903
(401) 421-3060
(401) 272-6803 fax
*for McLaughlin and Moran, Inc.*

Curtis R. Diedrich, Esq.
SLOANE & WALSH, LLP
127 Dorrance St – 4th Flr
Providence, RI 02903-2828
(401) 454-7700
(617) 227-0927 fax
*for Luna Tech, Inc. and Luna Tech Pyrotechnik, GmbH*

Thomas C. Angelone, Esq.
HODOSH SPINELLA & ANGELONE, PC
1 Turks Head Pl – Ste 1050
Providence, RI 02903
(401) 272-0200
(401) 274-7538 fax
*for American Foam Corporation*

William P. Robinson, III, Esq.
Stephen M. Prignan, Esq.
Stephen J. MacGillivrary, Esq.
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 fax
*for Clear Channel Communications, Inc. d/b/a WHJY-FM*

James R. Lee, Esq.
Chief, Civil Division
Department of Attorney General
STATE OF RHODE ISLAND
150 South Main St
Providence, RI 02903
(401) 274-4440
(401) 222-2995 fax
*for State of Rhode Island and Irving J. Owens*

James T. Murphy, Esq.
Kelly N. Michels, Esq.
HANSON CURRAN, LLP
146 Westminster St
Providence, RI 02903
(401) 421-2154
(401) 521-7040 fax
*for Triton Realty Limited Partnership and Triton Realty, Inc.*

James H. Reilly, Esq
Donald J. Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster St – Ste 500
Providence, RI 02903
(401) 272-1312
(401) 331-9397 fax
*Representing: Daniel Biechele*


Laura Souza