UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TAMMY PASSA, et al. | : | |
| | : | |
| vs. | : | C.A. No. 03-148 L |
| | : | |
| JEFFREY DERDERIAN, et al. | : | |

**REPLY MEMORANDUM TO MOTION TO DISMISS BY STATE OF RHODE ISLAND AND IRVING J. OWENS**

## INTRODUCTION

The objections to the State's[1] Motion to Dismiss make it clear that the Sate is being sued for an alleged failure to govern and no plaintiff has asserted that any amount of discovery will change that fact. Rather, plaintiffs allege that it is a tort to govern in what they describe as a negligent manner and that governance subjects a sovereign to liability to an unlimited number of unknown third parties for another third party's acts or omissions because the sovereign, at most, failed to order that third party to comply with certain laws. It is undisputed that those laws do not create private rights of action or establish a duty to any plaintiff herein.

The Rhode Island Supreme Court's rulings in inspection cases, which are controlling in this diversity action, show that the State should be dismissed at this stage because liability related to governmental inspections even under the extreme circumstances providing narrow exceptions to immunity, does not extend to unknown third parties. General comments that Summary Judgment is more appropriate than a

[1] As read herein, "State", shall mean both the State of Rhode Island and Irving J. Owens unless specified otherwise.

216

Motion to Dismiss are not persuasive when a case as plead falls within the facts of published case law. Obviously, the law of public duty has been an evolution. What may have required a Rule 56 Motion in the past becomes a Rule 12 Motion after the Court rules on established facts in the prior cases. As shown *infra*, the facts alleged in these cases, which must be accepted as true, fall within the established Supreme Court rulings of enumerated inspection cases.

## ELEVENTH AMENDMENT

Plaintiffs acknowledge that the only basis for State liability in this Court is a waiver of Eleventh Amendment immunity. They assert that waiver is in the Tort Claims Act, however, the Rhode Island Supreme Court has ruled that the public duty doctrine is an exception to that Act.[2] Therefore, to the extent the State is protected by any immunity defense, it has not waived its protection under the Eleventh Amendment. Should this Court see any issue related to a State immunity defense, the State respectfully suggests that this question be certified to the Rhode Island Supreme Court as there can be no more compelling State's right issue than the extent of the sovereign's immunity in a federal Court.

## PUBLIC DUTY DOCTRINE

Several legal doctrines demonstrate that the State has no duty in Tort to the plaintiffs in this case. First, the Public Duty Doctrine, which supports a claim of Eleventh Amendment Immunity, compels granting this motion as a matter of law.

[2] See Catone v. Medberry, 555 A.2d 328, 330 (RI 1989). "Under the Tort Claims Act, money damages are generally limited to $100,000. Sections 9-31-2 and 9-31-3. We note, however, that this waiver of immunity by itself does not establish a cause of action in tort against governmental entities."

It is clear from all objections to the State's Motions to Dismiss that plaintiffs cannot assert that they were "specifically identifiable plaintiffs."[3] They try, however, to except themselves from the public duty doctrine with conclusory assertions of egregious conduct that do not even allege the elements of that exception as stated by the Rhode Island Supreme Court, which are:

> (1) [T]he state, in undertaking a discretionary action or in maintaining or failing to maintain the product of a discretionary action, *created circumstances that forced a reasonably prudent person into a position of extreme peril*;
>
> (2) the state, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and
>
> (3) the state, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so.

Kashmanian v. Rongione, 712 A.2d 865, 868 (R.I. 1998) quoting Haley, 611 A.2d at 849. Emphasis added.[4]

Plaintiffs have correctly alleged that the fire was started by the illegal use of pyrotechnics, which the State could not have licensed,[5] and burned because of the illegal use of foam for soundproofing by the Dederians. Plaintiffs do not allege that the State

---

[3] Plaintiffs in Henault and Passa make some attempt to be labeled specifically identifiable based on Gagnon v. State, 570 A.2d 656 (R.I. 1990). Gagnon, however, was distinguished by both Howarth at 65 and Torres at 1240-41, supra, because Gagnon was a negligent supervision case that involved a specifically identifiable group of only four (4) children "not a statutory obligation owed by the state to the public-at-large." Id. The Torres Court explained the difference succinctly at page 1240 when it said: "Clearly, Torres himself never came within the specific knowledge of the building inspector. There cannot be any special duty owed to Torres predicated on the special duty exception when the municipal official had neither contact nor specific knowledge of the injured individual. See Boland, 670 A.2d at 1248." And at page 1241: "We note that the action in *Gagnon* would not have survived if it had been brought on a claim that the state was negligent in licensing the daycare facility. Id. We conceded that even if the state were negligent in licensing the facility, "such an allegation without more cannot be the source of a special duty owed by the state to plaintiffs." Id. Because we consistently have held that allegations of negligent licensing do not establish that the state or a political subdivision thereof owes a special duty to a plaintiff or foreseeable group of plaintiffs, see Gagnon, 570 A.2d at 659; Ryan v. State Department of Transportation, 420 A.2d 841, 843 (R.I.1980), we hold that § 5-65-3(c) does not establish a special duty to Torres."

[4] Mr. Owens', who did not inspect The Station, is entitled to a review of his conduct and, at best, the allegations related to him are that he "negligently" – not egregiously – failed to train and supervise. See Gray memo at 8.

[5] R.I. Gen. Laws 23-28.11-3(a).

created this fire or the violations within The Station, rather they assert a failure of government to force independent third parties to comply with the law.

The inspection cases cited by the State in its moving Memoranda show that in cases factually similar to this one the Rhode Island Supreme Court has rejected an egregious exception to the public duty doctrine as a matter of law. Plaintiffs, however, attempt to avoid this precedent by relying on three cases, none of which is remotely similar to the allegations of the complaints.

First, Verity v. Danti, 585 A.2d 65 (R.I. 1991) was a case in which the State allowed a tree to block a State owned sidewalk and force a young girl to step in to a State owned street. The State, of course, is liable for its acts on its own property. O'Brien v. State, 555 A.2d 334 (R.I. 1989). Similarly in Bierman v. Shookster, 590 A.2d 402 (R.I. 1991) liability was based on State conduct on State property that did not involve any third party. It was undisputed that the State had a duty to maintain a State installed traffic light on a State road. Under no theory could any third party have "created" the situations the Court found egregious in these cases.

Finally, Martinelli v. Hopkins, 787 A.2d 1158 (R.I. 2001) is also distinguishable. Therein, the R.I. Supreme Court reiterated that the governmental entity must *create* the dangerous condition with *knowledge* that it was placing an individual into a position of peril. The unique facts in Martinelli had not risen before and have not risen since and certainly are not present in any complaint before this Court. Knowing that there were absolutely no provisions for self regulation, the Town permitted the "Pa Toad fest" as a virtual free for all, inadequately staffed it with police and let it run a full hour after they knew it was out of control, during which period the plaintiff was injured.

Martinelli was an "extraordinary event" that a full two years prior to the plaintiff's injury the Town had tried to stop because officials knew then it was a "dangerous activity" that would attract an "indefinite sized crowd" of "unruly" individuals. Id. at 1168. When licensing this extraordinary event the Town did not make the "slightest inquiry" into the size of the crowd or the amount of alcohol to be served. Id. Unlike the case *sub judice*, there were no codes that Pa Toad had to comply with related to the size of attendance, the serving of alcohol, structural requirements or the ingress or egress of what can only be described as a Town sanctioned drunkfest.[6] Based on the "totality" of these (and additional) facts the Superior Court found a question of egregiousness. The Supreme upheld the trial Court's ruling because, it said, reasonable minds could differ even over these extraordinary circumstances. Id., at 1165.

Unlike the unregulated Pa Toad fest held with the Town's permission and supervised directly and on site by the Town, The Station nightclub was regulated by building codes, fire codes and liquor laws, it existed independently of any fire inspection and it was under a mandatory duty to comply with all the laws within these defendants' jurisdiction and which the plaintiffs allege would have prevented their damages. The State did not create The Station nightclub and it did not provide on scene enforcement of criminal laws at the routine show that was scheduled the night of the fire. Plaintiffs cannot allege any extraordinary or unregulated event created by a State license. Thus, even accepting the factual allegations of the complaints, under the well-settled egregious conduct standard, a faulty inspection as a matter of law did not "create" a dangerous condition such to overcome the public duty defense. Therefore, as a matter of law, even

[6] Pa Toad was allowed to serve an unlimited number of patrons an unlimited number of five gallon containers of beer. Id., at 1163.

when the *factual averments*[7] are accepted as true, the complaints fail to support a finding that these defendants' actions were egregious such to overcome the public duty doctrine protections.

Plaintiff's reliance on Quality Court Condominiums[8] and Boland v. Town of Tiverton[9] is misplaced because these cases relied on the doctrine of specifically identifiable plaintiffs, which is clearly not applicable here. In fact, the Quality Court Condominiums Court stated:

> We emphasize that a building inspector's visiting a site to ensure compliance with a building code would not be sufficient to establish a special duty. A municipality should not be the general insurer of every construction project within its limits. *See generally* *Lakeside*, 135 Ill.App.3d at 974, 90 Ill.Dec. at 687, 482 N.E.2d at 666. If it were, the resulting exposure to liability would be insurmountable and would dissuade municipalities from enacting or enforcing building codes. As a general rule building codes or ordinances impose an obligation on behalf of the municipality to the public at large. Id. at 750.

In both cases the governmental agent *dealt directly with the property owners*, hence, the owners were specifically identifiable *and the Court found a duty only to the known property owners*. It is important to note that even in these cases where the Supreme Court found a narrow exception to State policy barring liability for negligent inspections, it did not extend a duty or find the State liable to third parties. Rather, it found a duty only to the specific individual(s) whom the inspectors could identify by name and for whom they were reviewing the construction.

---

[7] This Court need give no weight to "bald assertions" or unsubstantiated conclusions." Rodi v. Southern New England School of Law (1st Cir. 11/10/04) #03-2502 at 1.

[8] 641 A.2d 746 (R.I. 1994).

[9] 670 A.2d 1245 (R.I. 1996).

The Supreme Court's decisions only five weeks before this fire in Haworth v. Lannon 813 A.2d 62 (R.I. 2003) is on point and reaffirms that is there no duty to unknown third parties such as the plaintiffs in this case. In Haworth even though a specifically identifiable builder had obtained certificates of occupancy from the Town prior to the inspections, and even though the Town knew the homes would soon be sold to individuals, the Supreme Court found that the ultimate owners of these homes could not pierce the Town's sovereign immunity *under any exception to the public duty doctrine* and held that the Town could not be liable for negligent inspections as a matter of law to the homeowners. The Court held that acts done for the public good as a whole (including these limited and specific home inspections) cannot reasonably be compared with functions that may be done by a private person. Id. Thus, it is clear that when performing acts of governance such as those alleged in the complaints on file herein, the State and its employees are performing a public duty and are immune from suit even where it is alleged that they performed that duty negligently. See also Torres v. Damicis, 853 A.2d 1233 (R.I. 2004).[10]

**COMMON LAW DUTY**

Separate and distinct from the public duty doctrine as an immunity, as a matter of law there is no tort liability to a third party plaintiff for a government's alleged failures to insure that other third parties obey the law. Realizing that there is no liability based on a statute, plaintiffs assert without citation that their claims are based on breach of a common law duty (Gray Memorandum @ 28, for example). It is beyond argument, however, that no such duty ever existed, or could have existed at common law. See

---

[10] Torres is especially instructive in that the Town had ignored a mandatory requirement of a statute but was still held immune from damages under the Public Duty Doctrine because the Court "detect(ed) nothing" in the statute that waived sovereign immunity for its breach. Id. at 1238.

Andrade v. State, 448 A.2d 1293 (RI 1982)(Tort Claims Act is waiver of common law immunity). There is neither a citation nor an argument that supports plaintiffs' claims that at common law the State had any obligation – let alone a legal "duty" – to inspect a third party's premises and any such allegation is simply a request that this Court create a new Tort, which is an improper role for the Judiciary. See Accent Store Design v. Marathon House, 674 A.2d 1223, 1225-1226 (R.I. 1996).[11]

There can be no better authority that the State is not liable under the common law to third party plaintiffs than the inspection cases cited by plaintiffs and these defendants. Haworth v. Lannon, Torres v. Damicis, Quality Court Condo. Assoc. v. Quality Hill Dev. Corp. and Town of Tiverton hold beyond argument that if, *and only if*, plaintiffs establish an exception to the public duty doctrine can they maintain a tort action against a sovereign. If plaintiffs do not establish that they fall within such an exception, common law immunity protects the State and the Tort Claims Act does not allow them to sue the sovereign. Stated another way, there is no waiver of common law immunity. Our Supreme Court has found that there is no liability in Rhode Island for a negligent inspection under common law and those findings are controlling in this minimum diversity case. Plaintiffs' discussion of out of state cases to support a common law duty should be rejected for this reason alone.

Moreover, the *policy* behind all of the above referenced decisions (contrary to plaintiffs' unsupported assertion) is that there is *no liability* to third parties (and especially to unknown owners) arising from governmental inspections. The Court clearly enunciated State policy in Martinelli when it said:

---

[11] This principle arises by the "oft-quoted phrase" of U.S .Supreme Court Justice Jackson that "[o]f course, it is not a tort for government to govern." *Id. quoting Dalehite v. U.S., 346 U.S. 15, 57 (1953) (Jackson, J., dissenting).*

> "Our holding rests on the policy that the public treasury should not be exposed to claims involving acts done for the public good as a whole, given that "the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person." _*O'Brien v. State,* 555 A.2d 334, 337 (R.I.1989)_.
>
> Additionally, the public duty doctrine continues to serve a pragmatic and necessary function because it can "encourage the effective administration of governmental operations by removing the threat of potential litigation." _*Catone v. Medberry,* 555 A.2d 328, 333 (R.I.1989)_. Moreover, a governmental unit should not be held liable for activities it performs that "could not and would not in the ordinary course of events be performed by a private person at all." _*O'Brien,* 555 A.2d at 336-37_. Eliminating the public duty doctrine could "subject the state to potential liability for each and every action it undertook. Even minimal insight reveals that this would lead to hesitation on the part of the state to undertake and perform duties necessary to the functioning of a free society." _*Orzechowski v. State,* 485 A.2d 545, 549-50 (R.I.1984)_. Id., at 66.

Again it is clear beyond argument that the *policy* as stated by the Supreme Court is not to impose liability on a sovereign for the acts of a third party who was subject to a governmental inspection.

## STATUTORY IMMUNITY

Defendant Owens and under respondent superior the State, have immunity for the acts and omissions alleged under R.I. Gen. Laws § 23-28.2-17. In Vaill v. Franklin, 722 A.2d 793 (R.I. 1999) the court upheld immunity for several beneficiaries under this section and only denied it for the Exeter Fire Chief because his order may have violated the plaintiffs' Fourth Amendment rights. There is no constitutional violation alleged herein. Rather, Mr. Owens is "charged" only with negligence in training and supervision.

Plaintiffs have not alleged any discovery they need to support their unfounded assertion of malice by Mr. Owens. Moreover, plaintiffs' claim that the State can be liable if its agent is immune is once again unsupported by any legal authority. Haworth v. Lannon, supra, did *not* say the Town would be liable if its employee was immune. It held that the Town and its agent could both be liable if an exception to the Public Duty Doctrine existed (it did not). Haworth had nothing to do with this issue but clearly defeats these complaints on other grounds.

## WEST WARWICK IS A SEPARATE SOVEREIGN

Though *some*[12] plaintiffs assert for the first time in their objections to the State's Motion that Denis Larocque is an agent of the State, no pleading supports that allegation. The complaints allege him to be an agent of West Warwick, a distinct sovereign. For several reasons, even this new assertion does not raise a factual issue.

First, even if the Court finds this allegation within any pleading and believes it raises a fact issue, it cannot attribute that issue to Mr. Owens because the State – not Irving J. Owens – would be the employer.

Second, as shown by West Warwick's Motion to Dismiss, Mr. Larocque is entitled to several immunities and defenses in his own right and should also be dismissed outright. The State incorporates those defenses to the extent this Court will consider any plaintiff's allegation that Mr. Larocque is an agent of the State.

Third, it is clear from the statutes upon which plaintiffs rely that the role of Deputy State Fire Marshall is a delegated duty rather than an agency relationship. Those statutes create the legal relationship and do not present fact questions. As such, the acts of Mr. Larocque can no more create liability for the State of Rhode Island than can the

[12] This unplead allegation has not been asserted in Henault or Passa.

acts of a State program that has been delegated by the Untied States create liability on the Federal Government.

In Ellis v. United States, 780 F.Supp. 783 (D.Utah 1941) the Court granted the government's Motion to Dismiss over allegations that the Federal Government was liable for delegating design, manufacture and safety decisions related to missle construction to a private contractor. Survivors of individuals killed in a rocket explosion alleged that the United States had a duty to perform the acts delegated to the private contractor and had even elected to perform some of those duties after delegating them. Nevertheless, the Court found this delegation within the sovereign's discretion and granted the Motion to Dismiss. See also Dyer v. United States, 96 F.Supp 2d 725 (E.D. Jenn 2000)(government had no liability for negligent operation of a federally owned nuclear facility after delegating operation to an independent contractor).

The statutes relied on by plaintiffs herein show that the State had discretion to delegate local inspections to municipal employees. Nothing in these statutes show any element of control over these municipal employees that would raise a factual issue of agency. In fact plaintiffs only allegation of "control" is R.I. Gen. Laws § 23-28.2-9 (See Memorandum in Support of Objection to State's Motion to Dismiss in Gray v. Derderians, et al., p. 506), which only says that Deputy State Fire Marshals serve at the pleasure of the Fire Marshal. At most, this sets the criteria to terminate the municipal officer. It in no way gives the state control over what he inspects, when he inspects it or what discretion he shall exercise in eliminating violations.

## LEGISLATIVE IMMUNITY

Only plaintiffs in Henault and Passa assert that the State can be liable for failing to appropriate sufficient funds for a governmental activity. Though they have not abandoned that claim in their objections to this Motion, they have not offered any legal authority to support it. These defendants simply refer to the citations in their opening Memorandum to show that these allegations must be stricken based on legal defenses of legislative immunity.

## QUASI JUDICIAL IMMUNITY

Again there can be no dispute that defendants' claims of quasi-judicial immunity must be examined under State law. Contrary to what plaintiffs allege, the Rhode Island Supreme Court has extended quasi-judicial immunity to governmental acts far short of holding hearings and weighing evidence. See also Psilopolous v. State, 636 A.2d 727 (R.I. 1994); Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 870 (R.I. 1998). In Psilopolous v. State, 636 A.2d 727 (R.I. 1994), the R.I. Supreme Court likewise held that agents of the state who performed a quasi-judicial function were entitled to immunity both for themselves and for the sovereign entity that employed them. Id. at 727-28 citing Butz v. Economou, 438 U.S. 478 (1978). The R.I. Supreme Court has also noted that it "sternly opposes the bringing of separate actions against agency officials in respect to their performance of quasi-judicial or quasi-prosecutorial functions." Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 870 (R.I. 1998).

Plaintiffs attempt to avoid the *Rhode Island* authority cited by defendants by stating that the use of the word "may," a clear indication of professional discretion, in Rhode Island Fire Code § 1-4.1 actually means "shall" or "must." In so arguing they

don't ask this Court to add words to a statute as they previously asked it to add private rights of action to several statutes, they actually ask this Court to hold that a State Code means the opposite of what it says. Mere days ago the Supreme Court ruled conclusively that "may" means exactly what it says, i.e., the government has discretion to act when a statute (or Code) uses the word may. Andrade v. Perry, 2004 WL 2847779 (R.I. Dec. 8, 2004).[13]

The State defendants submit that the challenged actions of the Fire Marshal in the instant case clearly fall within the quasi-judicial functions entitled to absolute immunity. "[Quasi judicial] is defined as a term applied to the action and discretion of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Suitor v. Nugent, 98 R.I. 56, 61 (R.I. 1964) quoting State v. Winne, 91 A.2d 65 (NJ 1952).[14] Fire Marshals perform such quasi-judicial functions when called on to inspect buildings for fire code violations. R.I. Fire Prevention Code, § 1-4.3.

[13] [I]t is clear from the language of the indemnification statute that municipalities are not mandated to pay judgments rendered against their employees. Although § 45-15-16 provides that "[a]ny town or city council or any fire district *may,* by ordinance or otherwise, indemnify any and all elected or appointed fire district officials, public employees * * *," defendant argues that the municipal principal ultimately is responsible for paying the judgments of its agents. (Emphasis added.) When applying the plain meaning rule, this Court has previously stated that the word "may" connotes permission. "May" is not synonymous with "must." It is precatory, not mandatory, language.. Therefore, the statute neither provides an employee with the right to indemnification nor orders indemnification to take place. Internal citations omitted.

[14] "Quasi-judicial" functions have also been defined as those positions that "entail[] making decisions of a judicial nature -- i.e. decisions requiring the application of governing rules to particular facts, an 'exercise of reasoned judgment which could typically produce different acceptable results.'" *Wantanabe Realty Corp. v. City of New York, 2003 U.S. Dist. LEXIS 17645, *5 (S.D.NY 2003).* Just like the defendant Commissioner in *Wantanabe*, the Fire Marshal (more correctly his deputies) in the instant case had to apply the governing rules, the State Fire Code, to the Station nightclub and make a judgment as to whether the nightclub violated those provisions then exercise their discretion as to the manner of enforcement and compliance. The defendants performance of these quasi-judicial functions is accordingly protected by absolute immunity. *Id.*

Due to space limitations, defendants refer back to their opening memorandum for additional support on this issue.

**CAUSATION**

As the Court has heard in prior arguments, there is clearly a legal element of causation. This Court explained that although proximate cause is normally a question of fact, the Rhode Island Supreme Court "has not hesitated, in certain circumstances, to declare the absence of proximate cause as a matter of law." Travelers, 11 F. Supp.2d at 199 (citing Splendorio v. Bilray Demolition Co., 682 A.2d 461 (R.I.1996); Walsh v. Israel Couture Post, No. 2274 V.F.W., 542 A.2d 1094 (R.I. 1988); Clements v. Tashjoin, 168 A.2d 472 (R.I. 1961)).

Again due to space limitations, defendants refer back to their opening memorandum for additional support on this issue. They will, however, note one inaccuracy in plaintiffs' opposition. Plaintiffs attempt to avoid the bar of legal causation by arguing that The Station fire was not intentionally set. Gray Memorandum at 32. That statement is incorrect. The illegal ignition of pyrotechnics was an intentional act. The scope of the fire certainly exceeded what anyone intended, but it is not correct to imply that The Station burned from an "accidental" fire. The fire was intentional. The allegations against these defendants are that they failed to order a third party to remove "conditions" that assisted the fire to spread. As such, there were numerous superceding causes between defendants' alleged acts of governance and the damages alleged by plaintiffs in these cases.

Respectfully submitted,

DEFENDANTS

By Their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

James R. Lee (#4305)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
TEL: (401) 274-4400, Ext. 2314
FAX: (401) 222-2995

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 16th day of December, 2004, a copy of the within was e-mailed to the certification list.

Joseph V. Cavanagh, Jr, Esq.
Kristin E. Rogers, Esq.
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903

Daniel J. Horgan, Esq.
The Horgan Law Offices
Shaw's Cove 5, Suite 200
New London, CT 06320

Anthony F. DeMarco, Esq.
Reynolds, DeMarco & Boyer, Ltd.
170 Westminster St., Suite 200
Providence, RI 02903

Bruce Keller, Esq.
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Gerald C. DeMaria, Esq.
James A. Ruggieri, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

Ronald Langlois, Esq.
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908

Marc DeSisto, Esq.
DeSisto Law
211 Angell Street
Providence, RI 02906-2563

Faith A. LaSalle, Esq.
One Turks Head Place
Providence, RI 02903

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Donald J. Maroney, Esq.
James H. Reilly, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Conner
1900 Market Street
Philadelphia, PA 19103-3508

Donna M. Lamontague, Esq.
Zizik, Powers, O'Connell
40 Westminster St., Ste. 201
Providence, RI 02903

Edward T. Hinchey, Esq.
James Scanlon, Esq.
Sloan & Walsh, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108

Edwin F. McPherson, Esq.
McPherson & Kalmansohn
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

Matthew F. Medeiros, Esq.
Little Medeiros Kinder Bulman
& Whitney
72 Pine Street
Providence, RI 02903

Mark K. Ostrowski, Esq.
Jose M. Rojas, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Gregory L. Boyer, Esq.
170 Westminster St., Ste. 200
Providence, RI 02903

Grant H. Miller, Jr., Esq.
Cynthia A. Jaworski, Esq.
Law Offices of Grant H. Miller, Jr.
55 Capital Boulevard, Suite 210
Rocky Hill, CT 06067

Ronald J. Resmini, Esq.
Law Office of Ronald J. Resmini, Ltd.
155 South Main Street
Providence, RI 02903

Ralph J. Monaco, Esq.
Patrick J. Day, Esq.
Conway & Londregan, P.C.
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Robert T. Rimmer, Esq.
The Reardon Law Firm, P.C.
160 Hempstead Street
New London, CT 06320

James T. Murphy, Esq.
Megan J. Goguen, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M. Prignano, Esq.
Stephen J. MacGillivrany, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

William E. Murray, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103

Randall L. Souza, Esq.
Fred A. Kelly, Jr., Esq.
Nixon & Peabody, LLP
One Citizens Plaza, Suite 700
Providence, RI 02903

John J. Nazzaro, Esq.
1 Center Place
Law Offices of John J. Nazzaro, LLC
164 Hempstead Street
New London, CT 06320

Patrick T. Jones, Esq.
Cooley, Manion, Jones, LLP
Providence, RI 02903

Mark T. Nugent, Esq.
Paul Sullivan, Esq.
Morrison, Mahoney & Miller
One Providence Washington Plaza
Providence, RI 02903

Thomas C. Angelone, Esq.
HODOSH, SPINELLA & ANGELONE
One Turks Head Place, Suite 1050
Providence, RI 02903

Ronald J. Creamer, Esq.
155 South Main Street, Suite 400
Providence, RI 029023

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburg, PA 15219

Andrew J. Trevelise, Esq.
REED SMITH LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

Scott J. Tucker, Esq.
TUCKER, HEIFETZ & SALTZMAN
Three School Street
Boston, MA 02108

John R. Crockett, Esq.
Susan S. Wettle, Esq.
Carl A. Henlein, Esq.
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Benjamin V. White, III, Esq.
VETTER & WHITE, INCORPORATED
20 Washington Place
Providence, RI 02903

Curtis R. Diedrich, Esq.
SLOANE & WALSH
Three Center Plaza
Boston, MA 02108

Thomas W. Lyons, Esq.
Strauss, Factor, Laing & Lyons
222 Richmond St., Ste. 208
Providence, RI 02903

Eva-Marie Mancuso, Esq.
Hamel, Waxler, Allen & Collins
387 Atwells Ave.
Providence, RI 02909

Mark S. Mandell, Esq.
Mandell, Scwhartz, Boisclair
One Park Row
Providence, RI 02903

Michael St. Pierre, Esq.
Revens, Revens & St. Pierre
946 Centerville Rd.
Warwick, RI 02886

Brian Cunha, Esq.
Karen Allegria, Esq.
311 Pine St.
Fall River, MA 02720

Steven Minicucci, Esq.
373 Elmwood Ave.
Providence, RI 02907

Stephen Breggia, Esq.
395 Smith St.
Providence, RI 02908

Max Wistow, Esq
61 Weybosset St.
Providence, RI 02903

Charles Redihan, Esq.
91 Friendship St.
Providence, RI 02903